IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | |
|---|---|
| LINDA TOMONIA, et al, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Civ.Action No 7-CV-0882(JR) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al, | ) |
| | ) |
| Defendants. | ) |
| ·········································· | ) |

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT

Plaintiffs move, pursuant to Rules 7(b)(1) and 15(a) of the Federal Rules of Civil Procedure, for leave to file their First Amended Complaint.

The grounds for Plaintiffs' Motions are more fully set forth in the accompanying memorandum of points and authorities. Attached hereto are one red-lined copy of the First Amended Complaint and one non-red-lined copy of that Amended Complaint.

L.Cv.R.7.1(m)

Plaintiffs requested that Counsel for Defendants advise them whether Defendants would consent to this Motion. Counsel for Defendants did not respond.

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Rd., N.W.
Washington, D.C. 20007
(202) 333-8553

December 3, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


LINDA TOMONIA, et al,            )
                                 )
                                 )
                                 )
        Plaintiffs,              )  Civ. Action No 7-CV-0882(JR)
                                 )
                                 )
            v.                   )
                                 )
DISTRICT OF COLUMBIA, et al,     )
                                 )
        Defendants.              )
……………………………………………            )


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR FIRST AMENDED
COMPLAINT**


Plaintiffs move for leave to file their First Amended
Complaint, in accordance with Rule 15(a) of the Federal
Rules of Civil Procedure.

Plaintiffs' Complaint was filed on May 10, 2007. All
Defendants had not answered that Complaint until September
27, 2007. On October 19, 2007 the Court entered an Order
granting Defendants' motion for partial judgment on the
pleadings as to claims against the individual Defendants,
without prejudice, until such time as Plaintiffs amended

3

their Complaint. Plaintiffs moved for reconsideration of
the Court's Order, which was denied by the Court on October
31, 2007. The parties' Meet and Confer Report, approved on
October 19, 2007, set a deadline for filing of an amended
complaint of January 1, 2008. Docket Doc. 35 at 1. The
Court approved and ordered that deadline in its Order of
October 19, 2007. Docket Doc. No.36.

Plaintiffs' Amended Complaint adds causes of action
for violation of Plaintiffs' Fifth Amendment rights under
color of state law, in violation of 42 U.S.C.1983. See
Attachment B at Para. 55-85, 138-154 (red-lined Amended
Complaint). It also adds limited factual information
updating the facts set forth in the original Complaint. See
Attachment B at Para. 44-52. It does not add parties. The
facts or circumstances underlying Plaintiffs' Fifth
Amendment claims are already known to Defendants, from
Plaintiffs' Complaint. Compare Attachment B at Para. 12-54
with Para. 55-85.

**LEGAL STANDARD**

Under Rule 15 (a) of the Federal Rules of Civil
Procedure a plaintiff may amend her complaint, once a
defendant has answered, only with leave of the Court or by
written consent of the adverse party. The grant or denial
of leave to amend lies in the sound discretion of the

district court. Firestone v. Firestone, 76 F.3d 1205, 1208
(D.C.Cir.1996). Leave must be freely given when justice so
requires. Fed. R. Civ. P. 15(a); Caribbean Broad Sys. Ltd
v. Cable & Wireless PLC, 148 F.3d 1080, 1083 (D.C.Cir.
1998). A district court should grant leave to amend unless
the amendment would be futile, there is undue delay, bad
faith, dilatory motive, undue prejudice or a repeated
failure to cure deficiencies by previous amendments.

### PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND

Here there is no undue delay. Plaintiffs submit their
amended complaint only some two months after Defendants
filed their Answers to Plaintiffs' Complaint and well
within the time period set forth by the parties' Meet and
Confer Report, and the deadline ordered by this Court.

Defendants are not prejudiced by granting Plaintiffs
leave to amend. The facts and circumstance underlying
Plaintiffs' Fifth Amendment causes of action have been
known to Defendants since their inception and were stated
in the original Complaint in connection with claims there
asserted under the Americans with Disabilities Act and
Section 504 of the Rehabilitation Act. Where the facts on
which a previously unasserted claim is based are known or
available to all parties, there is no prejudice in allowing
an amended complaint. Buder v. Merill Lynch, 644 F.2d 690,

694 (8th Cir. 1981). Inconvenience that may arise from answering Plaintiffs' additional causes of action does not constitute undue prejudice. <u>Scott Timber Co. v. United States,</u> 44 Fed. Cl. 170, 182 (Fed.Cir. 1999) Discovery does not close in this action until January 31, 2008. Docket Doc. No. 35 at 3.

Plaintiffs' additional causes of action are subject to the three-year statute of limitations for Section 1983 actions, are not barred by the statute of limitations and, hence, are not futile.

Wherefore, Plaintiffs respectfully request that they be granted leave to file their Amended Complaint.

Respectfully submitted,


Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Rd., N.W.
Washington, D.C. 20007
(202) 333-8553

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


| | |
|---|---|
| **LINDA TOMONIA, et al,** | ) |
| | ) |
| | ) |
| | ) |
| **Plaintiffs,** | ) **Civ.Action No 7-CV-0882(JR)** |
| | ) |
| **v.** | ) |
| | ) |
| **DISTRICT OF COLUMBIA, et al,** | ) |
| | ) |
| **Defendants.** | ) |
| .................................................... | ) |


<u>**ORDER**</u>


The Court, having reviewed Plaintiffs' Motion for leave to file their First

Amended Complaint, and Defendants' response, if any, thereto, it is hereby

ORDERED, that Plaintiffs are granted leave to file their First Amended Complaint.

SO ORDERED.


_____
U.S. District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LINDA TOMONIA,                              ]
In her own right, and as next              ]
friend of her son, R.T.                    ]
6817 Georgia Ave. NW, Apt 421              ]
Washington, D.C. 20012                     ]
                                           ]
R.T., a minor,                             ]
By his mother and next friend,             ]
Linda Tomonia,                             ]
6817 Georgia Ave. NW. Apt 421              ]
Washington, D.C. 20012                     ]
                                           ]———Civil Action No.——
                                           ]     Civ. Action 07-0882(JR)
                                           ]
                                           ]
        Plaintiffs,                        ]
                                           ]
                                           ]
            v.                             ]
                                           ]
DISTRICT OF COLUMBIA,                      ]
A municipal corporation,                   ]
John A. Wilson Building                    ]
1350 Pennsylvania Ave., NW                 ]
Washington, D.C. 20004,                    ]
                                           ]
CLIFFORD JANEY,                            ]
In his official capacity and personal      ]
capacity as,                               ]
Superintendent,                            ]
District of Columbia Public Schools        ]
Ninth Floor                                ]
825 North Capitol St, NE                   ]
Washington, D.C.20002,                     ]
                                           ]
                                           ]
MARY GRANT,                                ]
In her personal capacity,                  ]
Principal,                                 ]
Takoma EC

1

7010 Piney Branch Rd. NW
Washington, DC 20012


MARCIA PARKER
In her personal capacity,
Principal,
Turner ES
3264 Stanton Rd, SE
Washington, DC 20020


DENNIS HOMESLEY
In his personal capacity,
Principal,
Payne ES
305 15th St, SE
Washington, DC 20003


WILLIAM WILHOYTE
In his personal capacity,
Assistant Superintendent
DCPS
Ninth Floor
825 North Capitol St. NE
Washington, DC 20002

     Defendants

----------------------------------


## FIRST AMENDED COMPLAINT
(Declaratory and Injunctive Relief, Compensatory and Punitive
Damages for Violations of, and of rights under, the Americans with
Disabilities Act, Section 504 of the Rehabilitation Act of 1973 and
the D.C. Human Rights Act, and the Fifth Amendment and
attorney's fees)

### PRELIMINARY STATEMENT


This civil action arises out of actions taken by Defendants in

School Years 2005-2006 and 2006-2007 to exclude Plaintiff R.T., a

student with disabilities, from activities, services and programs offered by the D.C. Public Schools (DCPS) , and to deny him  the benefit of those services and programs. Defendants did not provide R.T. with accommodations required by his Section 504 Plan, excluded him from the classroom and from school for conduct arising out of his disability, and denied him the due process safeguards to which he is entitled as a student with disabilities. Defendants' actions resulted in R.T.'s retention in Fifth Grade this school year, and may well result in his retention in Fifth Grade next school year.

Plaintiffs assert claims pursuant to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, and the D.C. Human Rights Act (HRA), D.C. Code §§ 2-1401.01 et seq.,  arising out of intentional conduct of the Defendants which excluded R.T., solely because of his disabilities, from educational services and programs offered by DCPS and denied him the benefits of those programs and services on account of his disabilities. Plaintiffs also bring claims, under those statutes, for actions of Defendants that were taken against Ms. Tomonia in retaliation for her advocacy of her son's rights as a student with disabilities.

The ADA, 42 U.S.C. §§ 12131, 12132, mandates that  "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities "offered by a public entity. Plaintiffs bring their ADA claim directly under the ADA, as well as pursuant to Section 1983.

Section 504 requires that " no otherwise qualified individual with a disability….shall, solely by reason of her or his disability, be excluded

from participation in , be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.....” 29 U.S.C. § 794(a). Plaintiffs bring their Section 504 claims directly under Section 504, as well as pursuant to Section 1983. Section 504 prohibits Defendants from excluding R.T. from DCPS programs because of conduct arising out of R.T.’s disability.

To ensure that a student with disabilities is not excluded from school because of his disabilities, Section 504 requires DCPS to conduct a “manifestation determination” meeting and re-evaluations of a student with disabilities, before taking a disciplinary action that would result in his exclusion from school for more than 10 days in any school year. Defendants have disciplined R.T, by excluding him from school on many occasions: on no occasion have Defendants convened a manifestation determination meeting or re-evaluated R.T.

The HRA prohibits any educational institution and any agency or office of D.C. government, from limiting or refusing to provide any service, program of benefit to any individual on the basis of that individual’s disability, and prohibits anyone from aiding, abetting, inviting, or compelling such action. D.C. Code §§ 2-1402.41, 2-1402.73, 2-1402.62.

The ADA, Section 504 and the HRA each prohibit retaliation against any person for that person’s advocacy of the rights of a student with disabilities.

## JURISDICTION

This Court has jurisdiction over  Plaintiffs’ claims brought under the ADA and Section 504 of the Rehabilitation Act of 1973, pursuant to

42 U.S.C. § 12133, 29 U.S.C § 794a (a)(2), 28 U.S.C. §§ 12201,

2202,1331, 1333, 1343 and 1983. Jurisdiction over Plaintiffs' D.C.

Human Rights Act claims is conferred by D.C. Code. § 2-1403.16 and by

28 U.S.C.   § 1367. Venue lies in the District of Columbia pursuant to 28

U.S.C. §1391.

## PARTIES

1. Plaintiff R.T. is a twelve-year old resident of the District of

Columbia, now repeating the Fifth Grade at Payne E.S., who has

Attention Deficit Hyperactivity Disorder [ADHD] and a history of

psychological and behavioral difficulties. Because of his ADHD, R.T. has

difficulty focusing on classroom presentations, understanding and

following directions, sitting still for prolonged periods, recalling

instructions for classroom and homework assignments, and completing

those assignments, among other problems. Psychiatric evaluations

performed in June 2006 and July 2007 found R.T. to be severely

emotionally disturbed. Auditory Processing and Occupational Therapy

evaluations performed in Summer 2007 found R.T. to have auditory

processing and visual-motor integration disorders. These problems

substantially limit his ability to perform a major life activity, that of

learning. R.T., therefore, is an individual with a disability under the ADA,

42 U.S.C. § 12102, Section 504, 29 U.S.C. § 705(20), and the D.C.

Human Rights Act, D.C. Code. § 2-1401.02(5A).

    2. When R.T. was in the Third Grade and a student at Community

Academy Public Charter School---a DCPS public charter school---R.T.

was formally determined to be a student with disabilities who requires

accommodations under a Section 504 Plan in order to benefit from his

public education. Community Academy developed and implemented a

Section 504 Plan for R.T.  R.T. attended the School for Arts in Learning

Public Charter School (SAIL], a DCPS charter school, primarily for

children identified as having special needs, in Fourth Grade, where his

Section 504 Plan was revised and implemented.

    3. In Fifth Grade, in school year 2005-2006, R.T. attended Takoma

EC, his DCPS home school. In school year 2006 -2007, R. T. attended,

first, Turner ES, from August 2006 through early March 2007, and then

Payne ES. While attending these three DCPS schools, R. T. was

repeatedly excluded from instructional programs in the classroom and

excluded altogether from school and from school activities, because of his

disabilities, was repeatedly denied access to DCPS programs, services,

and activities, was repeatedly denied the accommodations that were

required by his Section 504 Plan, and was repeatedly deprived of the

procedural safeguards that federal and local law mandate. This action is brought on his behalf by his mother, Ms. Linda Tomonia.

4.  Plaintiff Linda Tomonia is a resident of the District of Columbia and is the mother of R.T. She brings this action on her own behalf and on behalf of her son.

5. Defendant District of Columbia ["DC"] is a municipal corporation which itself receives federal funds and which is responsible for ensuring that  those DC agencies that receive federal funds comply with their obligations under District and federal law, including IDEA, the ADA, Section 504 of the Rehabilitation Act, the District of Columbia Human Rights Act and their implementing regulations.

6.  Defendant Clifford Janey is Superintendent of DCPS, a public educational institution and independent agency within the District of Columbia government, which receives Federal educational and other funds. DCPS provides educational services, activities and programs through its own public schools and public charter schools.  As superintendent, Defendant Janey is responsible for implementing policies, plans and procedures that conform with the requirements of Federal and D.C .Law, including the Individuals with Disabilities Education Act, as amended ( IDEA) , Section 504, the ADA, and the District of Columbia Human Rights Act.

7

7.  Pursuant to DCPS Board of Education regulations, Defendant Janey is the most senior policy-making officer of DCPS. Defendant Janey was personally involved in making decisions to exclude R.T. from DCPS educational programs, services and activities on account of his disability and to deprive him and his mother of procedural safeguards mandated by federal and local law. He is sued in his personal and in his official capacity.

8. Defendant Mary Grant is the principal of Takoma EC.  On information and belief, she is notorious within the DCPS community for discriminating against students with disabilities. While R.T. attended Takoma EC, Defendant Grant intentionally excluded R.T. from educational programs, services and activities on account of his disabilities, deprived R.T. of accommodations required by his Section 504 Plan and denied him and his mother the procedural safeguards guaranteed them under federal and local law. Defendant Grant is sued in her personal capacity.

9.  Defendant Marcia Parker is the principal of Turner ES.  While R.T. was enrolled at Turner ES, Defendant Parker intentionally excluded R.T. from educational programs, services and activities on account of his disabilities; deprived R.T. of accommodations required by his Section 504 Plan and denied him and his mother the procedural safeguards

guaranteed them under federal and local law. Defendant Parker is sued in her personal capacity.

10. Defendant Dennis Homesley is the Principal of Payne ES. While R. T. was enrolled at Payne ES, Defendant Homesley intentionally excluded R.T. from educational programs, services and activities on account of his disabilities; deprived R.T. of accommodations required by his Section 504 Plan and denied him and his mother the procedural safeguards guaranteed them under federal and local law. Defendant Homesley is sued in his personal capacity.

11. Defendant William Wilhoyte is an assistant superintendent of DCPS, and is the assistant superintendent directly responsible for supervising Payne ES. Defendant Wilhoyte was personally involved in decisions to exclude R.T. from educational programs, services, and activities at Payne ES on account of R.T.'s disabilities. He is sued in his personal capacity.

### FACTUAL ALLEGATIONS

### Violation of Disabilities Statutes

12. For school year 2005-2006, R.T. resided within the residential boundaries of Takoma EC, which, under Board of Education regulations, was, was required to provide him educational programs, services, and activities that it provided to other students within its residential limits. During school year 2005-2006, Defendant Mary Grant intentionally took

the following actions that excluded R.T. from DCPS programs, activities and services, because of his disability:

a) Repeatedly excluded R.T. from his classroom because of his disabilities;

b) Repeatedly telephoned, or instructed her staff to telephone, Ms. Tomonia and ordered Ms. Tomonia to remove her son from school because of his disabilities;

c) Repeatedly suspended R.T., because of his disabilities, and suspended him to all intents and purposes continuously from on or about May 1, 2006 through June 2006;

d) Directed that R.T. be dismissed or excluded from Takoma EC's after-school program, because of his disabilities;

e) Directed that R.T. be excluded from Takoma EC and prohibited from attending Takoma EC for school year 2006-2007, because of his disabilities;

f) Denied R.T. the accommodations he required under his Section 504 Plan;

g) Deprived R.T. and his mother of the procedural safeguards to which they were entitled under federal law, by, *inter alia*, denying them notice of those rights, depriving them of their rights to manifestation determination meetings, re- evaluation and revision of accommodation plans and determination of eligibility for IDEA services on each and every occasion that R.T. was suspended or excluded from school.

13. In March and May 2006 Ms. Tomonia contacted the central administration of DCPS, seeking assistance for her son, and informed DCPS administrators that R.T. was being repeatedly excluded from Takoma EC.

14. DCPS administrators did not inform Ms. Tomonia of her rights and the rights of her son under Federal or local law, and did not act to restrain Defendant Grant from excluding R.T. from Takoma EC.

15. As a result of his repeated exclusions from classroom instruction during school year 2005-2006, R.T. did not master Fifth Grade instructional material. Takoma EC informed Plaintiffs that R.T. would have to repeat the Fifth Grade.

16. In August 2006, R.T. enrolled in Turner ES to repeat his Fifth Grade year.

17. From August 2006 through February 2007, Defendant Marcia Parker intentionally took the following actions excluding R.T. from DCPS programs, activities and services, because of his disability:

a) Repeatedly excluded R.T. from his classroom because of his disabilities;

b) On information and belief, instructed her staff to telephone R.T.'s foster parent on at least seven days in September and October 2006, ordering the foster parent to remove R.T. from school because of his disabilities;

c)  Excluded R.T., because of his disabilities, from Turner ES by suspending him on two or more occasions in February 2007 for periods exceeding ten days;

d) Deprived R.T. and his mother of their rights to manifestation determination meetings, re-evaluation and educational instruction when she suspended R.T.;

e) Denied R.T. the accommodations he required under his Section 504 Plan;

f) Withheld from Ms. Tomonia educational records, Section 504 Plan reports and other information that Defendant Parker was required to provide Ms. Tomonia under DC Law, and under Section 504 and the ADA.

18. On November 1, 2006, Ms. Tomonia informed the D.C. State Enforcement Agency and the Office of General Counsel for DCPS that Turner ES was excluding R.T. from school and denying him the accommodations required by his Section 504 Plan.

19.  Defendants did not act to prevent R.T.'s exclusion from Turner ES and did not act to ensure that R.T. and his mother received the services and programs required by his Section 504 Plan.

20. On or about March 5, 2007 R.T. was enrolled at Payne ES.

21. For most of approximately the next two weeks R.T. spent virtually no time in the classroom.

22. On March 19, 2007 Defendant Homesley intentionally excluded R.T. from the programs, services and activities of Payne ES on account of his disabilities, suspending him from school for a period of ten days.

23. On March 20, 2007 through March 22, 2007, Ms. Tomonia wrote Defendant Homesley and staff at Payne ES, advising them that R.T. was a student with disabilities, that exclusion from Payne on account of his disabilities violated federal law, and requesting that Defendant Homesley re-admit R.T.

24. During that period, Ms. Tomonia contacted the following officers and personnel of DCPS seeking their assistance in obtaining R.T.'s re-entry to Payne ES:

a) Defendant Superintendent Clifford Janey;

b) Defendant Assistant Superintendent William Wilhoyte;

c) Linda Roberts;

d) Jennifer Finch;

e) Timothy Williams;

f) DCPS General Counsel, Abby Hairston.

25. In Ms. Tomonia's communications to those DCPS officers and staff, Ms. Tomonia requested that they direct Defendant Homesley to permit R.T. to return to Payne ES. She informed those officers: that Defendant Homesley had unlawfully excluded her son, a student with disabilities, from Payne Es, on account of his disabilities, that her son previously been excluded from school for 23 days during this school year

and was in danger of being retained, again, as a result of loss of classroom instruction, that Defendant Homesley had failed to convene the manifestation determination meeting required by Section 504 or to provide R.T. and Ms. Tomonia the due process safeguards mandated by Section 504:

26. Those persons took no steps to assure R.T's re-entry to Payne ES, did not act to require that Defendant Homesley convene a manifestation determination meeting or conduct evaluations of RT.

27. Defendants Janey and Wilhoyte ratified or approved Defendant Homesley's exclusion of RT on account of his disabilities.

28. On November 1, 2006, Ms. Tomonia filed a Due Process Complaint with the DCPS Student Hearing Office, seeking, inter alia, enforcement of R.T.'s rights under Section 504 and the IDEA.   By sheer coincidence, Ms. Tomonia was at a hearing on her Due Process Complaint on March 19, 2007, the date that Defendant Homesley excluded R.T. from Payne ES.  Ms. Tomonia informed the Hearing Officer that Principal Homesley had that morning illegally excluded her son from Payne ES, and requested that the Hearing Officer order DCPS to re-admit RT to Payne, forthwith.

29. Defendants initiated, at that Hearing, actions that were intended to deprive R.T., as a student with disabilities of his Due Process Rights, and deprive him of benefits available to DCPS students   and which   retaliated against Ms. Tomonia for her assertion of those rights at

14

the Due Process Hearing.  Immediately following Ms. Tomonia's request

for an order requiring that Payne ES re-admit R.T., Defendant's counsel

moved to dismiss her Due Process Complaint, alleging that the DCPS

Student Hearing Office had no jurisdiction to hear Section 504 matters

and alleging that Ms. Tomonia's sole recourse, under Section 504, was a

complaint filed with the Federal Department of Education's Office of Civil

Rights.

30. Section 504 regulations promulgated at 34 C.F.R. § 104.36 and

DCPS regulations promulgated at 5 DCMR Chapter 24  require that

DCPS make available to  R.T. an impartial due process hearing, as well

as other procedural safeguards, including notice.

31. The Hearing Officer took DCPS' motion under advisement and

ordered the parties to submit memoranda of law on the issue.

32.  On March 19 and March 20, 2007, Ms. Tomonia notified

Defendant Clifford Janey and DCPS General Counsel Abby Hairston that

DCPS' motion deprived students with disabilities of their due process

rights and requested that DCPS withdraw its motion to dismiss Ms.

Tomonia's Due Process Complaint for lack of Section 504 jurisdiction.

33. On March 26, 2007, DCPS submitted to the Hearing Officer a

memorandum asserting that Ms. Tomonia's Due Process Complaint must

be dismissed and Plaintiffs should be required to pursue a "grievance

procedure"

a) that was not in existence at the time that Plaintiffs filed their Due Process Complaint;

b) that was not in existence at the time that DCPS made its motion to dismiss;

c) of which DCPS had given Plaintiffs no notice; and

d)  that violated Section 504's due process hearing requirements.

34.  Defendant Janey ratified the actions of DCPS counsel retaliating against Plaintiffs, denying R.T. his due process rights solely because of his disability and depriving him of services or programs available to non-disabled students.

36.  As of May 10, 2007, the Hearing Officer had not issued a decision on DCPS' motion to dismiss, and Plaintiffs' Section 504 due process hearing had not recommenced. As a consequence, RT will have been denied relief for essentially the remainder of this school year.

37. Defendants both failed to provide RT the accommodations that they were required to provide him under the Section 504 plan that DCPS had created, but failed repeatedly to revise that Plan to provide the additional accommodations that RT required. As a result of Defendants' refusal to conduct manifestation determinations and otherwise address RT's ADHD, psychological and emotional disabilities, RT spent large amounts of the time that he was in school (i) wandering the hallways, (ii) sitting in the school office, (iii) resting at his desk or (iv) wandering off campus.

38. Defendants have failed to perform any assessment of the impact of R.T.'s ADHD on his ability to benefit from his public education, at any point during school years 2005-2007, or in connection with any exclusion of R.T.

39. Defendants, seeking to continue, unimpeded, their exclusion of R.T. from, and denial to him of the benefits of DCPS programs, services and activities, and acting to retaliate against Ms. Tomonia for her advocacy of R. T.'s rights as a student with disabilities, repeatedly, repeatedly withheld from Ms. Tomonia information, reports and educational records that Defendants are required to provide her under DC Law, under Sectionunder Section 504 and the ADA.

40. Records and notices withheld from Ms. Tomonia included, most notably, notices of suspensions, disciplinary actions, and security incidents, which Defendants Homesley and Parker denied Ms. Tomonia all together or which were withheld for a period long enough to prevent or impede  Ms. Tomonia from taking action to preserve her son's right to remain in school.

41. Defendant Homesley has denied Ms. Tomonia notice of meetings and conferences concerning her son, and disciplinary actions under consideration or taken against him.

42. Defendants Janey and Wilhoyte ratified Principal Homesley's conduct in withholding information from Ms. Tomonia.

43. On information and belief, Defendant Parker or Defendant Homesley, acting alone or in concert with others, and acting in retaliation for Ms. Tomonia's advocacy of R.T.'s rights as a student with disabilities, altered or directed their staff to alter R.T.' s DCPS Cumulative File, eliminating his mother's name and address from that file and altering his Grade assignment.

44. On May 10, 2007 the DCPS Student Hearing Office transmitted to Plaintiffs the Hearing Officer's Determination of their November 1, 2006 Due Process Complaint.

45. The Hearing Officer found that DCPS had repeatedly disciplined R.T. without conduct evaluations of R.T, and ordered DCPS to conduct comprehensive evaluations of R.T. and determine his need for services.

46. DCPS did not conduct evaluations of R.T.

47. On or about June 4, 2007 Defendant Homesley again decided to discipline R.T. by excluding him from school for the remainder of the school year.

48. DCPS did not evaluate R.T, conduct a manifestation determination for RT, or comply with Section 504's due process requirements before disciplining R.T.

49. Ms. Tomonia requested that Defendants Janey and Wilhoyte rescind Defendant Homesley's suspension of R.T, at least pending a hearing on that suspension. They failed to respond to Ms. Tomonia's

request or to rescind that suspension, ratifying Defendant Homesley's action.

50. On April 19, 2007 Ms. Tomonia filed a second Due Process complaint with the DCPS Student Hearing Office.

51. On August 9, 2007 a Hearing Officer's Determination issued as to Plaintiffs' second Due Process complaint.

52. The Hearing officer found that Defendants had failed to implement RT's 504 Plan and found that RT's required services under the Individuals With Disabilities Education Act. As a consequence of that decision and of an IEP meeting held pursuant to that decision, R,T, is enrolled at Oak Valley Center, a private special education facility that instructs students with severe emotional disturbance, ADHD and learning disabilities.

5344. DCPS has a custom, practice or policy of excluding students with disabilities from or denying them the benefits of DCPS educational programs, services and activities.

5445. DCPS will continue to exclude R.T. from, and deny him the benefit of DCPS programs, services and activities unless DCPS is enjoined from doing so.


**Deprivation of Constitutional Rights**

55. DCPS regulations promulgated at Chapter 25 of Title V of the DC

19

Municipal Regulations create extensive due process rights for students subjected to disciplinary actions. They require, inter alias that a principal provide a parent oral notice, followed by written notice, mailed by certified mail within 24 hours of the day oral notice is given, of any disciplinary action that it proposes to take, requires that a principal hold a conference concerning any such action before it is taken, and provides that a parent my request an administrative hearing within two business days on any such action upon receipt of a request by the parent.

56. DCPS regulations promulgated at Chapter 26  of Title 5 of the DC Municipal Regulations create a general right of access by a parent to her child's school records. 5 D.C. Mun. Regs 2600.1, DCPS disciplinary regulations specifically require that the parent be given access to the student's records "prior to the imposition of the proposed discipline," Id at 2506.5.   The records that Chapter 26 requires be open for inspection and review by a parent include: a student's cumulative record folder, any data collected or intended for use within DCPS, identifying data or information, academic work completed, grades and scores from standardized tests, health data and accident reports, observations and ratings by teacher, counselors and other DCPS personnel, and " reports of behavior or discipline problems or incidents." 5 D.C.Mun. Regs 2601.1.   Those regulations require that requests for access to records be made to the principal of the school which the child attends and where the records are located. Id. at 2600.4

57. In June 2006, Ms. Tomonia lost temporary custody of R.T.. On or about September 19, 2006 Magistrate Judge Breslow of D.C. Superior Court entered an Order affirming that Plaintiff Linda Tomonia retained all rights as parent to act with regard to all educational matters concerning RT. Judge Breslow further ordered that DCPS provide her access to all records, information, and meetings regarding RT. It stated:

> " The educational advocate, Karen Alvarez, and the mother, Linda Tomonia, are entitled to obtain educational records for [R.T.} from DCPS. Mother's access to [R.T.'s] educational records, information and meetings should not be restricted. Mother Linda Tomonia *retains all parental rights* including the right to fully participate in [R.T's] education."

(Emphasis added).

58. On information and belief, Counsel for Defendant District of Columbia was present at the hearing at which Judge. Breslow entered that Order.

51.Plaintiff Linda Tomonia gave a copy of Judge Breslow's Order to Defendant Parker in October 2006.

59.Beginning in February 2007 Defendants began deliberately withholding from Plaintiff Linda tomonia information concerning her son's education.

60. Information withheld from her by Defendants Parker, Homesley, Wilhoyte, and Janey included any and all notices of disciplinary actions taken against R.T, removals of R.T. from the classroom and suspensions of

R.T. from school, as well as all factual information concerning the reasons, for the disciplinary actions taken, the rules that R.T. was alleged to have violated, and the persons involved in any of the incidents that supposedly precipitated the disciplinary actions taken by Defendants, and the duration of each suspension.

61. Defendants deliberately withheld such information and notice on, among others, the following occasions:

(a) In February 2007, when Defendant Parker excluded and then suspended R.T;

(b) In March 2007, when Defendant Homesley excluded or suspended R.T, and information was withheld by Defendants Homesley, Wilhoyte and Janey;

(c) On or about May 5, 2007, when Defendant Homesley called police to the school and information was withheld by Defendants Homesley, Wilhoyte and Janey;

(d) On or about May 31, 2007, when Defendant Homesley excluded RT from school;

(e) On or about June 1, 2007, when Defendant Homesley filed a criminal complaint with the police, resulting in RT's arrest, and information was withheld by Defendants Homesley, Wilhoyte and Janey.

(f)  On or about June 4, 2007, when Defendant Homesley decided to suspend R.T. from school for the remainder of the school year, and information was  withheld by Defendants Homesley, Wilhoyte and Janey.

62. Defendants withheld any prior notice of those actions from Ms. Tomonia, and refused, when she learned that Defendants had initiated disciplinary actions against her son, to provide her with copies of the suspension notices or any factual information concerning the suspension or the facts underlying it.

63. Defendants did not provide a single coherent explanation for their refusal to provide Ms. Tomonia access to this information. Instead, Defendants at different times and occasions offered conflicting, and implicitly contradictory, rationales, for their conduct, which were arbitrary, capricious, and purely pretextual. These included:

(a) That it was easier to telefax a copy of the suspension notice to a social worker than to telefax it to Ms. Tomonia (Defendant Parker, March 2007);

(b) that DCPS was not required to  provide a copy of a suspension notice to Ms. Tomonia because Judge Breslow's Order did not expressly address the question of disciplinary notices (Defendant Homesley, March 2007);

(c) that DCPS would not release copy of a DCPS incident report reporting RT's misconduct to his mother,  because release of a report " to public" was barred under the D.C. FOIA statute, if  the report were draft report (DCPS General Counsel Hairston, May 2007);;

(d) that DCPS attorneys had ordered Defendant Homesley not to allow Ms. Tomonia access to her son's records (Defendant Homesley, May 2007).

64.  The logic underlying these rationales appeared to be that Ms. Tomonia, because she had lost temporary custody of her son, had lost, in effect, standing as his parent: a conclusion that blatantly disregarded Judge Breslow's Order. That Defendants asserted rationales for denying Ms. Tomonia access to information, particularly disciplinary information, and access to disciplinary proceedings, were entirely pretextual is apparent from the fact that Defendants did not, in connection with either of the Due Process Complaints filed by Ms. Tomonia ( first on November 1, 2006 and second on April 19, 2007) allege that Ms. Tomonia did not have standing to file such a complaint on her son's behalf.

64. Defendants did provide such information to other persons who were not entitled under DCPS regulations or under Judge Breslow's Order either to receive that information or to utilize it to enforce R.T's rights.

65, Defendant Parker provided notice of the disciplinary action that she took to a social worker with a private company that had contracted with DC to provide foster care for R.T.

66. The social worker to whom Defendant Parker provided that information:

      a.  did not hold legal custody of R.T.;

      b.  did not have authority to represent R.T. or to make decisions on behalf of R.T. in connection with any educational questions;

      c.  did not have authority to represent R.T. in connection with any disciplinary conference or proceedings; and

      d.  did not have authority to request any administrative conference or hearing on his behalf

67. Defendant Homesley first took disciplinary action against R.T. in March 2007. Defendant Homesley gave notice of that suspension to a Mr. and Mrs. Drayton, private persons who had contracted with a private company to provide foster care to R.T., and invited them to a school conference concerning the then proposed disciplinary action.

68. As of March 19, 2007 Mr. and Mrs. Drayton::

      a.  did not have legal custody of R.T.;

      b.  were paid by and under contract to a private company that did not have legal custody of R.T;

      c.  did not have authority to represent R.T. or to make decisions on behalf of R.T. in connection with any educational questions;

      d.  did not have authority to represent R.T. in connection with any disciplinary conference or proceedings; and

    e.  did not have authority to request any administrative conference or hearing on his behalf.

    f.  Had known R.T. for less than two weeks;

    g.  Had virtually no knowledge of R.T.'s psychiatric or educational history, of the accommodations that he  was entitled to receive, of accommodations or programming that he required, or of his capacity to understand or control his behavior.

69. There was no rational or lawful basis on which Defendants could refuse Ms.Tomonia information.

70.Defendants did so in order to prevent Ms. Tomonia from  participating in any conference, prior to her son's suspension, from requesting an administrative due process hearing, or from taking other action to prevent her son's suspension or otherwise protect his rights. Defendants' actions in fact ensured that Ms. Tomonia could take no effective action before the suspension period had been completed.

71. Defendants' actions violated Ms. Tomonia's substantive due process  right, under the Fifth Amendment to participate in, manage, or direct her son's education, and violated her Fifth Amendment right to Equal Protection of the laws.

72. DC Code Section 38-202 provides that all students aged 5 through  18 are entitled to a free public education and .requires all students between the ages of 5 and 18  to attend school daily.

73. R.T. has a property interest in his right, as a DC student, to attend school.

74. The suspensions or exclusions initiated by Defendants Parker and omesley in February, March and June 2007 resulted in the exclusion of R.T. from school for some 20 days in February and ten or more days in each of March and June.

75. As a result of those disciplinary actions, R.T. was excluded for some 40 days. or more during the period February 2007- June 14, 2007, the last day of school. This amounted to 40 percent of all school days during that period,

76. R.T. was deprived, by Defendants Homesley, Parker, Wilhoyte and Janey of his substantive due process property interest in attending school for some 40 days without a hearing and without any effective opportunity to obtain or means of obtaining a hearing.

77. Defendant Janey was the highest policy making official of DCPS at the time that he deprived Plaintiffs of their Fifth Amendment rights, consequently his actions are those of the Defendant the District of Columbia.

78. In addition, R.T. was excluded, for disciplinary reasons, by Defendant Parker for some seven days in September-October 2006., without complying with DCPS suspensions regulations, without notice of his rights or opportunity whatsoever for hearing..

79, . R.T. was suspended by Defendant Grant for some 51 days during the period December 2005 through June 2006.

80. Defendant Grant did not provide R.T. or his mother notice of R.T.'s right to a hearing to contest the disciplinary actions taken by Grant.

81..'R.T. was deprived of his substantive due process property interest in attending school for some 51 days without notice of his right to a hearing and without a hearing..

82. Takoma EC was the school within whose attendance zone R.T. resided.

83. Under DCPS regulations, R.T. had a right to attend Takoma EC, by virtue of his place of residence, and had no such right to admission to any other DCPS school. DCPS regulations created a property interest in RT's admission and attendance at Takoma EC. They state:

" A local school administrator shall not exclude from admission or attendance any compulsory school-aged minor who resides in his or her school's attendance zone…unless the minor has been involuntarily transferred."

5 D.C. Mun. Reg.§2002.18,

84.. Defendant Grant informed R.T.'s mother that she would not permit RT to register at Takoma the following school year.

85. Defendant Grant deprived R.T. of his right to attend Takoma EC without notice of his right to a hearing and without providing him a hearing.

## PLAINTIFFS' INJURIES

846.   Defendants' intentional conduct excluded R.T. from, and denied him the benefits of, educational services and programs offered by DCPS solely on account of his disabilities and their severity.

847.   R.T. was excluded from the classroom and denied the classroom instruction that he required in order to benefit from his public education in school years 2005-2006 and 2006-2007.

848. R.T. was forced to repeat Fifth Grade in school year 2006-2007, has not yet mastered the Fifth Grade curriculum, and very likely will not have mastered the Fifth Grade curriculum by close of the 2006-2007 school year.

849. R.T. was denied the accommodations that he required and that Defendants were legally obligated to provide him, with the result that RT at the age of twelve can not understand written material beyond the Third Grade level.

950. R.T. suffered humiliation and severe emotional distress, resulting in his hospitalization at Children's National Medical Center in June 2006.

951.   Ms. Tomonia suffered economic losses, loss of work time and incurred additional child care expenses, when R.T. was excluded from Takoma EC and its child care program.

29

9~~5~~2. Ms. Tomonia suffered anxiety, emotional distress, and loss of work time as a result of Defendants retaliation against her.

93. Plaintiffs have exhausted any applicable administrative remedies.

**FIRST CAUSE OF ACTION**
**Violation of Section 504**

94 ~~53~~.   Plaintiffs incorporate and re-allege Paragraphs 1-5~~42,and~~ 86-93 .

95 ~~54~~.  R.T. is a qualified individual with a disability under 29 U.S.C. .§ 705(20), and is qualified to participate in educational services, activities and programs offered by D.C.P.S.

96 ~~55~~. Defendants intentionally excluded R.T. from participating in and denied him the benefits of DCPS educational programs and services, solely because of his disability, in willful violation of his Section 504 rights.

97 ~~56~~. Defendants violated 29 U.S.C. § 794(a).

**SECOND CAUSE OF ACTION**
**Deprivation of Section 504 Rights under Color of State Law**

98 ~~57~~. Plaintiffs incorporate and re-allege Paragraphs 1-56 and 86-97.

99 ~~58~~.   DCPS offers, and is required by law to offer, educational programs and services for individuals with disabilities, as well as for individuals who are not disabled.

100 ~~59~~. R.T. is a qualified individual with a disability, under 29 U.S.C. § 794, and therefore has a right to be free from exclusion from, or denial of the benefits of, those DCPS services and programs by reason of his disability.

101 ~~60~~.  Defendants Grant, Parker~~Turner~~, and Homesley ~~intentionally excluded~~intentionally excluded R.T. from participation in, and denied him the benefits of, DCPS services and programs solely on account of his disability, in willful violation of his Section 504 rights.

102 ~~61~~. Defendants Janey and Wilhoyte ratified the actions of Defendants Grant, Parker~~Turner~~ and Homesley, or ~~knew that~~knew that there was a substantial risk of injury to R.T.'s right to participate in, and benefit from, DCPS educational programs, and failed to act to prevent that harm.

103 ~~62~~. Defendants, acting under color of state law, denied R.T. the rights granted him by Section 504 of the Rehabilitation Act, in violation of 42 U.S.C.§1983.

**THIRD CAUSE OF ACTION**
**Violation of ADA Title II**

104 ~~63~~. Plaintiffs incorporate and re-allege Paragraphs 1-54~~62~~ and 86-103.

105 64. DCPS receives federal funds, offers, and is required by federal law to offer, educational programs and services for individuals with disabilities as well as for individuals who are not disabled.

106 65. R.T. is a qualified individual with a disability, who is qualified to participate in and receive the benefits of DCPS educational services.

107 66. Defendants, solely by reason of his disability, intentionally excluded R.T. from participation in, and denied him the benefits of, DCPS programs and services, in willful violation of his ADA rights.

108 67. Defendants, knowing that their actions were substantially likely to harm R.T.'s federally protected rights to participate in, or benefit from, DCPS educational services, failed to act upon that likelihood, intentionally discriminating against R.T.

109 68.  Defendants violated 42 U.S.C. §§ 12131, 12132, and their implementing regulations.

**FOURTH CAUSE OF ACTION**
**Deprivation of ADA Rights under Color of State Law**

110 69. Plaintiffs incorporate and re-allege Paragraphs 1-5468 and 86-109.

111 70. DCPS offers, and is required by law to offer, educational programs and services for individuals with disabilities, as well as for individuals who are not disabled.

32

112 71. R.T. is a qualified individual with a disability, under 42under 42 U.S.C. §12102, and therefore has a right, under 42 U.S.C. §§ 12131, 12132 to be free from exclusion from, or denial of the benefits of, those DCPS services and programs by reason of his disability.

113 72.  Defendants Grant, ParkerTurner, and Homesley intentionally excludedintentionally excluded R.T. from participation in, and denied him the benefits of, DCPS services and programs solely on account of his disability, in willful violation of his ADA rights.

114 73. Defendants Janey and Wilhoyte ratified the actions of Defendants Grant, Parker Turner and Homesley, or knew thatknew that there was a substantial risk of injury to R.T.'s right to participate in, and benefit from, DCPS educational programs, and failed to act to prevent that harm.

115 74.  Defendants, acting under color of state law, denied R.T. the rights granted him by 42 U.S.C. §§ 12131, 12132, in violation of 42 U.S.C. §1983.

### FIFTH CAUSE OF ACTION
### Violation of D.C. Human Rights Act Prohibition of Discrimination by An Educational Institution

116 75. Plaintiffs incorporate and re-allege Paragraphs 1-5474 and 86-115.

33

117 76. R.T. is a person with a disability, who is qualified to participate in DCPS services, programs, and benefits.

118 77. DCPS is an educational institution.

119 78. Defendants intentionally denied, restricted or abridged R.T.'s use of and access to DCPS educational services, programs, and benefits and benefits on account of his disability.

120 79. Defendants violated the D. C. Human Rights Act, DC Code § 2-1402.41, by intentionally discriminating against R.T. on the basis of his disability and by denying him access to educational services and benefits on discriminatory grounds.

121 80. Defendants Janey and Wilhoyte's practiceWilhoyte's practice or policy of ignoring their subordinates' violations of R.T.'s rights had the effect or consequence of violating those rights, and constitutes an unlawful discriminatory practice prohibited under D.C. Code § 2-1402.68.

### SIXTH CAUSE OF ACTION

### Violation of D.C. Human Rights Act Prohibition of Discrimination by A D.C. Agency or Office

122 ~~81~~. Plaintiffs incorporate and re-allege Paragraphs 1-54~~80 and 86-121~~.

123 ~~82~~. R.T. is a person with a disability.

124 ~~83~~. DCPS is an agency or office of D.C. government.

125 ~~84~~. Defendants intentionally limited or refused to provide to R.T.~~T.~~

~~DCPS~~ services, programs or benefits on the basis of his disability.

126 ~~85~~. Defendants violated the D.C. Human Rights Act, DC Code § 2-1402.73 by limiting or refusing to provide services, programs or benefits to Plaintiff on the basis of his disability.

127 ~~86~~. Defendants Janey and ~~Wilhoyte's practice~~ Wilhoyte's practice or policy o~~ff~~

~~ignoring~~

~~their~~ ignoring their subordinates' violations of R.T.'s rights had the effect or consequence of violating those rights, and is an unlawful discriminatory practice under by D.C. Code § 2-1402.68.

**SEVENTH CAUSE OF ACTION**
**Aiding and Abetting Discrimination, in Violation of DC Human Rights Act**

128 ~~87~~. Plaintiffs incorporate and re-allege Paragraphs 1-54~~86 and 86-127~~.

129 88. R.T. is a person with a disability.

130 89. DCPS is an educational institution and an agency or office of

D.C. government.

131 90. Defendants limited or refused to provide to him DCPS

services, programs or benefits on the basis of his disability, in violation of

DC Code §§ 2-1402.41 and 2-1402.73.

132 91. Defendants each aided and abetted, invited, or coerced or

attempted to aide, abet, invite or coerce an act forbidden by the D.C.

Human Rights Act in violation of DC Code §§ 2-1402.62.

### EIGHTH CAUSE OF ACTION
### Retaliation and Interference, in Violation of Title II of the ADA, Section 504 of the Rehabilitation Act and of the  D.Cthe D.C. Human Rights Act

133 92. Plaintiffs incorporate and re-allege Paragraphs 1-5491 and 86-132.

134 93. R.T. is a qualified person with a disability, the exercise of

whose rights of access to DCPS services and programs is protected by

Title II of the ADA, Section 504 of the Rehabilitation Act, and the D.C.

Human Rights Act.

135 94. Ms. Tomonia has aided and encouraged R.T. in the

exercise and enjoyment of R.T. rights, as a student  withstudent with

disabilities, to participate in DCPS educational services, programs and

benefits, by among other things, attending Section 504 Team meetings,

advocating his right to accommodations necessary to permit him to

benefit from or participate in ~~DCPS  services~~DCPS services, programs and activities and his due process rights under Section 504 and under DC Law, and filing a due process complaint to obtain the services that R.T. requires and is entitled to under Section 504,  Title II of the ADA, the D.C. Human Rights Act and D.C. municipal regulations.

136 ~~95~~. Defendants have retaliated against Ms. Tomonia because of her advocacy of his rights and have interfered with her advocacy of R.T.'s rights, for the purpose of excluding R.T. from and depriving R.T. of the benefits of DCPS services and programs, and Defendants' retaliation against Ms. Tomonia has injured her.

137 ~~96~~. Defendants violated 29 U. S.C.  § 794(a) (2), 34 C.F.R. §104.61, 34 C.F.R.  §100.7(e), 42. U.S.C. §12203 ~~and  D.C~~and D.C. Code § 2-1402.61(a).

### NINTH CAUSE OF ACTION
### Deprivation of Fifth Amendment Rights under Color of State Law
### [Violation of 42 U.S.C. §§§1983]

138  Plaintiffs re-allege and incorporate Paragraphs 1- 11 and 55-93.

139 .R.T. has a property interest in his education.

RT had a property interest in attending Takoma EC during school year 2006-2007.

140  R.T. has a liberty interest in his reputation and a liberty interest in receiving the care and protection of his mother.

141 Defendant Grant intentionally deprived him of his property interests in his education without due process of law.

142. Defendants Parker, Homesley Wilhoyte, and Janey intentionally deprived R.T. of his property interest in his education, his liberty interest in his reputation and his liberty interest in receiving the care and protection of his mother without due process of law.

143. Defendants Grant, Parker, Homesley, Wilhoyte and Janey, acting under color of state law, deprived R.T. of property and liberty interests guaranteed him by the Fifth Amendment, without due process of law, in violation of 42 U.S.C. §1983.

144. Defendant District of Columbia is liable for the conduct of Defendant Janey who at all relevant times was the highest policy-making officer of DCPS.

### TENTH CAUSE OF ACTION
### Deprivation of Fifth Amendment Rights under Color of State Law
### [Violation of 42 U.S.C.§ 1983]

145. Plaintiffs re-allege and incorporate Paragraphs 1-11, 55-93 and 138- 144.

146, Ms. Tomonia has a liberty interest in the direction and management of R.T.'s education.

147. Defendants Parker, Homesley, Wilhoyte and Janey, acting under color of state law, intentionally, arbitrarily and maliciously deprived Ms. Tomonia of that liberty interest without due process in violation of the Fifth Amendment and 42 U.S.C. §1983.

148. DCPS regulations entitle a parent to access to, or copies of, a child's records, including all disciplinary records and incident reports.

DCPS regulations entitle a parent to prior notice of all proposed disciplinary actions, permit a parent to attend any disciplinary conference, entitle a parent to a hearing if the parent disagrees with the result of a disciplinary conference, and entitle a parent to review all of her child's records prior to any conference or hearing.

149. Defendants Parker, Homesley, Wilhoyte and Janey denied Ms. Tomonia a non-custodial parent with full parental rights to participate in and direct R.T.'s education, rights accorded a parent under DCPS regulations.

150. Defendants' classification of non-custodial parents who hold full parental rights to participate in and direct their child's education as not parents for purposes of DCPS regulations governing access to records and participation in disciplinary proceedings was irrational, arbitrary, served no legitimate state interest,and impermissibly burdened Ms. Tomonia's fundamental right to participate in or direct her son's education, in violation of her Fifth Amendment Equal Protection rights.

151. Defendants Parker, Homesley, Wilhoyte and Janey, acting under color of state law, deprived Ms. Tomonia of her right to equal protection of the law in violation of 42 U.S.C.§ 1983.

152. In the alternative, Defendants Parker, Homesley, Wilhoyte and Janey arbitrarily and maliciously singled Ms. Tomonia out, denying her rights to which she was entitled under DCPS regulations as a parent, while according those rights to other persons who had no claim to

parental status and had no legal authority to act on R.T's behalf, in violation of Ms. Tomonia's Fifth Amendment right to equal protection of the laws.

153. Defendants Parker, Homesley, Wilhoyte and Janey, acting under color of state law, deprived Ms. Tomonia of her right to equal protection of the law in violation of 42 U.S.C. §1983.

154. Defendant Janey was at all times relevant to this action the highest policy-making official of DCPS, consequently Defendant District of Columbia is liable to Plaintiff for Defendant Janey's violation of Plaintiff's rights.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court enter judgment for Plaintiffs and grant them the following relief:

1) Issue permanent injunctive and declaratory relief against Defendant DCPS, enjoining DCPS from excluding R.T. from the classroom and from school without notice to Ms. Tomonia and without convening a manifestation determination meeting and re-evaluating R.T., enjoining DCPS from withholding from Ms. Tomonia  records, notices, reports and other information concerning R.T., and enjoining DCPS from refusing or failing to provide R.T. all accommodations and services required by his Section 504 Plan;

2) Issue permanent injunctive and declaratory relief against Defendants District of Columbia, Janey Wilhoyte and Homesley, ~~Janey, Wilhoyte and Homesley~~, their successors and attorneys, enjoining them from excluding R.T. from the classroom and from school without notice to Ms. Tomonia and without convening a manifestation determination meeting and re-evaluating R.T, enjoining them from withholding from Ms. ~~Tomonia records~~Tomonia records, notices, reports and other information concerning R.T., and enjoining them from refusing or failing to provide R.T. all accommodations and services required by his Section 504 Plan;

3) Order Defendants District of Columbia, Janey, Wilhoyte, Grant, Parker and Homesley to pay to Plaintiffs exemplary and compensatory damages, to compensate Plaintiffs for the injuries that they have suffered;

4) Order Defendants District of Columbia, Janey, Wilhoyte, Grant, Parker and Homesley to pay for educational services to R.T. to compensate him for the injuries that he has suffered;

5) Order Defendants Janey, Wilhoyte, Grant, Parker and Homesley to pay to Plaintiffs punitive damages, to deter those Defendants from future violations of the rights of RT and other students with disabilities;

6) Order Defendants to expunge from R.T.'s records all record of disciplinary infractions in school years 2005-2006 and 2006-2007, and Order Defendants to compensate him for the time during which he was

denied instruction as a result of the disciplinary actions taken against

him in violation of his Due Process rights;

6̶7). Award Plaintiffs their reasonable attorney's fees and expenses;

8̶7) Provide such other and further relief as the Court considers just and

reasonable.


**JURY DEMAND**

Plaintiffs demand a jury trial for all issues so triable.

Dated: December M̶a̶y̶ 03 1̶0̶, 2007

Respectfully submitted,


Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Rd, N.W.
Washington, D.C. 20007
(202) 333-8553
202-333-1546(Fax)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LINDA TOMONIA,                                    ]
In her own right, and as next                     ]
friend of her son, R.T.                           ]
6817 Georgia Ave. NW, Apt 421                     ]
Washington, D.C. 20012                            ]
                                                  ]
R.T., a minor,                                    ]
By his mother and next friend,                    ]
Linda Tomonia,                                    ]
6817 Georgia Ave. NW. Apt 421                     ]
Washington, D.C. 20012

                                        Civ. Action No 7-CV-0882 (JR)


                                                  ]
                                                  ]
        Plaintiffs,                               ]
                                                  ]
                                                  ]
            v.                                     ]
                                                  ]
DISTRICT OF COLUMBIA,                             ]
A municipal corporation,                          ]
John A. Wilson Building                           ]
1350 Pennsylvania Ave., NW                        ]
Washington, D.C. 20004,                           ]
                                                  ]
CLIFFORD JANEY,                                   ]
In his official capacity and personal            ]
capacity as,                                      ]
Superintendent,                                   ]
District of Columbia Public Schools              ]
Ninth Floor                                       ]
825 North Capitol St, NE                          ]
Washington, D.C.20002,                            ]
                                                  ]
                                                  ]
MARY GRANT,                                       ]
In her personal capacity,                         ]
Principal,                                        ]
Takoma EC

1

7010 Piney Branch Rd. NW
Washington, DC 20012


MARCIA PARKER
In her personal capacity,
Principal,
Turner ES
3264 Stanton Rd, SE
Washington, DC 20020


DENNIS HOMESLEY
In his personal capacity,
Principal,
Payne ES
305 15th St, SE
Washington, DC 20003


WILLIAM WILHOYTE
In his personal capacity,
Assistant Superintendent
DCPS
Ninth Floor
825 North Capitol St. NE
Washington, DC 20002

      Defendants

------------------------------------


## FIRST AMENDED COMPLAINT

(Declaratory and Injunctive Relief, Compensatory and Punitive
Damages for Violations of, and of rights under, the Americans with
Disabilities Act, Section 504 of the Rehabilitation Act of 1973  the
D.C. Human Rights Act, and the Fifth Amendment and attorney's
fees)

## PRELIMINARY STATEMENT

This civil action arises out of actions taken by Defendants in

School Years 2005-2006 and 2006-2007 to exclude Plaintiff  R.T., a

student with disabilities, from activities, services and programs offered by the D.C. Public Schools (DCPS) , and to deny him  the benefit of those services and programs. Defendants did not provide R.T. with accommodations required by his Section 504 Plan, excluded him from the classroom and from school for conduct arising out of his disability, and denied him the due process safeguards to which he is entitled as a student with disabilities. Defendants' actions resulted in R.T.'s retention in Fifth Grade this school year, and may well result in his retention in Fifth Grade next school year.

Plaintiffs assert claims pursuant to Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, and the D.C. Human Rights Act (HRA), D.C. Code §§ 2-1401.01 et seq.,  arising out of intentional conduct of the Defendants which excluded R.T., solely because of his disabilities, from educational services and programs offered by DCPS and denied him the benefits of those programs and services on account of his disabilities. Plaintiffs also bring claims, under those statutes, for actions of Defendants that were taken against Ms. Tomonia in retaliation for her advocacy of her son's rights as a student with disabilities.

The ADA, 42 U.S.C. §§ 12131, 12132, mandates that  "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities "offered by a public entity. Plaintiffs bring their ADA claim directly under the ADA, as well as pursuant to Section 1983.

Section 504 requires that " no otherwise qualified individual with a disability….shall, solely by reason of her or his disability, be excluded

from participation in , be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…..." 29 U.S.C. § 794(a). Plaintiffs bring their Section 504 claims directly under Section 504, as well as pursuant to Section 1983. Section 504 prohibits Defendants from excluding R.T. from DCPS programs because of conduct arising out of R.T.'s disability.

To ensure that a student with disabilities is not excluded from school because of his disabilities, Section 504 requires DCPS to conduct a "manifestation determination" meeting and re-evaluations of a student with disabilities, before taking a disciplinary action that would result in his exclusion from school for more than 10 days in any school year. Defendants have disciplined R.T, by excluding him from school on many occasions: on no occasion have Defendants convened a manifestation determination meeting or re-evaluated R.T.

The HRA prohibits any educational institution and any agency or office of D.C. government, from limiting or refusing to provide any service, program of benefit to any individual on the basis of that individual's disability, and prohibits anyone from aiding, abetting, inviting, or compelling such action. D.C. Code §§ 2-1402.41, 2-1402.73, 2-1402.62.

The ADA, Section 504 and the HRA each prohibit retaliation against any person for that person's advocacy of the rights of a student with disabilities.

**JURISDICTION**

This Court has jurisdiction over  Plaintiffs' claims brought under the ADA and Section 504 of the Rehabilitation Act of 1973, pursuant to

4

42 U.S.C. § 12133, 29 U.S.C § 794a (a)(2), 28 U.S.C. §§ 12201,

2202,1331, 1333, 1343 and 1983. Jurisdiction over Plaintiffs' D.C.

Human Rights Act claims is conferred by D.C. Code. § 2-1403.16 and by

28 U.S.C.   § 1367. Venue lies in the District of Columbia pursuant to 28

U.S.C. §1391.

## PARTIES

1. Plaintiff R.T. is a twelve-year old resident of the District of

Columbia, now repeating the Fifth Grade at Payne E.S., who has

Attention Deficit Hyperactivity Disorder [ADHD] and a history of

psychological and behavioral difficulties. Because of his ADHD, R.T. has

difficulty focusing on classroom presentations, understanding and

following directions, sitting still for prolonged periods, recalling

instructions for classroom and homework assignments, and completing

those assignments, among other problems. Psychiatric evaluations

performed in June 2006 and July 2007 found R.T. to be severely

emotionally disturbed. Auditory Processing and Occupational Therapy

evaluations performed in Summer 2007 found R.T. to have auditory

processing and visual-motor integration disorders. These problems

substantially limit his ability to perform a major life activity, that of

learning. R.T., therefore, is an individual with a disability under the ADA,

42 U.S.C. § 12102, Section 504, 29 U.S.C. § 705(20), and the D.C.

Human Rights Act, D.C. Code. § 2-1401.02(5A).

   2. When R.T. was in the Third Grade and a student at Community

Academy Public Charter School---a DCPS public charter school---R.T.

was formally determined to be a student with disabilities who requires

accommodations under a Section 504 Plan in order to benefit from his

public education. Community Academy developed and implemented a

Section 504 Plan for R.T.  R.T. attended the School for Arts in Learning

Public Charter School (SAIL], a DCPS charter school, primarily for

children identified as having special needs, in Fourth Grade, where his

Section 504 Plan was revised and implemented.

   3. In Fifth Grade, in school year 2005-2006, R.T. attended Takoma

EC, his DCPS home school. In school year 2006 -2007, R. T. attended,

first, Turner ES, from August 2006 through early March 2007, and then

Payne ES. While attending these three DCPS schools, R. T. was

repeatedly excluded from instructional programs in the classroom and

excluded altogether from school and from school activities, because of his

disabilities, was repeatedly denied access to DCPS programs, services,

and activities, was repeatedly denied the accommodations that were

required by his Section 504 Plan, and was repeatedly deprived of the

procedural safeguards that federal and local law mandate. This action is brought on his behalf by his mother, Ms. Linda Tomonia.

4.  Plaintiff Linda Tomonia is a resident of the District of Columbia and is the mother of R.T. She brings this action on her own behalf and on behalf of her son.

5. Defendant District of Columbia ["DC"] is a municipal corporation which itself receives federal funds and which is responsible for ensuring that  those DC agencies that receive federal funds comply with their obligations under District and federal law, including IDEA, the ADA, Section 504 of the Rehabilitation Act, the District of Columbia Human Rights Act and their implementing regulations.

6.  Defendant Clifford Janey is Superintendent of DCPS, a public educational institution and independent agency within the District of Columbia government, which receives Federal educational and other funds. DCPS provides educational services, activities and programs through its own public schools and public charter schools.  As superintendent, Defendant Janey is responsible for implementing policies, plans and procedures that conform with the requirements of Federal and D.C .Law, including the Individuals with Disabilities Education Act, as amended ( IDEA) , Section 504, the ADA, and the District of Columbia Human Rights Act.

7.  Pursuant to DCPS Board of Education regulations, Defendant Janey is the most senior policy-making officer of DCPS. Defendant Janey was personally involved in making decisions to exclude R.T. from DCPS educational programs, services and activities on account of his disability and to deprive him and his mother of procedural safeguards mandated by federal and local law. He is sued in his personal and in his official capacity.

8. Defendant Mary Grant is the principal of Takoma EC.  On information and belief, she is notorious within the DCPS community for discriminating against students with disabilities. While R.T. attended Takoma EC, Defendant Grant intentionally excluded R.T. from educational programs, services and activities on account of his disabilities, deprived R.T. of accommodations required by his Section 504 Plan and denied him and his mother the procedural safeguards guaranteed them under federal and local law. Defendant Grant is sued in her personal capacity.

9.  Defendant Marcia Parker is the principal of Turner ES.  While R.T. was enrolled at Turner ES, Defendant Parker intentionally excluded R.T. from educational programs, services and activities on account of his disabilities; deprived R.T. of accommodations required by his Section 504 Plan and denied him and his mother the procedural safeguards

guaranteed them under federal and local law. Defendant Parker is sued in her personal capacity.

10. Defendant Dennis Homesley is the Principal of Payne ES. While R. T. was enrolled at Payne ES, Defendant Homesley intentionally excluded R.T. from educational programs, services and activities on account of his disabilities; deprived R.T. of accommodations required by his Section 504 Plan and denied him and his mother the procedural safeguards guaranteed them under federal and local law. Defendant Homesley is sued in his personal capacity.

11. Defendant William Wilhoyte is an assistant superintendent of DCPS, and is the assistant superintendent directly responsible for supervising Payne ES. Defendant Wilhoyte was personally involved in decisions to exclude R.T. from educational programs, services, and activities at Payne ES on account of R.T.'s disabilities. He is sued in his personal capacity.

### FACTUAL ALLEGATIONS

### Violation of Disabilities Statutes

12. For school year 2005-2006, R.T. resided within the residential boundaries of Takoma EC, which, under Board of Education regulations, was required to provide him educational programs, services, and activities that it provided to other students within its residential limits. During school year 2005-2006, Defendant Mary Grant intentionally took

9

the following actions that excluded R.T. from DCPS programs, activities and services, because of his disability:

a) Repeatedly excluded R.T. from his classroom because of his disabilities;

b) Repeatedly telephoned, or instructed her staff to telephone, Ms. Tomonia and ordered Ms. Tomonia to remove her son from school because of his disabilities;

c) Repeatedly suspended R.T., because of his disabilities, and suspended him to all intents and purposes continuously from on or about May 1, 2006 through June 2006;

d) Directed that R.T. be dismissed or excluded from Takoma EC's after-school program, because of his disabilities;

e) Directed that R.T. be excluded from Takoma EC and prohibited from attending Takoma EC for school year 2006-2007, because of his disabilities;

f) Denied R.T. the accommodations he required under his Section 504 Plan;

g) Deprived R.T. and his mother of the procedural safeguards to which they were entitled under federal law, by, *inter alia*, denying them notice of those rights, depriving them of their rights to manifestation determination meetings, re- evaluation and revision of accommodation plans and determination of eligibility for IDEA services on each and every occasion that R.T. was suspended or excluded from school.

10

13. In March and May 2006 Ms. Tomonia contacted the central administration of DCPS, seeking assistance for her son, and informed DCPS administrators that R.T. was being repeatedly excluded from Takoma EC.

14. DCPS administrators did not inform Ms. Tomonia of her rights and the rights of her son under Federal or local law, and did not act to restrain Defendant Grant from excluding R.T. from Takoma EC.

15. As a result of his repeated exclusions from classroom instruction during school year 2005-2006, R.T. did not master Fifth Grade instructional material. Takoma EC informed Plaintiffs that R.T. would have to repeat the Fifth Grade.

16. In August 2006, R.T. enrolled in Turner ES to repeat his Fifth Grade year.

17. From August 2006 through February 2007, Defendant Marcia Parker intentionally took the following actions excluding R.T. from DCPS programs, activities and services, because of his disability:

a) Repeatedly excluded R.T. from his classroom because of his disabilities;

b) On information and belief, instructed her staff to telephone R.T.'s foster parent on at least seven days in September and October 2006, ordering the foster parent to remove R.T. from school because of his disabilities;

c) Excluded R.T., because of his disabilities, from Turner ES by suspending him on two or more occasions in February 2007 for periods exceeding ten days;

d) Deprived R.T. and his mother of their rights to manifestation determination meetings, re-evaluation and educational instruction when she suspended R.T.;

e) Denied R.T. the accommodations he required under his Section 504 Plan;

f) Withheld from Ms. Tomonia educational records, Section 504 Plan reports and other information that Defendant Parker was required to provide Ms. Tomonia under DC Law, and under Section 504 and the ADA.

18. On November 1, 2006, Ms. Tomonia informed the D.C. State Enforcement Agency and the Office of General Counsel for DCPS that Turner ES was excluding R.T. from school and denying him the accommodations required by his Section 504 Plan.

19. Defendants did not act to prevent R.T.'s exclusion from Turner ES and did not act to ensure that R.T. and his mother received the services and programs required by his Section 504 Plan.

20. On or about March 5, 2007 R.T. was enrolled at Payne ES.

21. For most of approximately the next two weeks R.T. spent virtually no time in the classroom.

22. On March 19, 2007 Defendant Homesley intentionally excluded R.T. from the programs, services and activities of Payne ES on account of his disabilities, suspending him from school for a period of ten days.

23. On March 20, 2007 through March 22, 2007, Ms. Tomonia wrote Defendant Homesley and staff at Payne ES, advising them that R.T. was a student with disabilities, that exclusion from Payne on account of his disabilities violated federal law, and requesting that Defendant Homesley re-admit R.T.

24. During that period, Ms. Tomonia contacted the following officers and personnel of DCPS seeking their assistance in obtaining R.T.'s re-entry to Payne ES:

   a) Defendant Superintendent Clifford Janey;

   b) Defendant Assistant Superintendent William Wilhoyte;

   c) Linda Roberts;

   d) Jennifer Finch;

   e) Timothy Williams;

   f) DCPS General Counsel, Abby Hairston.

25. In Ms. Tomonia's communications to those DCPS officers and staff, Ms. Tomonia requested that they direct Defendant Homesley to permit R.T. to return to Payne ES. She informed those officers:  that Defendant Homesley had unlawfully excluded her son, a student with disabilities, from Payne Es, on account of his disabilities, that her son previously been excluded from school for 23 days during this school year

13

and was in danger of being retained, again, as a result of loss of classroom instruction, that Defendant Homesley had failed to convene the manifestation determination meeting required by Section 504 or to provide R.T. and Ms. Tomonia the due process safeguards mandated by Section 504:

26. Those persons took no steps to assure R.T's re-entry to Payne ES, did not act to require that Defendant Homesley convene a manifestation determination meeting or conduct evaluations of RT.

27. Defendants Janey and Wilhoyte ratified or approved Defendant Homesley's exclusion of RT on account of his disabilities.

28. On November 1, 2006, Ms. Tomonia filed a Due Process Complaint with the DCPS Student Hearing Office, seeking, inter alia, enforcement of R.T.'s rights under Section 504 and the IDEA.   By sheer coincidence, Ms. Tomonia was at a hearing on her Due Process Complaint on March 19, 2007, the date that Defendant Homesley excluded R.T. from Payne ES.  Ms. Tomonia informed the Hearing Officer that Principal Homesley had that morning illegally excluded her son from Payne ES, and requested that the Hearing Officer order DCPS to re-admit RT to Payne, forthwith.

29. Defendants initiated, at that Hearing, actions that were intended to deprive R.T., as a student with disabilities of his Due Process Rights, and deprive him of benefits available to DCPS students   and which   retaliated against Ms. Tomonia for her assertion of those rights at

14

the Due Process Hearing.  Immediately following Ms. Tomonia's request

for an order requiring that Payne ES re-admit R.T., Defendant's counsel

moved to dismiss her Due Process Complaint, alleging that the DCPS

Student Hearing Office had no jurisdiction to hear Section 504 matters

and alleging that Ms. Tomonia's sole recourse, under Section 504, was a

complaint filed with the Federal Department of Education's Office of Civil

Rights.

    30. Section 504 regulations promulgated at 34 C.F.R. § 104.36 and

DCPS regulations promulgated at 5 DCMR Chapter 24  require that

DCPS make available to  R.T. an impartial due process hearing, as well

as other procedural safeguards, including notice.

    31. The Hearing Officer took DCPS' motion under advisement and

ordered the parties to submit memoranda of law on the issue.

    32.  On March 19 and March 20, 2007, Ms. Tomonia notified

Defendant Clifford Janey and DCPS General Counsel Abby Hairston that

DCPS' motion deprived students with disabilities of their due process

rights and requested that DCPS withdraw its motion to dismiss Ms.

Tomonia's Due Process Complaint for lack of Section 504 jurisdiction.

    33. On March 26, 2007, DCPS submitted to the Hearing Officer a

memorandum asserting that Ms. Tomonia's Due Process Complaint must

be dismissed and Plaintiffs should be required to pursue a "grievance

procedure"

a) that was not in existence at the time that Plaintiffs filed their Due Process Complaint;

b) that was not in existence at the time that DCPS made its motion to dismiss;

c) of which DCPS had given Plaintiffs no notice; and

d)  that violated Section 504's due process hearing requirements.

34.  Defendant Janey ratified the actions of DCPS counsel retaliating against Plaintiffs, denying R.T. his due process rights solely because of his disability and depriving him of services or programs available to non-disabled students.

36.  As of May 10, 2007, the Hearing Officer had not issued a decision on DCPS' motion to dismiss, and Plaintiffs' Section 504 due process hearing had not recommenced. As a consequence, RT will have been denied relief for essentially the remainder of this school year.

37. Defendants both failed to provide RT the accommodations that they were required to provide him under the Section 504 plan that DCPS had created, but failed repeatedly to revise that Plan to provide the additional accommodations that RT required. As a result of Defendants' refusal to conduct manifestation determinations and otherwise address RT's ADHD, psychological and emotional disabilities, RT spent large amounts of the time that he was in school (i) wandering the hallways, (ii) sitting in the school office, (iii) resting at his desk or (iv) wandering off campus.

16

38. Defendants have failed to perform any assessment of the impact of R.T.'s ADHD on his ability to benefit from his public education, at any point during school years 2005-2007, or in connection with any exclusion of R.T.

39. Defendants, seeking to continue, unimpeded, their exclusion of R.T. from, and denial to him of the benefits of DCPS programs, services and activities, and acting to retaliate against Ms. Tomonia for her advocacy of R. T.'s rights as a student with disabilities, repeatedly withheld from Ms. Tomonia information, reports and educational records that Defendants are required to provide her under DC Law, under Section 504 and the ADA.

40. Records and notices withheld from Ms. Tomonia included, most notably, notices of suspensions, disciplinary actions, and security incidents, which Defendants Homesley and Parker denied Ms. Tomonia all together or which were withheld for a period long enough to prevent or impede  Ms. Tomonia from taking action to preserve her son's right to remain in school.

41. Defendant Homesley has denied Ms. Tomonia notice of meetings and conferences concerning her son, and disciplinary actions under consideration or taken against him.

42. Defendants Janey and Wilhoyte ratified Principal Homesley's conduct in withholding information from Ms. Tomonia.

43. On information and belief, Defendant Parker or Defendant Homesley, acting alone or in concert with others, and acting in retaliation for Ms. Tomonia's advocacy of R.T.'s rights as a student with disabilities, altered or directed their staff to alter R.T.' s DCPS Cumulative File, eliminating his mother's name and address from that file and altering his Grade assignment.

44. On May 10, 2007 the DCPS Student Hearing Office transmitted to Plaintiffs the Hearing Officer's Determination of their November 1, 2006 Due Process Complaint

45. The Hearing Officer found that DCPS had repeatedly disciplined R.T. without conduct evaluations of R.T, and ordered DCPS to conduct comprehensive evaluations of R.T. and determine his need for services.

46. DCPS did not conduct evaluations of R.T.

47. On or about June 4, 2007 Defendant Homesley again decided to discipline R.T. by excluding him from school for the remainder of the school year.

48. DCPS did not evaluate R.T, conduct a manifestation determination for RT, or comply with Section 504's due process requirements before disciplining R.T.

49. Ms. Tomonia requested that Defendants Janey and Wilhoyte rescind Defendant Homesley's suspension of R.T, at least pending a hearing on that suspension. They failed to respond to Ms. Tomonia's

request or to rescind that suspension, ratifying Defendant Homesley's action.

50. On April 19, 2007 Ms. Tomonia filed a second Due Process complaint with the DCPS Student Hearing Office.

51. On August 9, 2007 a Hearing Officer's Determination issued as to Plaintiffs' second Due Process complaint.

52. The Hearing officer found that Defendants had failed to implement RT's 504 Plan and found that RT's required services under the Individuals With Disabilities Education Act. As a consequence of that decision and of an IEP meeting held pursuant to that decision, R,T, is enrolled at Oak Valley Center, a private special education facility that instructs students with severe emotional disturbance, ADHD and learning disabilities.

53. DCPS has a custom, practice or policy of excluding students with disabilities from or denying them the benefits of DCPS educational programs, services and activities.

54. DCPS will continue to exclude R.T. from, and deny him the benefit of DCPS programs, services and activities unless DCPS is enjoined from doing so.

## Deprivation of Constitutional Rights

55. DCPS regulations promulgated at Chapter 25 of Title V of the DC

Municipal Regulations create extensive due process rights for students subjected to disciplinary actions. They require, inter alias that a principal provide a parent oral notice, followed by written notice, mailed by certified mail within 24 hours of the day oral notice is given, of any disciplinary action that it proposes to take, requires that a principal hold a conference concerning any such action before it is taken, and provides that a parent my request an administrative hearing within two business days on any such action upon receipt of a request by the parent.

56. DCPS regulations promulgated at Chapter 26_ of Title 5 of the DC Municipal Regulations create a general right of access by a parent to her child's school records. 5 D.C. Mun. Regs 2600.1, DCPS disciplinary regulations specifically require that the parent be given access to the student's records "prior to the imposition of the proposed discipline," Id at 2506.5.   The records that Chapter 26 requires be open for inspection and review by a parent include: a student's cumulative record folder, any data collected or intended for use within DCPS, identifying data or information, academic work completed, grades and scores from standardized tests, health data and accident reports, observations and ratings by teacher, counselors and other DCPS personnel, and " reports of behavior or discipline problems or incidents." 5 D.C.Mun. Regs 2601.1.   Those regulations require that requests for access to records be made to the principal of the school which the child attends and where the records are located. Id. at 2600.4

20

57. In June 2006, Ms. Tomonia lost temporary custody of R.T.. On or about September 19, 2006 Magistrate Judge Breslow of D.C, Superior Court entered an Order affirming that Plaintiff Linda Tomonia retained all rights as parent to act with regard to all educational matters concerning RT. Judge Breslow further ordered that DCPS provide her access to all records, information, and meetings regarding RT. It stated:

> " The educational advocate, Karen Alvarez, and the mother.
> Linda Tomonia, are entitled to obtain educational records for
> [R.T.} from DCPS. Mother's access to [R.T.'s] educational
> records, information and meetings should not be restricted.
> Mother Linda Tomonia _retains all parental rights_ including the
> right to fully participate in [R.T's] education."

(Emphasis added).

58. On information and belief, Counsel for Defendant District of Columbia was present at the hearing at which Judge. Breslow entered that Order.

51.Plaintiff Linda Tomonia gave a copy of Judge Breslow's Order to Defendant Parker in October 2006.

59.Beginning in February 2007 Defendants began deliberately withholding from Plaintiff Linda tomonia information concerning her son's education.

60. Information withheld from her by Defendants Parker, Homesley, Wilhoyte, and Janey included any and all notices of disciplinary actions taken against R.T, removals of R.T. from the classroom and suspensions of

R.T. from school, as well as all factual information concerning the reasons, for the disciplinary actions taken, the rules that R.T. was alleged to have violated, and the persons involved in any of the incidents that supposedly precipitated the disciplinary actions taken by Defendants, and the duration of each suspension.

61. Defendants deliberately withheld such information and notice on, among others, the following occasions:

(a) In February 2007, when Defendant Parker excluded and then suspended R.T;

(b) In March 2007, when Defendant Homesley excluded or suspended R.T, and information was withheld by Defendants Homesley, Wilhoyte and Janey;

(c) On or about May 5, 2007, when Defendant Homesley called police to the school and information was withheld by Defendants Homesley, Wilhoyte and Janey;

(d) On or about May 31, 2007, when Defendant Homesley excluded RT from school;

(e) On or about June 1, 2007, when Defendant Homesley filed a criminal complaint with the police, resulting in RT's arrest, and information was withheld by Defendants Homesley, Wilhoyte and Janey.

    (f) On or about June 4, 2007, when Defendant Homesley decided to

        suspend R.T. from school for the remainder of the school year,

        and information was   withheld by Defendants Homesley,

        Wilhoyte and Janey.

62. Defendants withheld any prior notice of those actions from Ms. Tomonia, and refused, when she learned that Defendants had initiated disciplinary actions against her son, to provide her with copies of the suspension notices or any factual information concerning the suspension or the facts underlying it.

63. Defendants did not provide a single coherent explanation for their refusal to provide Ms. Tomonia access to this information. Instead, Defendants at different times and occasions offered conflicting, and implicitly contradictory, rationales, for their conduct, which were arbitrary, capricious, and purely pretextual. These included:

(a) That it was easier to telefax a copy of the suspension notice to a social worker than to telefax it to Ms. Tomonia (Defendant Parker, March 2007);

(b) that DCPS was not required to  provide a copy of a suspension notice to Ms. Tomonia because Judge Breslow's Order did not expressly address the question of disciplinary notices (Defendant Homesley, March 2007);

(c) that DCPS would not release copy of a DCPS incident report reporting RT's misconduct to his mother,  because release of a report " to public" was barred under the D.C. FOIA statute, if  the report were draft report (DCPS General Counsel Hairston, May 2007);;

(d) that DCPS attorneys had ordered Defendant Homesley not to allow Ms. Tomonia access to her son's records (Defendant Homesley, May 2007).

64.  The logic underlying these rationales appeared to be that Ms. Tomonia, because she had lost temporary custody of her son, had lost, in effect, standing as his parent: a conclusion that blatantly disregarded Judge Breslow's Order. That Defendants asserted rationales for denying Ms. Tomonia access to information, particularly disciplinary information, and access to disciplinary proceedings, were entirely pretextual is apparent from the fact that Defendants did not, in connection with either of the Due Process Complaints filed by Ms. Tomonia ( first on November 1, 2006 and second on April 19, 2007) allege that Ms. Tomonia did not have standing to file such a complaint on her son's behalf.

64. Defendants did provide such information to other persons who were not entitled under DCPS regulations or under Judge Breslow's Order either to receive that information or to utilize it to enforce R.T's rights.

65, Defendant Parker provided notice of the disciplinary action that she took to a social worker with a private company that had contracted with DC to provide foster care for R.T.

66. The social worker to whom Defendant Parker provided that information:

    a.  did not hold legal custody of R.T.;

    b.   did not have authority to represent R.T. or to make decisions on behalf of R.T. in connection with any educational questions;

    c.  did not have authority to represent R.T. in connection with any disciplinary conference or  proceedings; and

    d.  did not have authority to request any administrative conference or hearing on his behalf

67. Defendant Homesley first took disciplinary action against R.T. in March  2007. Defendant Homesley gave notice of that suspension to a Mr. and Mrs. Drayton, private persons who had contracted with a private company to provide foster care to R.T., and invited them to a school conference concerning the then proposed disciplinary action.

68. As of March 19, 2007 Mr. and Mrs. Drayton::

    a.  did not have legal custody of R.T.;

    b.  were paid by and under contract to a private company that did not have legal custody of R.T;

    c.  did not have authority to represent R.T. or to make decisions on behalf of R.T. in connection with any educational questions;

    d.  did not have authority to represent R.T. in connection with any disciplinary conference or  proceedings; and

e.  did not have authority to request any administrative conference or hearing on his behalf.

f.  Had known R.T. for less than two weeks;

g.  Had virtually no knowledge of R.T.'s psychiatric or educational history, of the accommodations that he  was entitled to receive, of accommodations or programming that he required, or of his capacity to understand or control his behavior.

69. There was no rational or lawful basis on which Defendants could refuse Ms.Tomonia information.

70. Defendants did so in order to prevent Ms. Tomonia from participating in any conference, prior to her son's suspension, from requesting an administrative due process hearing, or from taking other action to prevent her son's suspension or otherwise protect his rights. Defendants' actions in fact ensured that Ms. Tomonia could take no effective action before the suspension period had been completed.

71. Defendants' actions violated Ms. Tomonia's substantive due process right, under the Fifth Amendment to participate in, manage, or direct her son's education, and violated her Fifth Amendment right to Equal Protection of the laws.

72. DC Code Section 38-202 provides that all students aged 5 through 18 are entitled to a free public education and .requires all students between the ages of 5 and 18  to attend school daily.

73. R.T. has a property interest in his right, as a DC student, to attend school.

74. The suspensions or exclusions initiated by Defendants Parker and omesley in February, March and June 2007 resulted in the exclusion of R.T. from school for some 20 days in February and ten or more days in each of March and June.

75. As a result of those disciplinary actions, R.T. was excluded for some 40 days. or more during the period February 2007- June 14, 2007, the last day of school. This amounted to 40 percent of all school days during that period,

76. R.T. was deprived, by Defendants Homesley, Parker, Wilhoyte and Janey of his substantive due process property interest in attending school for some 40 days without a hearing and without any effective opportunity to obtain or means of obtaining a hearing.

77. Defendant Janey was the highest policy making official of DCPS at the time that he deprived Plaintiffs of their Fifth Amendment rights, consequently his actions are those of the Defendant the District of Columbia.

78. In addition, R.T. was excluded, for disciplinary reasons, by Defendant Parker for some seven days in September-October 2006., without complying with DCPS suspensions regulations, without notice of his rights or opportunity whatsoever for hearing..

79, . R.T. was suspended by Defendant Grant for some 51 days during the period December 2005 through June 2006.

80.Defendant Grant did not provide R.T. or his mother notice of R.T.'s right to a hearing to contest the disciplinary actions taken by Grant.

81..'R.T. was deprived of his substantive due process property interest in attending school for some 51 days without notice of his right to a hearing and without a hearing..

82. Takoma EC was the school within whose attendance zone R.T. resided.

83. Under DCPS regulations, R.T. had a right to attend Takoma EC, by virtue of his place of residence, and had no such right to admission to any other DCPS school. DCPS regulations created a property interest in RT's admission and attendance at Takoma EC. They state:

> " A local school administrator shall not exclude from admission or attendance any compulsory school-aged minor who resides in his or her school's attendance zone…unless the minor has been involuntarily transferred."

5 D.C. Mun. Reg.§2002.18,

84.. Defendant Grant informed R.T.'s mother that she would not permit RT to register at Takoma the following school year.

85. Defendant Grant deprived R.T. of his right to attend Takoma EC without notice of his right to a hearing and without providing him a hearing.

## PLAINTIFFS' INJURIES

86.   Defendants' intentional conduct excluded R.T. from, and denied him the benefits of, educational services and programs offered by DCPS solely on account of his  disabilities and their severity.

87.   R.T. was excluded from the classroom and denied the classroom instruction that he required in order to benefit from his public education in school years 2005-2006 and 2006-2007.

88. R.T. was forced to repeat Fifth Grade in school year 2006-2007, has not yet mastered the Fifth Grade curriculum, and very likely will not have mastered the Fifth Grade curriculum by close of the 2006-2007 school year.

89. R.T. was denied the accommodations that he required and that Defendants were legally obligated to provide him, with the result that RT at the age of twelve can not understand written material beyond the Third Grade level.

 90. R.T. suffered humiliation and severe emotional distress, resulting in his hospitalization at Children's National Medical Center in June 2006.

91.  Ms. Tomonia suffered economic losses, loss of work time and incurred additional child care expenses, when R.T. was excluded from Takoma EC and its child care program.

92. Ms. Tomonia suffered anxiety, emotional distress, and loss of work time as a result of Defendants retaliation against her.

93. Plaintiffs have exhausted any applicable administrative remedies.

### FIRST CAUSE OF ACTION
### Violation of Section 504

94 .   Plaintiffs incorporate and re-allege Paragraphs 1-54,and 86-93 .

95 .  R.T. is a qualified individual with a disability under 29 U.S.C. .§ 705(20), and is qualified to participate in educational services, activities and programs offered by D.C.P.S.

96 . Defendants intentionally excluded R.T. from participating in and denied him the benefits of DCPS educational programs and services, solely because of his disability, in willful violation of his Section 504 rights.

97 . Defendants violated 29 U.S.C.  § 794(a).

### SECOND CAUSE OF ACTION
### Deprivation of Section 504 Rights under Color of State Law

98 . Plaintiffs incorporate and re-allege Paragraphs 1-56 and 86-97.

99 .  DCPS offers, and is required by law to offer, educational programs and services for individuals with disabilities, as well as for individuals who are not disabled.

100 . R.T. is a qualified individual with a disability, under 29 U.S.C. § 794, and therefore has a right to be free from exclusion from, or

denial of the benefits of, those DCPS services and programs by reason of his disability.

101 .  Defendants Grant, Parker, and Homesley intentionally excluded R.T. from participation in, and denied him the benefits of, DCPS services and programs solely on account of his disability, in willful violation of his Section 504 rights.

102 . Defendants Janey and Wilhoyte ratified the actions of Defendants Grant, Parker and Homesley, or knew that there was a substantial risk of injury to R.T.'s right to participate in, and benefit from, DCPS educational programs, and failed to act to prevent that harm.

103 . Defendants, acting under color of state law, denied R.T.  the rights granted him by Section 504 of the Rehabilitation Act, in violation of 42 U.S.C.§1983.

**THIRD CAUSE OF ACTION**
**Violation of ADA Title II**

104 . Plaintiffs incorporate and re-allege Paragraphs 1-54 and 86-103.

105 . DCPS receives federal funds, offers, and is required by federal law to offer, educational programs and services for individuals with disabilities as well as for individuals who are not disabled.

106 . R.T. is a qualified individual with a disability, who is qualified to participate in and receive the benefits of DCPS educational services.

107 . Defendants, solely by reason of his disability, intentionally excluded R.T. from participation in, and denied him the benefits of, DCPS programs and services, in willful violation of his ADA rights.

108 . Defendants, knowing that their actions were substantially likely to harm R.T.'s federally protected rights to participate in, or benefit from, DCPS educational services, failed to act upon that likelihood, intentionally discriminating against R.T.

109 .  Defendants violated 42 U.S.C. §§ 12131, 12132, and their implementing regulations.

## FOURTH CAUSE OF ACTION
### Deprivation of ADA Rights under Color of State Law

110 . Plaintiffs incorporate and re-allege Paragraphs 1-54 and 86-109.

111  DCPS offers, and is required by law to offer, educational programs and services for individuals with disabilities, as well as for individuals who are not disabled.

112 . R.T. is a qualified individual with a disability, under 42 U.S.C. §12102, and therefore has a right, under 42 U.S.C. §§ 12131, 12132 to be free from exclusion from, or denial of the benefits of, those DCPS services and programs by reason of his disability.

113 .  Defendants Grant, Parker, and Homesley intentionally excluded R.T. from participation in, and denied him the benefits of, DCPS services and programs solely on account of his disability, in willful violation of his ADA rights.

114 . Defendants Janey and Wilhoyte ratified the actions of Defendants Grant, Parker  and Homesley, or knew that there was a substantial risk of injury to R.T.'s right to participate in, and benefit from, DCPS educational programs, and failed to act to prevent that harm.

115 .  Defendants, acting under color of state law, denied R.T.  the rights granted him by 42 U.S.C. §§ 12131, 12132, in violation of 42 U.S.C. §1983.

### FIFTH CAUSE OF ACTION
### Violation of D.C. Human Rights Act Prohibition of Discrimination by An Educational Institution

116 . Plaintiffs incorporate and re-allege Paragraphs 1-54 and 86-115.

117  R.T. is a person with a disability, who is qualified to participate in DCPS services, programs, and benefits.

118 . DCPS is an educational institution.

119 . Defendants intentionally denied, restricted or abridged R.use of and access to DCPS educational services, programs, and benefits

and benefits on account of his disability.

120 . Defendants violated the D. C. Human Rights Act, DC Code § 2-1402.41, by intentionally discriminating against R.T. on the basis of his disability and by denying him access to educational services and benefits on discriminatory grounds.

121 . Defendants Janey and Wilhoyte's practice or policy of ignoritheir subordinates' violations of R.T.'s rights had the effect or consequence of violating those rights, and constitutes an unlawful discriminatory practice prohibited under D.C. Code § 2-1402.68.

## SIXTH CAUSE OF ACTION

### Violation of D.C. Human Rights Act Prohibition of Discrimination by A D.C. Agency or Office

122 . Plaintiffs incorporate and re-allege Paragraphs 1-54 and 86-121.

123 . R.T. is a person with a disability.

124 . DCPS is an agency or office of D.C. government.

125 . Defendants intentionally limited or refused to provide to R.T.DCPS services, programs or benefits on the basis of his disability**.**

126 . Defendants violated the D.C. Human Rights Act, DC Code § 2-1402.73 by limiting or refusing to provide services, programs or benefits to Plaintiff on the basis of his disability.

127 . Defendants Janey and Wilhoyte's practice or policy of

ignoring their subordinates' violations of R.T.'s rights had the effect or

consequence of violating those rights, and is an unlawful discriminatory

practice under by D.C. Code § 2-1402.68.

## SEVENTH CAUSE OF ACTION
### Aiding and Abetting Discrimination, in Violation of DC Human Rights Act

128 . Plaintiffs incorporate and re-allege Paragraphs 1-54 and 86-

127.

129 . R.T. is a person with a disability.

130 . DCPS is an educational institution and an agency or office of

D.C. government.

131 . Defendants limited or refused to provide to him DCPS

services, programs or benefits on the basis of his disability, in violation of

DC Code §§ 2-1402.41 and 2-1402.73.

132 . Defendants each aided and abetted, invited, or coerced or

attempted to aide, abet, invite or coerce an act forbidden by the D.C.

Human Rights Act in violation of DC Code §§ 2-1402.62.

## EIGHTH CAUSE OF ACTION
### Retaliation and Interference, in Violation of Title II of the ADA, Section 504 of the Rehabilitation Act and of the D.C. Human Rights Act

133 . Plaintiffs incorporate and re-allege Paragraphs 1-54 and 86-

132.

134 . R.T. is a qualified person with a disability, the exercise of

whose rights of access to DCPS services and programs is protected by

Title II of the ADA, Section 504 of the Rehabilitation Act, and the D.C.

Human Rights Act.

135 . Ms. Tomonia has aided and encouraged R.T. in the exercise

and enjoyment of R.T. rights, as a student with disabilities, to participate

in DCPS educational services, programs and benefits, by among other

things, attending Section 504 Team meetings, advocating his right to

accommodations necessary to permit him to benefit from or participate

in DCPS services, programs and activities and his due process rights

under Section 504 and under DC Law, and filing a due process

complaint to obtain the services that R.T. requires and is entitled to

under Section 504,  Title II of the ADA, the D.C. Human Rights Act and

D.C. municipal regulations.

136 . Defendants have retaliated against Ms. Tomonia because of

her advocacy of his rights and have interfered with her advocacy of R.T.'s

rights, for the purpose of excluding R.T. from and depriving R.T. of the

benefits of DCPS services and programs, and Defendants' retaliation

against Ms. Tomonia has injured her.

137 . Defendants violated 29 U. S.C.  § 794(a) (2), 34 C.F.R.

§104.61, 34 C.F.R.  §100.7(e), 42. U.S.C. §12203 and D.C. Code § 2-

1402.61(a).

## NINTH CAUSE OF ACTION
## Deprivation of Fifth Amendment Rights under Color of State Law
## (Violation of 42 U.S.C. §§§1983]

138  Plaintiffs re-allege and incorporate Paragraphs 1- 11 and 55-93.

139 .R.T. has a property interest in his education.

RT had a property interest in attending Takoma EC during school year 2006-2007.

140  R.T. has a liberty interest in his reputation and a liberty interest in receiving the care and protection of his mother.

141 Defendant Grant intentionally deprived him of his property interests in his education without due process of law.

142. Defendants Parker, Homesley Wilhoyte, and Janey intentionally deprived R.T. of his property interest in his education, his liberty interest in his reputation and his liberty interest in receiving the care and protection of his mother without due process of law.

143. Defendants Grant, Parker, Homesley, Wilhoyte and Janey, acting under color of state law, deprived R.T. of property and liberty interests guaranteed him by the Fifth Amendment, without due process of law, in violation of 42 U.S.C. §1983.

144. Defendant District of Columbia is liable for the conduct of Defendant Janey who at all relevant times was the highest policy-making officer of DCPS.

## TENTH CAUSE OF ACTION
### Deprivation of Fifth Amendment Rights under Color of State Law
### [Violation of 42 U.S.C.§ 1983]

145. Plaintiffs re-allege and incorporate Paragraphs 1-11, 55-93 and 138- 144.

146, Ms. Tomonia has a liberty interest in the direction and management of R.T.'s education.

147. Defendants Parker, Homesley, Wilhoyte and Janey, acting under color of state law, intentionally, arbitrarily and maliciously deprived Ms. Tomonia of that liberty interest without due process in violation of the Fifth Amendment and 42 U.S.C. §1983.

148. DCPS regulations entitle a parent to access to, or copies of, a child's records, including all disciplinary records and incident reports. DCPS regulations entitle a parent to prior notice of all proposed disciplinary actions, permit a parent to attend any disciplinary conference, entitle a parent to a hearing if the parent disagrees with the result of a disciplinary conference, and entitle a parent to review all of her child's records prior to any conference or hearing.

149. Defendants Parker, Homesley, Wilhoyte and Janey denied Ms. Tomonia a non-custodial parent with full parental rights to participate in and direct R.T.'s education, rights accorded a parent under DCPS regulations.

150. Defendants' classification of  non-custodial parents who hold full parental rights to participate in and direct their child's education as not parents for purposes of DCPS regulations governing access to records and participation in disciplinary proceedings was irrational, arbitrary, served no legitimate state interest,and impermissibly burdened Ms.

Tomonia's fundamental right to participate in or direct her son's education, in violation of her Fifth Amendment Equal Protection rights.

151. Defendants Parker, Homesley, Wilhoyte and Janey, acting under color of state law, deprived Ms. Tomonia of her right to equal protection of the law in violation of 42 U.S.C.§ 1983.

152. In the alternative, Defendants Parker, Homesley, Wilhoyte and Janey arbitrarily and maliciously singled Ms. Tomonia out, denying her rights to which she was entitled under DCPS regulations as a parent, while according those rights to other persons who had no claim to parental status and had no legal authority to act on R.T's behalf, in violation of Ms. Tomonia's Fifth Amendment right to equal protection of the laws.

153. Defendants Parker, Homesley, Wilhoyte and Janey, acting under color of state law, deprived Ms. Tomonia of her right to equal protection of the law in violation of 42 U.S.C. §1983.

154. Defendant Janey was at all times relevant to this action the highest policy-making official of DCPS, consequently Defendant District of Columbia is liable to Plaintiff for Defendant Janey's violation of Plaintiff's rights.

**RELIEF REQUESTED**

Plaintiffs respectfully request that this Court enter judgment for Plaintiffs and grant them the following relief:

1) Issue permanent injunctive and declaratory relief against Defendant DCPS, enjoining DCPS from excluding R.T. from the classroom and from school without notice to Ms. Tomonia and without convening a manifestation determination meeting and re-evaluating R.T., enjoining DCPS from withholding from Ms. Tomonia records, notices, reports and other information concerning R.T., and enjoining DCPS from refusing or failing to provide R.T. all accommodations and services required by his Section 504 Plan;

2) Issue permanent injunctive and declaratory relief against Defendants District of Columbia, Janey Wilhoyte and Homesley, , their successors and attorneys, enjoining them from excluding R.T. from the classroom and from school without notice to Ms. Tomonia and without convening a manifestation determination meeting and re-evaluating R.T, enjoining them from withholding from Ms. Tomonia records, notices, reports and other information concerning R.T., and enjoining them from refusing or failing to provide R.T. all accommodations and services required by his Section 504 Plan;

3) Order Defendants District of Columbia, Janey, Wilhoyte, Grant, Parker and Homesley to pay to Plaintiffs exemplary and compensatory damages,

to compensate Plaintiffs for the injuries that they have suffered;

4) Order Defendants District of Columbia, Janey, Wilhoyte, Grant, Parker and Homesley to pay for educational services to R.T. to compensate him for the injuries that he has suffered;

5) Order Defendants Janey, Wilhoyte, Grant, Parker and Homesley to pay to Plaintiffs punitive damages, to deter those Defendants from future violations of the rights of RT and other students with disabilities;

6) Order Defendants to expunge from R.T.'s records all record of disciplinary infractions in school years 2005-2006 and 2006-2007, and Order Defendants to compensate him for the time during which he was denied instruction as a result of the disciplinary actions taken against him in violation of his Due Process rights;

7). Award Plaintiffs their reasonable attorney's fees and expenses;

8) Provide such other and further relief as the Court considers just and reasonable.


**JURY DEMAND**

Plaintiffs demand a jury trial for all issues so triable.

Dated: December  03, 2007

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Rd, N.W.
Washington, D.C. 20007
(202) 333-8553
202-333-1546(Fax)