IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | |
|---|---|
| LINDA TOMONIA, et al, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Civ.Action No 7-CV-0882(JR) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al, | ) |
| | ) |
| Defendants. | ) |
| ......................................... | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSTION TO DEFENDANTS' MOTIONS FOR JUDGEMNT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT


Defendants have moved for summary judgment on all claims set forth in Plaintiffs Amended Complaint and for judgment on the pleadings. Doc.No. 46.  As discussed below, Defendants' motion does not establish that they are entitled to judgment as a matter of law. Plaintiffs demonstrate, below, that they can establish, at trial in this action, the elements of the claims set out in their Amended Complaint.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery materials , together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine which facts are material , a court must look to the substantive law on which

each claim rests. Anderson v. Liberty Lobby, Inc. 477 U.S.242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. Id. at 248.

In considering a motion for summary judgment, the court must draw all justifiable inferences in the non-moving party's favor and accept the nonmoving parity's evidence as true. Id. at 255. A non-moving party must establish more that the mere existence of a scintilla of evidence in support of its position. Id. at 252. To prevail on a motion for summary judgment, the moving party must show that the non-moving party failed to make a showing sufficient to establish the existence of an element of that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. Id.

A court may not weigh conflicting evidence or weigh the credibility of the parties.

Conley Davidson v. Orange Lake Country Club, 2008 US Dist Lexis 15704 at * 12 (M.D. Fla. Feb. 29, 2008)

## I.     PLAINTIFF LINDA TOMONIA RETAINS CAPACITY TO SUE ON BEHALF OF RT

### A. Ms. Tomonia Retains All Parental Rights By Court Order

In an action before the Family Division of DC Superior Court in May 2006, legal custody of RT was transferred from Ms. Tomonia to the DC Department of Child and Family Services, pursuant to an order of Judge J. Breslow. Doc. 46 at 7. On September 19, 2006, Judge Breslow issued an Order, finding that, notwithstanding her transfer of custody of RT to Child and Family Services, Plaintiff Linda Tomonia retained all

parental rights with respect to RT. '. Doc.50-8 at 6 (custody of RT placed in Child and Family Services ); Id. at 9 ( Ms. Tomonia retains all parental rights). Judge Breslow's Order of September 2006 expressly stated that Ms. Tomonia retained all parental rights to participate in RT's education. Id. at 9.

Defendants argue that Ms. Tomonia does not have standing to sue on RT's behalf because she is not a custodial parent. Doc. 46 at 6-7. Despite the facts that (1) Judge Breslow's Order of September 19, 2006 is quoted in Plaintiffs' Complaint, (2) counsel for Defendants was present at the Family Division hearing at which Judge Breslow issued that Order, (3) Judge Breslow's Order was provided to Defendants Parker, Homesley, Janey and Wilhoyte, Defendants make no reference whatsoever to Judge Breslow's Order in the course of their argument. See Doc. 46 at 6-7 (not mentioning Judge Breslow's September 19, 2006 Order)..

Instead, Defendants rely on Harmatz v. Harmatz, 457 A.2d 399, 401 (DC 1983) and  Foretich v. Glamour, 741 F. Supp. 247, 248 (DDC 1990), to support their argument that, under DC Law,  Plaintiff Tomonia can not have standing to sue on RT's behalf because she does not have custody of RT. Doc. 46 at 6. Those cases are not apposite : at most those cases stand for the proposition that , as between two divorced or divorcing parent, it is the custodial parent who has the right to sue on a child's behalf.

**B. D.C. Code Provides that Plaintiff Retains Right to Sue on RT's Behalf**

Title XVI , Chapter 23 of D.C. Code governs the rights of parents custody of whose  children has been transferred to the Department of Child and Family Services.

Section 16-2301 (20) sets forth the rights and duties of a parent as guardian of the person of her child. It sets for the certain general duties and rights, and enumerates certain specifically included rights. Among the specifically included, but independent rights and obligations that Section 16-2301 recites are :

    (A)      Authority to… represent the minor in legal actions and to make other decisions concerning the minor of substantive legal significance…..;

    (C)      Rights and responsibility of legal custody, when guardianship of the person is exercised by the natural parent, except where legal custody has been vested in .. an agency.

D.C. Code 16-2301 (20). Chapter 23 also defines " legal custody." Under Chapter 23, "legal custody" means a legal status created by a Family Division order. D.C. Code 16-2301(21). Section 16-2301 (21) lists attributes of "legal custody" but does not include among them the right to represent the minor in legal actions and to make other decisions of substantive legal significance. It explicitly provides that any Family Division Order of legal custody is " subordinate to the rights and responsibilities of the guardian of the person of the minor.." Id at 16-2301 (21)(C),. Accordingly, under DC Code 16-2301 , A Family Division judge may transfer either "legal custody" of the child away from the natural parent, or may transfer the "guardianship of the person of the minor" away from the parent. See DC Code 16-2301 (22), DC Code 16-2320. Where a judge transfers only legal custody, the parent retains the right, as guardian of the person of the child, to represent the minor legal actions. DC Code 16-2301 (20(A).


**C. Plaintiff Retains Right to Sue under <u>Elk Grove</u>**

As Judge Breslow' s Order of September 19, 2006 states, Plaintiff Tomonia retains all parental rights, including the right, under DC-Code 16 -2301(20) to represent her son in legal actions. Therefore, under Elk Grove Unified Sch. Dist. V. Newdow, 542 US 1 (2004), Plaintiff Linda Tomonia has standing to represent RT in this action. 542 US at 15 (court determining whether parent may represent child in legal action must look first to general law of the state and then, specifically to any court orders determining authority of parent with respect to the child); id (parent holding right to litigate on child's behalf under court order has standing).

## II.    Ds EXCLUDED RT FROM, DENIED RT BENEFITS OF, DCPS PROGRAMS, SERVICES AND BENEFITS AND DISCRIMINATED AGAINST HIM IN VIOLATION OF SECTION 504 AND THE ADA.

Defendants seek summary judgment as to all claims of Plaintiff RT under Section 504, Title II of the ADA and the DC HRA. See Doc. 46 at 1. However, Defendants Memorandum of Points and Authorities addresses only one of Plaintiff RT's claims. See id at 9-12 (addressing only claim that Defendants' repeated suspensions of RT constituted exclusion , denial of services or benefits in violation of disabilities statutes).

### A.  Defendants' Suspensions of RT Constituted Exclusions of RT on the Basis of Disability in Violation of the Disabilities Statutes

To make a prima facie case of discrimination, exclusion or denial of benefits or services under Section 504, Title II of the ADA or the D.C. HRA,  a  plaintiff must show that (1) he is a qualified handicapped individual, (2) that he was excluded from, or denied the benefits of  or otherwise discriminated against by (3) a "recipient of federal funds", in

the case of Section 504, or a  "public entity " in the case of Title II or an "agency" or

"educational institution" in the case of the D.C. HRA and (4) the denial or exclusion or

discrimination was because of his disability. <u>Sullivan v. Vallejo City Unified Sch. Dist</u>,

731 F. Supp. 947, 957 (E.D. Cal. 1990)(elements of Section 504 Claim); <u>Swenson v.</u>

<u>Lincoln Co, Sch. Dist</u>. 260 F.Supp. 2d. 1136, 1144 (D. Wyo. 2003)(elements of Title II

claim);  <u>Mitchell v. Nat'l RR Passenger Corp</u>, 407 F. Supp. 2d 213, 240-41 (DDC 2005)(

the DC HRA follows ADA jurisprudence on disability discrimination).

### (a) **RT is qualified handicapped individual**.

Defendants do not dispute that RT is a qualified handicapped individual See Doc. 46 at 9-

12 (taking no issue with respect to qualification ).

### (b) **DCPS is a covered entity**.

Defendants do not dispute that DCPS is a "recipient of federal funds" for

purposes of Section 504, or that DCPS is a "public entity" for purposes of Title II, or that

DCPS is an "agency" or "educational institution" for purposes of the DC HRA. See Doc.

46 at 9-12 (not taking issue with status of DCPS as covered entity).

### (c) **DCPS excluded RT from, or denied him the benefits of**
### **DCPS programs, activities and services**

Defendants do not dispute that defendants Grant, Parker and Homesley excluded

RT by suspending him on many occasions. Doc. 46 at 10 -12.

### (d) **Defendants  excluded RT from school because of his**
### **disability**

Defendants concede  that Principals Grant, Parker and Homesley excluded RT

from Takoma EC, Turner ES, and Payne ES  for "fighting or disrupting the class", for "

not following directions," for "inappropriate behavior," for " talking back, walking out of class and roaming the halls," for "bringing a toy gun to school", for "not going to class, " and for "assaulting another student.." Doc. 46 at 10-11

Defendants assert that those actions do not constitute violations of the disabilities statutes. Doc. 46 at 12 But see Doe v. Honig, 484 US 305, 325, 325 n. 8 (1987)( school seeking to suspend handicapped student for 10 days or more can do so only if it complies with change-of-placement procedures and concludes that conduct does not arise from disability); Morgan v. Chris L, 1997 US App Lexis 1041 at * 12  (6th Cir. 1997)( Section 504 requires that schools accommodate handicapped children's behavioral problems by developing a behavior management plan, rather than disciplining them) S-1 v. Turlington, 635 F.2d 342, 348 (5th Cir.), cert denied , 102 S.Ct. 566 (1981) (when school attempts to discipline child covered by Section 504, school must first comply with Section 504 change of placement procedural regulations, including re-evaluation  and convening of manifestation determination team, to determine whether  alleged misconduct is conduct arising from disability); LIH v. N. Y, City Bd of Educ. , 103 F. Supp.2d 658, 670 n.18 (school board violated Section 504 by suspending handicapped students without first determining that behavior did not arise from disability) .

When Defendants suspended RT, they excluded him for conduct arising from his disability, SMF No. 9(c), No. 9(g), No. 13 (c), No. 16, in violation of Section 504, the ADA and D.C. Code 2-1402.41 and D.C. Code 2-1402.73. See Mitchell v. Nat'l RR Passenger Corp., 407 F.Supp.2d 213, 240-41 (D.D.C. 2005) (DCHRA follows ADA case law on disability discrimination).

**B. Plaintiffs' Complaint Alleges Other Actions by Defendants, each independently violating RT's Rights under the Disabilities Statutes**

Plaintiffs' Complaint alleged multiple claims for violation of RT's rights under Section 504, Title Ii of the ADA, and the DC HRA. Claims are made with respect to actions taken by each of the three Principals of schools attended by Twitch respect to actions taken in common by the three Principals, and by actions of their superiors who ratified the three Principals' actions.

With respect to Principal Grant, the Complaint alleged that Principal Grant intentionally took nine separate types of actions, each of which independently excluded RT from DCPS programs, activities or services, in violation of these three statues. Complaint P 12 at 9-10 (alleging violations by virtue of exclusion from classroom, removal from school, repeated suspensions, exclusion from after-school program, exclusion from Takoma for following school year, and denial of accommodations required under RT's Section 504 Plan).

With respect to Principal Parker, the Complaint alleges that Principal Parker intentionally took six types of actions, each of which independently excluded RT from DCPS programs, activities or services, in violation of these three statutes. Complaint P 17 at 11-12 (alleging exclusions from classroom, removals from school, exclusions by repeated suspensions, deprivation of rights to manifestation determinations and evaluation, denial of accommodations required under Section 504 Plan, withholding of records, reports and other information); Complaint P 40 (denial of notices of disciplinary actions).

With regard to Principal Homesley, the Complaint alleges that he intentionally undertook six separate actions, each of which violated RT's rights under the three statutes. Complaint PP 21 failure to implement Section 504 Plan),23 ( suspension of RT on March 19 for ten days),25 (failure to convene manifestation determination meeting and comply with due process requirements), 37 (failure to provide accommodations required by Section 504 plan); 41 (denial of notices of meetings and conferences, and disciplinary actions),47 (June 4th suspension of RT for remainder of school year),48( failure to convene manifestation determination meeting or to comply with due process requirements before suspending RT).

In addition, Plaintiffs' Complaint alleged that as to the actions of each of the three Principals, DCPS had notice of their violations of RT's rights, but failed to act to avert those violations, or ratified those actions, through conduct of Defendants Janey and Wilhoyte. Complaint PP 13, 14, 18, 19, 23-27, 32, 34, 42, 49.

None of these other claims are addressed by Defendants' Memorandum of Points and Authorities in support of their Motion for Summary Judgment. Defendants do not dispute any of the facts alleged by Plaintiffs' Complaint in connection with these actions. Defendants do not point to any statutory or case-law that might suggest that the actions taken by Defendants, as alleged by Plaintiffs' Complaint, do not constitute violations of the disabilities laws.

**C.  Plaintiffs Can Sustain Their Burden of Proof on Other Claims of RT under the Disabilities Statutes**.

**1. Defendants discriminated against RT, excluded him from and denied him the benefits of DCPS programs when they deprived him of a full day of instruction,**

Defendants repeatedly excluded RT from the classroom. SMF No. 12(b).A school's refusal to allow student to attend a full day of school is a violation of Section 504.  Boston (MA) Renaissance Charter School, Complaint No. 01-97-1096 (OCR Sept. 5, 1997), 26 Indiv. With Disabilities Educ. Law Rep. 889 (504 accommodation plan for ADHD student that provides for early dismissals when student is "aggressive or dangerous" violates Section 504). Section 504 Regulations require school to provide its students with disabilities a school day comparable in length to the school day provided to all other students, unless a group of knowledgeable persons has compelling medical or educational reasons for recommending a shorter school day. Failure to provide a full day of schooling, compounded by fact that early dismissals were not proving effective and that the psycho-ed assessment did not recommend their continuation, constitutes a violation of the section 504 regulations. Id.

2. **Defendants discriminated against RT, excluded him from and denied him the benefits of DCPS programs when they excluded him from school-based after care program for conduct arising from his disability.**

Defendant Grant expelled RT from the Takoma EC after-care program for conduct arising out of his disability. SMF No. 9(d).  Exclusion from after-care programs for reasons of a child's disability constitutes discrimination prohibited by Section 504. See Morris Bd. Of Educ. ( SEA N.J. 2007)( Failure to provide 1/1 aide to handicapped student in after-school care violated 504 where after school care program linked to school district), 48 Individ with Disabilities Law Rep (requiring reimbursement of parent's costs in providing 1/1 aide).

**3. Defendants discriminated against RT, excluded him from and denied him the benefits of DCPS programs when they failed to provide him the accommodations required by his Section 504 Plan**

Defendants Grant , Parker and Homesley failed to implement RT's Section 504 Plan, SMF No.9(f), 13(e)), No. 17(e), No. 29 (Hearing Officers Determinations) . Defendants discriminated against RT in violation of Section 504 , Title II and the D.C. HRA. . John A. v. Gill, 565 F.Supp. 372, 383 (N.D.Ill. 1983); I.D. v. Westmoreland Sch. Dist., 788 F.Supp. 634, 640 (D.N.H. 1983)(accommodations a child requires arise solely from child's disability, consequently failure to provide those accommodations constitutes exclusion, discrimination or failure to provide benefits in violation of Section 504).

**4. Defendant Grant discriminated against RT, excluded him from and denied him the benefits of DCPS programs when she "exited " him from Takoma EC**

Defendant Grant discriminated against RT, on or about May 14, 2006, when she told  Ms.Tomonia that RT could not, because of his behavior,  return to Takoma EC the following school year. SMF No. 9(e).Defendant excluded him in violation of Section 504, the ADA and the D.C. HRA.

**5. Defendants' Conduct was intentional**

Defendants acted with deliberate indifference to RT's rights. Defendants knew that harm to RT's rights was substantially likely and failed to act on that likelihood. Kennington v. Marion Co. 2004 US Dist Lexis 19572 at * 21-22 (S.D. Ind. June 2004), citing Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001).

**III.    DEFENDANTS RETALIATED AGAINST PLAINTIFF LINDA TOMONIA IN VIOLATION OF SECTION 504 AND OF TITLE II OF THE ADA**

Defendants' Motion seeks summary judgment on Plaintiff Linda Tomonia's claim that Defendants retaliated against her in violation of Section 504, Title II of the ADA and the DC HRA. Doc. 46 at 1, 18-19. Defendants do not dispute the facts as alleged in Plaintiffs' Complaint; see id at 18-19; id at 20-22 (Statement of Undisputed Facts )( stating no facts relevant  to Plaintiffs' retaliation claim). Defendants assert that they are entitled to judgment as a matter of law on Plaintiffs' retaliation claim, but   offer no statutory- or case- law in support of that assertion.  As discussed below, Defendants do point out any element of  Plaintiffs' claim and show that, as to that element, Plaintiffs can not meet their burden of proof at trial.

.

**1. Due Process Rights under Section 504**

Section 504 is a broad remedial statute. It requires that DCPS promulgate procedures to safeguard the due process rights of protected individuals. Passatiempo v. Aizawa, 103 F3d. 796, 798 (9th Cir. 1996) It requires that , where school districts fail to adopt such procedures, the procedures of IDEA apply. Id. at 804. Among the procedural protections that it provides, and that it obligates DCPS to carry into effect, are  the requirements that DCPS provide protected individuals with an impartial due process hearing and with  prior written notice of their rights. 34 C.F.R. 104.36.

**2. Elements of Retaliation Claim**

The element of a retaliation clam under Section 504, the ADA and the D.C. HRA are: (1) that plaintiff was engaged in protected activity; 2) the defendant was aware of that activity; (3) that plaintiff suffered an adverse action and 4) there was a causal

connection between the protected activity. <u>Weixal v. NY city</u>, 287 F3d 138, 148 **(2d Cir**

2002)(Section 504 retaliation claim); <u>Weissman v. Dawn Joy Fashions Inc</u>.214 F3d

224,234, 2000 WL 714377 (2d Cir June 5, 2000)(ADA retaliation claim); D.C. Code 2-

1402.61.

### 3. Defendants Do Not Dispute That Plaintiffs Establish Elements of Retaliation Claim

As the Hearing Officer eventually determined, Defendants' motion was

groundless. Doc. 47-3 at 3-4. Ms. Tomonia was engaged in protected activity. See

<u>Muller v. Costello</u>, 187 F3d 298,311 (2d cir 1999) (seeking accommodations under

Section 504 is protected activity). Defendants' Opposition does not dispute that plaintiff

was engaged in a protected activity, when she sought, at the due process hearing held

March 19, 2007, to have the hearing officer rescind DCPS' suspension of RT. Doc. 46 at

18. Defendants' opposition does not dispute that Defendants were aware that Plaintiff

was engaged in a protected activity, when she attempted to advocate for her son's right to

remain in school. Id. See SMF No. 22. Defendants do not dispute that Plaintiff suffered

an adverse action, when, as a consequence of DCPS' motion, the hearing officer

determined that he could not rule on DCPS' suspension of RT until he determined that

the Student Hearing Office had jurisdiction to hear a Section 504 complaint. Id. See

SMF No. 23-24, 28. Defendants do not dispute that there was a causal connection

between Plaintiff's request that the hearing officer act on DCPS' illegal suspension and

DCPS' decision to move to dismiss her due process complaint on the entirely spurious

ground that the Student Hearing Office lacked jurisdiction over Section 504 complaints.

See Doc 46 at 18 ( defendants made motion to further their position). See also, SMF No.

13

23-24. Defendants do not dispute that Defendant Janey ratified the DCPS attorney's conduct. See id at 18-19. See also SMF No. 25-27.

**4. Defendants Are Not Privileged to Violate Section 504 Rights in Furtherance of Their Litigation Goals**

Defendants' Opposition suggests, without offering any statutory or case law support for the proposition, that a defendant school district that has (1) a statutory obligation to provide Plaintiff an impartial due process hearing in a Section 504 complaint; and (2) has a statutory obligation to provide Plaintiff prior written notice of her due process rights and the procedures in place through which she may pursue them is privileged to violate those rights in order to "further their position" in litigation.

DCPS is not free to violate Plaintiffs' rights under Section 504 in order to further its litigation position. <u>Oman v. Portland Pub. Schools</u>, 2005 Us Dist Lexis 45612 at * 28 (D. Ore. Sept 10, 2005) (IDEA retaliation action)(school attorney can not utilize litigation tactics if those tactics have effect of depriving parent of right guaranteed by statute).

**5. DCPS Retaliated Against Linda Tomonia in violation of Section 504, Title II of the ADA and the DC HRA**.

DCPS' motion to dismiss retaliated against Plaintiff in violation of Section 504. Id. at ** 28-30. (reasonable fact finder could find that school attorney who prohibited parent from talking to school staff who were to be witnesses at hearing did so in retaliation for parents' protected activity).

**IV.    DEFENDANTS, ACTING UNDER COLOR OF STATE LAW, DEPRIVED LINDA TOMONIA OF RIGHTS GUARANTEED HER BY THE FIFTH 5TH AMENDMENT**

Section 1983 supplies a private right of action against a person who, under color of state law, deprives a plaintiff of rights secured by the Constitution or state law. Frazier v. Fairhaven Sch.Comm. 276 F.3d 52, 57 (1st Cir. 2002). Supervisory liability attaches where the behavior of subordinates results in a constitutional violation and the supervisor's inaction was affirmatively linked to that behavior or could be characterized as supervisory condonation, acquiescence, or deliberate indifference.  Doe. v. Town of Bourne, 2004 US Dist. Lexis 10021 at * 20-21 (D. Mass May 28, 2004), citing Seekamp v. Michaud, 109 F3d 802,808 (1st Cir 1998).

**A. Deprivation of Fundamental Substantive Due Process Rights to Direct Education of Her Child**

Plaintiffs Amended Complaint alleges that Defendants, acting under color of state law, violated her fundamental substantive due process right to direct the education of RT, by, inter alia, denying her to information that she required in order to preserve RT's rights under the disabilities laws. Complaint at P. 71.

**1. Predicate Right Is Parent's Fundamental Substantive Right  to Direct Education of Child**

Defendants assert that Plaintiff's Section 1983 claim fails because Plaintiff does not establish a predicate constitutional violation. Doc. 46 at 14. Defendants' argument is in error. The Fifth Amendment provides protection against government interference with certain fundamental rights and liberty interests. Abigail Alliance v. Eschenbach, 495 F3d

15

695, 702 (DC Cir 2007), citing <u>Glucksberg</u> 521 US 702, 720 (1997). Among these specially protected fundamental rights and liberties is the right to direct the education of one's own children. Glucksberg, 521 US at 720. A parent's liberty interest in controlling the education of her child is one of the oldest fundamental interest recognized by the Supreme Court. <u>Toxel v. Granville</u>, 530 US 57,65 (__), <u>citing</u> <u>Meyer v. Nebraska</u>, 262 US 390, 399 (1923)( liberty interest protected by the due process clauses includes a parent's liberty interest in  controlling  the education of their own children). A parent has a fundamental right, as against the state, in her interest in controlling the education of her child, <u>Hutchins v. DC</u>, 188 F.3d 531, 541 (D.C. Cir 1999)(en banc), citing  <u>Wisconsin v. Yoder</u>, 406 US 205, 215 (1972)(only state interest of highest order can overcome parent's right to direct education of child)[1].

**2. Plaintiff retained that fundamental substantive right by Court order**

Plaintiff's fundamental substantive due process right was expressly retained pursuant to an Order of Magistrate Judge Julie Breslow, issued September 19, 2006. SMF No. 43.

**3.Defendants acted, under color of state law, with intent to deprive Plaintiff of that right.**

---

[1] A government's attempt to deprive an individual of a " fundamental right" triggers strict scrutiny by courts. See, e.g., Hutchins v. DC, 188 F3d 531, 536 (DC Cir 1999)(en banc), citing Reno v. Flores, 507 US 292, 301-02 (1993).Under strict scrutiny, any infringement on a parent's fundamental right to control her child's education can be justified only if the infringement is narrowly tailored to serve a compelling state interest. Id.

Defendants took deliberate steps to deprive Plaintiff of her parental right to direct her son's education, SMF No, 46, 47, fabricated conflicting justifications for their conduct, SMF No. 48, 49,  while providing that information to foster parents whom Defendants knew had no claim to that information, SMF  50. Defendants' acts prevented Ms. Tomonia from participating in any conference, prior to her son's suspension, from requesting an administrative due process hearing to contest a suspension, and from taking other actions to preserve his rights.

**4. DCPS' Highest Policy-Making Officers were personally involved in Defendants' Conduct.**

Defendant Janey, then the Superintendent of DCPS, along with Defendant Wilhoyte, were personally involved in these actions.  SMF No . 46.


**B. Deprivation of Fifth Amendment Right to Equal Protection of the Law, under Color of State Law.**

Plaintiffs' Complaint also alleges that Defendants, acting under color of state law, deprived her of her Fifth Amendment right to equal protection of the law, when they violated DCPS regulations, promulgated at V D.C. Mun. Regs Ch. 25, 26. that entitle a parent to participate in conferences and hearings with respect to disciplinary actions and entitle a parent to access to her child's school records.  Amended Complaint P. 71.

**1. Predicate Right is Right of Equal Protection of the Law**

Defendants erroneously assert that Plaintiffs identify no predicate constitutional violation. Doc. 46 at 16.  The Due Process clause of the Fifth Amendment  contains an equal protection component. Washington v. Davis, 426 US 229, 239(1976)(citing Bolling

v. Sharpe, 347 US 497(1954). It requires that persons similarly situated be treated

equally. It prohibits sates from "depriving any person within its jurisdiction the equal

protection of its laws, " and " essentially directs that all persons similarly situated be

treated alike. Lawrence v. Texas, 539 US 558, 579 (2003), citing City of Cleburne v. City

of Cleburne Living Center, 473 U.S. 432, 439 (1985). It demands particular scrutiny of

state action that  impinges on protected personal rights. City of Cleburne v. Cleburne

Living Ctr, 473 US at, 440. While the "prototypical equal protection claims involves

discrimination against people based on their member ship in a vulnerable class…the

equal protection guarantee also extends to individuals who allege no specific class

membership but are nonetheless subjected to invidious discrimination at the hands of

government officials." Barton v. City of Bristol, 294 F.Supp.2d 184, 194-95 (D.Conn.

2003), citing Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir.

2000).

> **2. DCPS regulations create parental rights to notice and participation in disciplinary conferences and hearings and rights of access to disciplinary information**

DCPS regulations promulgated at Chapter 25 of Title V of the DC

Municipal Regulations create extensive due process rights for students subjected to

disciplinary actions. They require, inter alias that a principal provide a parent oral notice,

followed by written notice, mailed by certified mail within 24 hours of the day oral notice

is given, of any disciplinary action that it proposes to take, requires that a principal hold a

conference concerning any such action before it is taken, and provides that a parent my

request an administrative hearing within two business days on any such action upon

receipt of a request by the parent.

DCPS regulations promulgated at Chapter 26 of Title 5 of the DC Municipal Regulations create a general right of access by a parent to her child's school records. 5 D.C. Mun. Regs 2600.1, DCPS disciplinary regulations specifically require that the parent be given access to the student's records "prior to the imposition of the proposed discipline," Id at 2506.5.   The records that Chapter 26 requires be open for inspection and review by a parent include: a student's cumulative record folder, any data collected or intended for use within DCPS, identifying data or information, academic work completed, grades and scores from standardized tests, health data and accident reports, observations and ratings by teacher, counselors and other DCPS personnel, and " reports of behavior or discipline problems or incidents." 5 D.C.Mun. Regs 2601.1.   Those regulations require that requests for access to records be made to the principal of the school which the child attends and where the records are located. Id. at 2600.4

**3.  Defendants denied plaintiff her parental rights to notice and participation in disciplinary conferences and hearings and rights of access to disciplinary information  in violation of their own regulations.**

Defendants' Parker, Homesley, Janey and Wilhoyte deprived Plaintiff of her parental rights to notice, participation, and access to records,  in violation of their own regulations. SMF No. 46,48, 13(f), 51. 5.

**4.   Defendants, acting under color of state law, deprived Plaintiff of rights guaranteed her under the Fifth Amendment.**

Defendants' conduct violated DCPS regulations and deprived Plaintiff of her right to equal protection of the law. PDP Tricounty Industries, Inc. v. DC, 104 F3d 455 , 458-459(1997)( deliberate flouting of law that trammels significant personal or

property rights violates due process rights), citing <u>Silverman v. Barry</u>, 845 F2d

1072,1080 (1988). See also <u>Club side v. Valentin</u>, 468 F3d 144, 159-60 (2d Cir.

2006)( plaintiff establishes class of one equal protection claim when plaintiff  shows

no rational basis for differential treatment and shows that the differences in treatment

are sufficient to exclude the possibility that defendants acted on basis of mistake).

There was no adequate post-deprivation remedy for the rights which Defendants

denied Plaintiff Tomonia. <u>See</u> <u>PDP Tricounty</u>, supra, 104 F.3d at 460.

## V.    DEPRIVATION OF R.T.'S  SUBSTANTIVE DUE PROCESS RIGHT TO EDUCATION UNDER THE 5TH AMENDMENT WITHOUT DUE PROCESS OF LAW UNDER COLOR OF STATE LAW

Plaintiffs' Amended Complaint alleges that the Defendants deprived RT of his

substantive due property interest in his education under color of state law. Defendants

argue that they did not violate RT's Fifth Amendment rights. Doc. 46 at 14.  They argue

that , because <u>Plaintiffs</u> filed due process complaints with the DCPS Student Hearing

Office, and received hearings on those complaints, no further process was due RT. Id at

15. Defendants cite no case law in support of the proposition that they have no obligation

to provide RT a hearing before they suspend him or deprive him of his liberty interest in

his education. See id. Nor do they explain how, once the deprivation has occurred, and

RT's  instructional time has been lost, any post-deprivation hearing could remedy that

loss. <u>See</u> <u>id</u>.

### A.  Deprivation of Substantive Due Process Interest in Education.

### 1.  DC statute creates property interest in education

DC Code Section 38-202 provides that all students aged 5 through 18 are entitled to a

free public education and requires all students between those ages to attend school daily.

**2.  RT has a property interest in his education.**

A property interest in education is created by state laws entitling students to a free public education and requiring them to attend school.  Goss v. Lopez, 419 US 565, 573, (1975)

**3. Exclusions from school require protection of the due process clause.**

Students facing 10-day suspensions from public school are entitled to protection under the due process clause.  Goss at 576.The Goss Court held that such protection requires schools to provide notice of the charges against the students, an explanation of the evidence the authorities have, and an opportunity to present student's side  of the story. Id. at 581.

Other exclusions from the educational process also require due process protection. Laney v. Farley, 501 F3d. 577, 581 (6th Cir. 2007). Removal or exclusion from school premises is not a prerequisite to a finding of "total exclusion from the educational process." Id. The focus of a substantive due process inquiry should be whether there has been an exclusion from the educational process, Id. Consequently, an in-school suspension may deprive a student of educational opportunities in the same ways as an out-of-school suspension. Id, citing Cole v. Newton Spec. Mun. Sep. Sch. Dist, 749, 751-52 (S.D. Miss. 1987), aff'd 853 F.2d 924 (5th Cir. 1988). (held: property interest in public education not implicated by 1-day in-school suspension where student required to complete all academic requirements ). See also Wise v. Pea Ridge Sch. Dist, 855 F.2d 560, 563 n.3 (8th Cir 1988) (3-day in-school suspension does not implicate property interest in education where student completed all assigned work during the suspension and did not fall behind in his school work as result of suspension). An in-school

suspension of sufficient length or consequence can implicate the Due process clause. 501
F3d. 577,584.

### 4   RT was denied any meaningful hearing as to all exclusions

RT was a 12 year old handicapped student at the time that Defendants disciplined him.
Because Defendants denied his mother notice, information and participation as to the
disciplinary actions they took,  RT was effectively deprived of any meaningful
opportunity to be heard before Defendants deprived him of  his education.

### 5. **Defendants Janey and Wilhoyte personally participated in depriving RT of his substantive and due process rights**.

Supervisory officials are personally involved when the official : directly participated
in the constitutional violation, or was informed of the violation through report or appeal,
but failed to remedy the wrong, or created a policy or custom under which the
unconstitutional practices occurred, or allowed the continuance of such a policy or
custom, or was grossly negligent in supervising subordinates who committed such
wrongful acts, or exhibited deliberate indifference to the right so others by failing to act
on information indicating that unconstitutional acts were occurring. Johnson v. Newburgh
Enlarged Sch. Dist. 239 F3d 246 (2d Cir. 2001).Defendants Janey and Wilhoyte were
personally involved in depriving RT of his rights. SMF No. 14-15, 18-21, No, 25, 37.


### VI .DEFENDANTS ARE NOT QUALIFIEDLY IMMUNE FROM SUIT

Defendants assert that they have qualified immunity from suit.Doc. 46 at 13. They
claim that they are immune because (1) RT was suspended from school because of his

behavior and (2) any reasonable official would believe that he had a right to suspend RT. Doc. 46 at 13. Defendants also assert that Defendants Janey and Wilhoyte should be dismissed , because Plaintiffs do not provide evidence that those defendants  were personally involved in excluding RT from school. Id. at 14; but see SMF No. 14-15, 18-21, 25, 37.

Defendants bear the burden of proof that they are immune from suit. Defendants' Opposition does not meet that burden. A public official is qualifiedly immune if: (1) his conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for the official to believe that his conduct did not violate clearly established constitutional rights. Lemon v. Miller, 66 F3d. 416, 418 (2d Cir. 1995). The defendant bears the burden of proof that it was "objectively reasonable " for him to believe that his behavior did not violate plaintiffs' clearly established rights. 66 F3d at 418 (2d Cir 1995)(quoting Anderson v. Creighton, 483 US 635 (1987)).For purposes of deciding the issue of qualified immunity, the only relevant inquiry is whether the constitutional right that plaintiffs claim rests on law that is well-settled: if it does, the immunity defense should fail, since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 US 800, 818 (1982.

RT's right to a hearing was clearly established by 1975. Goss v. Lopez, , 419 US 565, 573, (1975). No reasonably  competent school official could not have known that RT had a liberty interest in his education and was entitled to a due process hearing before he was suspended for 10 days or more. Harlow, 457 US at 818.


CONCLUSION

Defendants have not established that there are no material facts in genuine dispute and have not established that they are entitled to judgment as a matter of law. Plaintiffs respectfully request that the Court deny Defendants' motions.


Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Rd., N.W.
Washington, D.C. 20007
(202) 333-8553

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


LINDA TOMONIA, et al,                    )
                                         )
                                         )
                                         )
        Plaintiffs,                      )        Civ.Action No 7-CV-0882(JR)
                                         )
                                         )
            v.                           )
                                         )
DISTRICT OF COLUMBIA, et al,             )
                                         )
        Defendants.                      )
            .......................................................)


**<u>PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE DISPUTE SUBMITTED IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT</u>**


**<u>A. Plaintiffs' Response to Defendants' Statement of Undisputed
Facts, Doc. 46 at 20-23.</u>**

1. Admitted


2. Judge Breslow revoked an order of supervision on November 30, 2007,
and returned RT to the "custody" of the Division of Child and Family
Services, for a period not to exceed two years, but Judge Breslow did not
transfer guardianship of the person of RT away from his mother.

See Doc. 46-3 (providing for commitment/custody by Child and Family
Services Administration).

3. Admitted

4. Admitted, the conduct described is conduct arising out of his disability RT was suspended for conduct arising out of his disability. Doc. 47-3, 47-4.

5. Admitted, the conduct described is conduct arising out of his disability. Doc. 47-3, 47-4.

6. Admitted, the conduct described is conduct arising out of his disability. Id.

7 . Denied.  No hearings were held at Turner and no Manifestation Determination meeting was held at Turner ES or at any other of RT's schools. Doc. 47-3' Doc. 47-4.

A) The deposition transcript referred to shows that Plaintiff stated that there was a Section 504 Plan meeting held at Turner, not a " section 504 plan hearing". Ex. A at 158;

B) The transcript shows that Plaintiff testified that a meeting was held at Turner to determine whether RT was eligible for special education services. Ex A at 189, LL 6-9. See also 189 at 20-21 (plaintiff believes that the result of that meeting was that RT did not qualify for special education services).

C) Defendants' counsel at the deposition began this line of questioning asking whether there had ever been a "manifestation determination meeting" at Turner. Ex. at 188, LL19-22. Plaintiff answered that she believed so. Id. at 189 L 1. Then Counsel for Defendants asked Plaintiff

what she believed a "manifestation determination hearing " is. Id at 4-5.

Counsel for Defendants then switched back to the word " meeting." Id at

L 8. Plaintiffs responded that it was to determine whether RT was eligible

for special education services. Id at LL 6-7.

D) Plaintiff clearly was confused as to name of the meeting that she

described: she described an Multidisciplinary Team meeting, which is a

meeting convened to determine whether a child is eligible for special

education services. See_Ex. 2  (notes of the MDT meeting convened at

Turner )

9. Denied.

 A. The Deposition Transcript shows that RT did not testify that Takoma

provided counseling, or allowed him to take homework home, Ex. C at 35

LL 11, 18. Nor did he testify that Takoma gave him a behavioral plan or

rewards for completing work. See Ex C at 35-40 (questioning RT

concerning events at Takoma)

B. The Deposition Transcript shows that RT testified  that Payne ES did

not have behavior plan for him, Ex. C at 77 L 8, did not provide rewards

for completing work, id at L 21, did not provide counseling for him, id at

78 L 8, =

11. Denied.

A)  The Deposition Transcript shows that Plaintiff testified that she filed

two due process "violations."  Ex A at 175 , L 8.. The DCPS Student

Hearing Office does not have jurisdiction over Constitutional claims. See

Doc. 47-3 at 3; Doc. 47-4 at 2.

## B. ADDITIONAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

1.RT is a handicapped student otherwise qualified to participate in DCPS

programs and services, and was determined to require Section 504

accommodations in 2002. Doc 47-3 at 4 ,No. 10 (hearing officer's

determination); See also Doc. 47-4 at 7, findings 6, 7.8 (hearing officer's

determination).

2.  Defendant Clifford Janey is Superintendent of DCPS, a public

educational institution and independent agency within the District of

Columbia government, which receives Federal educational and other

funds..

     Doc. 47-4 at 4 (Janey, Highlights of the Proposed FY 2006

operating budget for DCPS)(projected budget includes $173.3 million in

US funds)

3.Pursuant to DCPS Board of Education regulations, Defendant Janey

was the most senior policy-making officer of DCPS at all times relevant to

this action.

4. Defendant Mary Grant is the principal of Takoma EC.

     Doc.32 at Para 8(Defendant's Answer.

 5. Defendant Marcia Parker is the principal of Turner ES.

Doc. 28 at. Para 9 (Parker Answer)

.

6. Defendant Dennis Homesley is the Principal of Payne ES.

Doc. 32 at Para. 10 (Defendant's Answer

7.. Defendant William Wilhoyte is an assistant superintendent of DCPS, and is the assistant superintendent directly responsible for supervising Payne ES.

Doc. 32 at Para. 11 (Defendants' Answer)

## Violation of Disabilities Statutes

8. For school year 2005-2006, R.T. resided within the residential boundaries of Takoma EC, which, under Board of Education regulations, was required to provide him educational programs, services, and activities that it provided to other students within its residential limits. Doc. 49-2

9.) During school year 2005-2006, Defendant Mary Grant intentionally took the following actions that excluded R.T. from DCPS programs, activities and services, because of his disability:

a) Repeatedly excluded R.T. from his classroom because of his disabilities; Doc. 47-4 at 7 (Hearing Officer's Finding No.8)

b) Repeatedly telephoned, or instructed her staff to telephone, Ms. Tomonia and ordered Ms. Tomonia to remove her son from school because of his disabilities; 47-4 at 7 (Hearing Officer' Finding No.8)

c)  Repeatedly suspended R.T., because of his disabilities, for more than 44 days in the course of the school year, and suspended him to all intents and purposes continuously from on or about May 1, 2006 through June 2006; Doc. 47-4 at 7 (Hearing Officer's Finding No. 8); Doc. 47-3 at 5 ( hearing officer's Conclusion No.4); Doc. 46-3 at 90. L 15. Doc. 48-3 (Takoma 5/1/06 suspension notice)(5 day suspension); Doc. 48-4 (Grant 5/15/06 suspension notice)( 10 day suspension); Doc. 48-5 (Grant 5/25/06 suspension)(suspended until 5/30/06)

d)  Directed that R.T. be dismissed or excluded from Takoma EC's after-school program, because of his disabilities; Doc.7 at 6, No. 12-14 (Defendants' Admissions)(RT removed from Takoma EC after school program because of his behavior in the program); Doc. 46-3 at 51-53..

e) Directed that R.T. be excluded from Takoma EC and prohibited from attending Takoma EC for school year 2006-2007, because of his disabilities; Doc. 48-8 at 2 (stating "exit date " of 6/14/06); compare II-E at 1 ("retaining" RT in Fifth Grade); Doc. 46-3 at 99, LL 12-19.

f) Denied R.T. the accommodations he required under his Section 504 Plan; Doc. 47-3 at 4-5 (Hearing Officer's Finding No.10 (Section 504 Plan not implemented at Takoma EC)

g)  Deprived R.T. and his mother of the procedural safeguards to which they were entitled under federal law, by, *inter alia*, denying them notice of those rights, depriving them of their rights to manifestation determination meetings, re- evaluation and revision of accommodation

plans and determination of eligibility for IDEA services on each and every occasion that R.T. was suspended or excluded from school.  See Doc. 48-3, 48-4, 48-5 (Grant suspension notices)( providing no notice of rights under Section 504 to manifestation review or to impartial due process hearing under Section 504);Doc 47-3 at  Doc. 47-4  at 7 (Hearing Officer's Finding #8 (Grant suspended student without documenting suspensions); Doc. 48-2 at 2 Para. 5, 6 (DCPS Special Ed. Service Center)(Dr. Grant made undocumented suspensions of RT); Doc 47-3 at 3, 4-5 (Hearing Officer's Conclusion)(student faced multiple suspensions from Takoma and Turner); Doc 47-3 at 5 (Hearing Officer's Conclusion No. 2, 3)(student suspended multiple times for behavior arising from disability); Doc 47-3 at 5 (Hearing Officer's Conclusion No.5)( student suspended for behavior arising out of disability without conducting evaluations required for manifestation determination); Doc 47-4 at 16, No.3 (hearing officer's conclusions)(RT subjected to "repeated formal and informal suspensions because of behavioral and emotional problems").

10.In March and May 2006 Ms. Tomonia contacted the central Administration of DCPS, seeking assistance for her son, and informed DCPS administrators that R.T. was being repeatedly excluded from Takoma EC. Doc.48-2 at Para. 3 (declaration of DCPS Special Education Service Center employee)(Ms. Tomonia contacted Service Center for help in April 2006); Doc. 48-6  (letter from assistant to assistant

7

superintendent)(Ms. Tomonia contacted office on March 24, 2006 and informed assistant on May 2. 2006 that RT suspended several times, at least 20 days to date)

11. DCPS administrators did not inform Ms. Tomonia of her rights and the rights of her son under Federal or local law, and did not act to restrain Defendant Grant from excluding R.T. from Takoma EC.

See Doc, 48-2, 48-6.

12. As a result of his repeated exclusions from classroom instruction during school year 2005-2006, R.T. did not master Fifth Grade instructional material. Takoma EC informed Plaintiffs that R.T. would have to repeat the Fifth Grade.  Doc. 47-4 at 7, Para. 9 (hearing officer's finding of fact).


13.. From August 2006 through February 2007, Defendant Marcia Parker intentionally took the following actions excluding R.T. from DCPS programs, activities and services, because of his disability:

a) Repeatedly excluded R.T. from his classroom because of his disabilities; Doc. 47-4 at 9-10 (hearing officer's determination)

b) Instructed her staff to telephone R.T.'s foster parent on at least seven days in September and October 2006, ordering the foster parent to remove R.T. from school because of his disabilities Ex. 3___;

c)  Excluded R.T., because of his disabilities, from Turner ES by suspending him on two or more occasions in February 2007 for periods

exceeding ten days; Doc. 47-4 at 16, No. 4 (hearing officer's conclusions of law)(Parker February suspensions were suspensions for behavior arising out of RT's disability).

d) Deprived R.T. and his mother of their rights to manifestation determination meetings, re-evaluation and educational instruction when she suspended R.T.; Doc. 47-3 at 5 (hearing officer's determination)(finding suspensions for disability behavior and failure to conduct evaluations at any time)

e) Denied R.T. the accommodations he required under his Section 504 Plan; 47-4 at 17, No.5 (hearing officer's determination)

f) Withheld from Ms. Tomonia educational records, Section 504 Plan reports and other information that Defendant Parker was required to provide Ms. Tomonia under DC Law, and under Section 504 and the ADA. Doc. 47-4 at 14, No. 2 (hearing officer's determination).


14. On November 6, 2006, Ms. Tomonia informed the D.C. State Enforcement Agency and the Office of General Counsel for DCPS that Turner ES was excluding R.T. from school and denying him the accommodations required by his Section 504 Plan. See Doc. 47-3 at 5.

15.  Defendants did not act to prevent R.T.'s exclusion from Turner ES and did not act to ensure that R.T. and his mother received the services and programs required by his Section 504 Plan. See 47-3;  (hearing officer's determinations finding that RT's rights violated)

16. On March 19, 2007 Defendant Homesley intentionally excluded R.T. from the programs, services and activities of Payne ES on account of his disabilities, suspending him from school for a period of ten days. Doc. 47-4. at 11; Doc. 47-4 at 16, Conclusion No. 4 (hearing officer's conclusions of law)( March 19 suspension was  suspension for behavior arising out of RT's disability). Doc. 49-3 (suspension notice faxed by social worker on 3/22/07)

17. On March 20, 2007 through March 22, 2007, Ms. Tomonia wrote Defendant Homesley and staff at Payne ES, advising them that R.T. was a student with disabilities, that exclusion from Payne on account of his disabilities violated federal law, and requesting that Defendant Homesley re-admit R.T.

Doc. 49-4 at 13-15; Doc. 49-5

18.  During that period, Ms. Tomonia contacted the following officers and personnel of DCPS seeking their assistance in obtaining R.T.'s re-entry to Payne ES:

a) Defendant Superintendent Clifford Janey;

b) Defendant Assistant Superintendent William Wilhoyte;

c)  Linda Roberts;

d) Jennifer Finch;

e) Timothy Williams;

f) DCPS General Counsel, Abby Hairston.

Doc. 49-4 at 6-20

19. In Ms. Tomonia's communications to those DCPS officers and staff, Ms. Tomonia requested that they direct Defendant Homesley to permit R.T. to return to Payne ES. She informed those officers:  that Defendant Homesley had unlawfully excluded her son, a student with disabilities, from Payne Es, on account of his disabilities, that her son previously been excluded from school for 23 days during this school year and was in danger of being retained, again, as a result of loss of classroom instruction, that Defendant Homesley had failed to convene the manifestation determination meeting required by Section 504 or to provide R.T. and Ms. Tomonia the due process safeguards mandated by Section 504: Doc. 49-4 at 6-20.

20. Those persons took no steps to assure R.T's re-entry to Payne ES, did not act to require that Defendant Homesley convene a manifestation determination meeting or conduct evaluations of RT.

Doc. 49-6 (3/27/07 letter of Ms. Tomonia)

21. Defendants Janey and Wilhoyte ratified or approved Defendant Homesley's exclusion of RT on account of his disabilities.

22. On November 1, 2006, Ms. Tomonia filed a Due Process Complaint with the DCPS Student Hearing Office, seeking, inter alia, enforcement of R.T.'s rights under Section 504 and the IDEA.   By sheer coincidence, Ms. Tomonia was at a hearing on her Due Process Complaint on March 19, 2007, the date that Defendant Homesley excluded R.T. from Payne

ES.  Ms. Tomonia informed the Hearing Officer that Principal Homesley had that morning illegally excluded her son from Payne ES, and requested that the Hearing Officer order DCPS to re-admit RT to Payne, forthwith. Doc. 47-3 at 3-4.

23.. Defendants initiated, at that Hearing, actions that were intended to deprive R.T., as a student with disabilities of his Due Process Rights, and deprive him of benefits available to DCPS students   and which retaliated against Ms. Tomonia for her assertion of those rights at the Due Process Hearing.  Immediately following Ms. Tomonia's request for an order requiring that Payne ES re-admit R.T., Defendant's counsel moved to dismiss her Due Process Complaint, alleging that the DCPS Student Hearing Office had no jurisdiction to hear Section 504 matters and alleging that Ms. Tomonia's sole recourse, under Section 504, was a complaint filed with the Federal Department of Education's Office of Civil Rights. Doc. 47-3 at 3-4.

24 The Hearing Officer took DCPS' motion under advisement and ordered the parties to submit memoranda of law on the issue. See Doc. 47-3.

25.  On March 19 and March 20, 2007, Ms. Tomonia notified Defendant Clifford Janey and DCPS General Counsel Abby Hairston that DCPS' motion deprived students with disabilities of their due process rights and requested that DCPS withdraw its motion to dismiss Ms. Tomonia's Due Process Complaint for lack of Section 504 jurisdiction.

Doc. 50-2

26. On March 26, 2007, DCPS submitted to the Hearing Officer a
memorandum asserting that Ms. Tomonia's Due Process Complaint must
be dismissed and Plaintiffs should be required to pursue a "grievance
procedure"

> a) that was not in existence at the time that Plaintiffs filed their
> Due Process Complaint;
>
> b) that was not in existence at the time that DCPS made its motion
> to dismiss;
>
> c) of which DCPS had given Plaintiffs no notice; and
>
> d)  that violated Section 504's due process hearing requirements.
>
> See Doc. 47-3 at 3-4.

27.  Defendant Janey ratified the actions of DCPS counsel retaliating
against Plaintiffs, denying R.T. his due process rights solely because of
his disability and depriving him of services or programs available to non-
disabled students. Doc. 50-2

28.  Because of Defendants' action, as of May 10, 2007, the Hearing
Officer had not issued a decision on DCPS' motion to dismiss, and
Plaintiffs' Section 504 due process hearing had not recommenced. As a
consequence, RT was denied relief for essentially the remainder of this
school year. See Doc. 47-3 at 1 (hearing officer's determination bearing
issue date of May 8, 2007)

29. Defendants both failed to provide RT the accommodations that they
were required to provide him under the Section 504 plan that DCPS had

created, but failed repeatedly to revise that Plan to provide the additional accommodations that RT required. See Ex. 47-4 at 12(hearing officer's finding ).

30 As a result of Defendants' refusal to conduct manifestation determinations and otherwise address RT's ADHD, psychological and emotional disabilities, RT spent large amounts of the time that he was in school (i) wandering the hallways, (ii) sitting in the school office, (iii) resting at his desk or (iv) wandering off campus. Doc. 47-4 at 12, No. 19 (hearing officer's finding )

31. Defendants have failed to perform any assessment of the impact of R.T.'s ADHD on his ability to benefit from his public education, at any point during school years 2005-2007, or in connection with any exclusion of R.T. See Doc. 47-3 at 5 ( DCPS performed no evaluations for RT pursuant to Section 504)

32. Defendants retaliated against Ms. Tomonia for her advocacy of R. T.'s rights as a student with disabilities, by repeatedly withholding from Ms. Tomonia information, reports and educational records that Defendants are required to provide her under DC Law, under Section 504 and the ADA, included, most notably, notices of suspensions, disciplinary actions, and security incidents, which Defendants Homesley and Parker denied Ms. Tomonia all together or which were withheld for a period long enough to prevent or impede  Ms. Tomonia from taking action to preserve her son's right to remain in school.

14

33. Defendant Homesley has denied Ms. Tomonia notice of meetings and conferences concerning her son, and disciplinary actions under consideration or taken against him.

34. Defendants Janey and Wilhoyte ratified Principal Homesley's conduct in withholding information from Ms. Tomonia.


35. On or about June 4, 2007 Defendant Homesley again decided to discipline R.T. by excluding him from school for the remainder of the school year. Doc. 48-7 at 4-5, No. 8 (Defendants' Admissions)(disciplinary action taken June 4, 2007)

36. DCPS did not evaluate R.T, conduct a manifestation determination for RT, or comply with Section 504's due process requirements before disciplining R.T. Doc. 48-7 at 3, No.3 (Defendant's Admissions)( DCPS convened no Section 504 meeting between 2/23/07 snd 6/20/07).

37. Ms. Tomonia requested that Defendants Janey and Wilhoyte rescind Defendant Homesley's suspension of R.T, at least pending a hearing on that suspension. They failed to respond to Ms. Tomonia's request or to rescind that suspension, ratifying Defendant Homesley's action. See Doc. 49-4 at 6; 49-4 at 10; 49-4 at 11.

38. On April 19, 2007 Ms. Tomonia filed a second Due Process complaint with the DCPS Student Hearing Office. Doc. 47-4 at 1.

39. On August 9, 2007 a Hearing Officer's Determination issued as to Plaintiffs' second Due Process complaint. The Hearing officer found that

Defendants had failed to implement RT's 504 Plan and found that RT's required services under the Individuals With Disabilities Education Act. Ex. 47-4 at 17. As a consequence of that decision and of an IEP meeting held pursuant to that decision, R,T, is enrolled at Oak Valley Center, a private special education facility that instructs students with severe emotional disturbance, ADHD and learning disabilities. See id.at 18.

40. DCPS has a custom, practice or policy of excluding students with disabilities from or denying them the benefits of DCPS educational programs, services and activities.

## **Deprivation of Constitutional Rights**

41.DCPS regulations promulgated at Chapter 25 of Title V of the DC Municipal Regulations create extensive due process rights for students subjected to disciplinary actions. They require, inter alias that a principal provide a parent oral notice, followed by written notice, mailed by certified mail within 24 hours of the day oral notice is given, of any disciplinary action that it proposes to take, requires that a principal hold a conference concerning any such action before it is taken, and provides that a parent my request an administrative hearing within two business days on any such action upon receipt of a request by the parent.

42. DCPS regulations promulgated at Chapter 26_ of Title 5 of the DC Municipal Regulations create a general right of access by a parent to her child's school records. 5 D.C. Mun. Regs 2600.1, DCPS disciplinary

regulations specifically require that the parent be given access to the student's records "prior to the imposition of the proposed discipline," Id at 2506.5.   The records that Chapter 26 requires be open for inspection and review by a parent include: a student's cumulative record folder, any data collected or intended for use within DCPS, identifying data or information, academic work completed, grades and scores from standardized tests, health data and accident reports, observations and ratings by teacher, counselors and other DCPS personnel, and " reports of behavior or discipline problems or incidents." 5 D.C.Mun. Regs 2601.1.   Those regulations require that requests for access to records be made to the principal of the school which the child attends and where the records are located. Id. at 2600.4

43. In June 2006, Ms. Tomonia lost temporary custody of R.T.. On or about September 19, 2006 Magistrate Judge Breslow of D.C, Superior Court entered an Order affirming that Plaintiff Linda Tomonia retained all rights as parent to act with regard to all educational matters concerning RT. Judge Breslow further ordered that DCPS provide her access to all records, information, and meetings regarding RT. It stated:

> " The educational advocate, Karen Alvarez, and the mother. Linda Tomonia, are entitled to obtain educational records for [R.T.} from DCPS. Mother's access to [R.T.'s] educational records, information and meetings should not be restricted. Mother Linda Tomonia *retains all parental rights* including the right to fully participate in [R.T's] education."

(Emphasis added). Doc. 50-8 at 9

44  Counsel for Defendant District of Columbia was present at the hearing at which Judge. Breslow entered that Order. Doc. 50-8 at 1.

45. Plaintiff Linda Tomonia gave a copy of Judge Breslow's Order to Defendant Parker in October 2006. Doc. 50-9 at 1

46.Beginning in February 2007 Defendants began deliberately withholding from Plaintiff Linda Tomonia information concerning her son's education. This included the following occasions:

(a) In February 2007, when Defendant Parker excluded and then suspended R.T; Doc. 50-3 at 3 (2/6/07)(2-day suspension, notice only to foster parent); Doc. 50-4 at 2 (2/8/07)( 2-day exclusion, no notice to anyone); Ex. Doc. 50-52/13/07)(5-day suspension, notice allegedly to social worker)(transmitted to mother 3/12/07)

(b) In March 2007, when Defendant Homesley excluded or suspended R.T, and information was withheld by Defendants Homesley, Wilhoyte and Janey; Doc. 50-6 (Homesley letter); Doc. 48-7 at 7, No.20 (Defendants' Admissions)(Defendants denied Ms. Tomonia notice of and information concerning the 3/19/07 suspension because "she was not the legal guardian")

(c) On or about May 5, 2007, when Defendant Homesley called police to the school and information was withheld by Defendants Homesley, Wilhoyte and Janey; Ex. 1; See also Doc. 48-7 at 9,

No. 30 (Defendants' Admissions)(Homesley provided criminal reports to foster parents)

(d)  On or about May 31, 2007, when Defendant Homesley excluded RT from school; See 50-7 at 1; See Doc. 48-7 at 9, No. 30 (notice given to foster parents).

(e) On or about June 1, 2007, when Defendant Homesley filed a criminal complaint with the police, resulting in RT's arrest, and information was withheld by Defendants Homesley, Wilhoyte and Janey.; See 50-7 at 1; See Doc. 48-7 at 9, No. 30 (complaint given to foster parents)

(f) On or about June 4, 2007, when Defendant Homesley decided to suspend R.T. from school for the remainder of the school year, and information was   withheld by Defendants Homesley, Wilhoyte and Janey. See doc. 48-7 at 5 (Defendants did not provide prior notice of suspension (NASD) to parent but to "legal guardians",i.e, the foster parents); id at 9 , No. 30 (notices given to foster parents)

47. Defendants withheld any prior notice of those actions from Ms. Tomonia, and refused, when she learned that Defendants had initiated disciplinary actions against her son, to provide her with copies of the suspension notices or any factual information concerning the suspension or the facts underlying it. See Doc. 48-7 at 7, No. 20 (Homesley refused to provide copy of notice or to

provide information concerning disciplinary action to parent because she was not legal guardian.).

48. Defendants did not provide a single coherent explanation for their refusal to provide Ms. Tomonia access to this information. Instead, Defendants at different times and occasions offered conflicting, and implicitly contradictory, rationales, for their conduct, which were arbitrary, capricious, and purely pretextual. These included:

(a) That it was easier to telefax a copy of the suspension notice to a social worker than to telefax it to Ms. Tomonia (Defendant Parker, March 2007);

(b) that DCPS was not required to  provide a copy of a suspension notice to Ms. Tomonia because Judge Breslow's Order did not expressly address the question of disciplinary notices (Defendant Homesley, March 2007); Doc. 50-6 (Homesley 3/22/07 letter); but see Doc. 48-7 at 7 No. 20(Defendants' Admissions)(Defendants denied Ms. Tomonia a copy of the notice and information concerning the suspension because Ms. Tomonia "was not the legal guardian at that time.")

(c) that DCPS would not release copy of a DCPS incident report reporting RT's misconduct to his mother,  because release of a report " to public" was barred under the D.C. FOIA statute, if  the report were draft report. Ex. 1  (DCPS General Counsel Hairston, May 5, 2007);;

(d) that DCPS attorneys had ordered Defendant Homesley not to allow Ms. Tomonia access to her son's records See Doc. 46 -2  at 203 at LL 16---204 L 14 (Defendant Homesley would not allow plaintiff to see all RT's files after calling DCPS attorneys).

49. Defendants asserted reasons for denying Ms. Tomonia notices and other information were purely pretextual: that is clear from the fact that Defendants did not, in connection with either of the Due Process Complaints filed by Ms. Tomonia , allege that Ms. Tomonia did not have standing to file such a complaint on her son's behalf.    See Doc. 47-3(hearing officer's determination)(defendants did not argue standing); Doc. 47-4 (hearing officer's determination)(reflecting not argument from defendants as to mother's standing).

50. Defendants did provide such information to other persons who were not entitled under DCPS regulations or under Judge Breslow's Order either to receive that information or to utilize it to enforce R.T's rights. See Doc. 48-7 at No. 8. (defendants gave notices and other information to foster parents whom Defendants characterize as 'legal guardians")

51. Defendants denied Plaintiff Tomonia access to RT's school records. Doc. 47-4 at 14 (Hearing Officer's finding of fact ).

52.DC Code Section 38-202 provides that all students aged 5 through 18 are entitled to a free public education and .requires all students between the ages of 5 and 18  to attend school daily.

53. R.T. has a property interest in his right, as a DC student, to attend school.

54 The suspensions or exclusions initiated by Defendants Parker and Homesley in February, March and June 2007 resulted in the exclusion of R.T. from school for some 20 days in February and ten or more days in each of March and June.

55. As a result of those disciplinary actions, R.T. was excluded for some 40 days. or more during the period February 2007- June 14, 2007, the last day of school. This amounted to 40 percent of all school days during that period,

56.R.T. was deprived, by Defendants Homesley, Parker, Wilhoyte and Janey of his substantive due process property interest in attending school for some 40 days without a hearing and without any effective opportunity to obtain or means of obtaining a hearing.

57. Defendant Janey was the highest policy making official of DCPS at the time that he deprived Plaintiffs of their Fifth Amendment rights, consequently his actions are those of the Defendant the District of Columbia.

58. In addition, R.T. was excluded, for disciplinary reasons, by Defendant Parker for some seven days in September-October 2006., without complying with DCPS suspensions regulations, without notice of his rights or opportunity whatsoever for hearing..

59, . R.T. was suspended by Defendant Grant for some 51 days during the period December 2005 through June 2006.

60.Defendant Grant did not provide R.T. or his mother notice of R.T.'s right to a hearing to contest the disciplinary actions taken by Grant.

61..'R.T. was deprived of his substantive due process property interest in attending school for some 51 days without notice of his right to a hearing and without a hearing..

62.. Takoma EC was the school within whose attendance zone R.T. resided. Ex. V- E .

63. Under DCPS regulations, R.T. had a right to attend Takoma EC, by virtue of his place of residence, and had no such right to admission to any other DCPS school. DCPS regulations created a property interest in RT's admission and attendance at Takoma EC. They state:

> " A local school administrator shall not exclude from admission or attendance any compulsory school-aged minor who resides in his or her school's attendance zone…unless the minor has been involuntarily transferred."

5 D.C. Mun. Reg.§2002.18,

64.. Defendant Grant informed R.T.'s mother that she would not permit RT to register at Takoma the following school year.

65. Defendant Grant deprived R.T. of his right to attend Takoma EC without notice of his right to a hearing and without providing him a hearing.

**PLAINTIFFS' INJURIES**

66.  Defendants' intentional conduct excluded R.T.

from, and denied him the benefits of, educational services and programs

offered by DCPS solely on account of his  disabilities and their severity.

67.  R.T. was excluded from the classroom and denied the classroom

instruction that he required in order to benefit from his public education

in school years 2005-2006 and 2006-2007.

68. R.T. was forced to repeat Fifth Grade in school year 2006-2007, has

not yet mastered the Fifth Grade curriculum, and very likely will not

have mastered the Fifth Grade curriculum by close of the 2006-2007

school year. Doc. 47-4 at 7 (Hearing Officer's Finding No.9)(at end of

Takoma year RT below basic in reading and Math); Id. (RT retained in

Fifth Grade); Ex. XIV-A at 2( testing administered Nov. 21, 2006  )(RT

Reading at  4.9 Grade level); Id. (RT's Math at 4.2 Grade level); XIV-C at

2( Oak Valley testing 1/9/07)(RT now Reading at 5th grade level; Math at

4th Grade level).

68. R.T. was denied the accommodations that he required and that

Defendants were legally obligated to provide him, with the result that RT

at the age of twelve can not understand written material beyond the

Third Grade level.

69. R.T. suffered humiliation and severe emotional distress, resulting in

his hospitalization at Children's National Medical Center in June 2006.

Ex. I-B at 8 (Hearing Officer's Finding No.10)( RT entered psychiatric

ward of CNMC June 4, 2006); Ex XIV-B (3/30/06 medical

24

record)(recording multiple suspensions, grief and depression); Ex. XIV-E

(RT admitted CNMC for, inter alia, suicidal ideation

70.  Ms. Tomonia suffered economic losses, loss of work time and

incurred additional child care expenses, when R.T. was excluded from

Takoma EC and its child care program. Ex.XIV-D (medical expenses)

71. Ms. Tomonia suffered anxiety, emotional distress, and loss of work

time as a result of Defendants retaliation against her.


:

                              Respectfully submitted,


                              Karen D. Alvarez
                              D.C. Bar No. 423186
                              1442 Foxhall Rd, N.W.
                              Washington, D.C. 20007
                              (202) 333-8553
                              202-333-1546(Fax)

| Subj: | **RE: Reginald Tomonia; Incident Report** |
|-------|-------------------------------------------|
| Date: | Tuesday, May 8, 2007 12:02:01 PM |
| From: | Abbey.Hairston@k12.dc.us |
| To: | KDAlvarez@aol.com |
| cc: | TomoniaL@OD.NIH.GOV, ktotten@childrenslawcenter.org, Jkrell@childrenslawcenter.org, Clifford.Janey@k12.dc.us, Dennis.Homesley@k12.dc.us |

As I told you before, and I will repeat again, I have no information that a final report has been provided. Mr. Homesley may indeed have a copy of an incident report that is not final. If he was given instruction by this office not to release the report, then this means it is not final. Please review the DC Code FOIA laws regarding release of draft reports. I will get back to you when I have verification that the report is final.

*Abbey G. Hairston*
*General Counsel*
*District of Columbia Public Schools*
*825 North Capitol Street, NE*
*Room 9095*
*Washington, D.C. 20002*
*(202) 442 – 5168*

---

**From:** KDAlvarez@aol.com [mailto:KDAlvarez@aol.com]
**Sent:** Tuesday, May 08, 2007 11:48 AM
**To:** Hairston, Abbey G. (OGC); KDAlvarez@aol.com
**Cc:** TomoniaL@OD.NIH.GOV; ktotten@childrenslawcenter.org; Jkrell@childrenslawcenter.org; Janey, Clifford (OOS); Homesley, Dennis (ES)
**Subject:** Re: Reginald Tomonia; Incident Report

Ms. Hairston:

We are seeking a copy of DCPS' own security incident report, a completed copy of which is in Reginald's file, and, as stated in my earlier email to you, was shown us by Principal Homesley.

Please advise me of the law or regulation that you believe authorizes DCPS to withhold a report that is in Reginald's  DCPS file.


Sincerely,


Karen D. Alvarez
Attorney at Law
1442 Foxhall Road, NW
Washington, DC 20007
202.333.8553
202.333.1546(fax)

11/30/07 1:30 PM

Karen D. Alvarez
Attorney at Law
1442 Foxhall Road, NW
Washington, DC 20007
202.333.8553
202.333.1546(fax)


**************************************
See what's free at http://www.aol.com.

aclurich://11184201037/

| Subj: | **RE: Reginald Tomonia; Incident Report** |
|-------|-------------------------------------------|
| Date: | Tuesday, May 8, 2007 11:30:41 AM |
| From: | Abbey.Hairston@k12.dc.us |
| To: | KDAlvarez@aol.com |
| cc: | TomoniaL@OD.NIH.GOV, ktotten@childrenslawcenter.org, Jkrell@childrenslawcenter.org, Clifford.Janey@k12.dc.us, Dennis.Homesley@k12.dc.us |

If you are looking for the MPD report, you can contact MPD for the report. DCPS is not responsible for determining whether MPD's reports can be released to the public.  As you know, MPD is a separate agency.

We obtain the report from MPD as part of DCPS' investigation. I have no information that confirms DCPS has completed its investigation, which would include review of MPD"s report and supplementing it if we choose to do so.  If DCPS's report is not final, you are not entitled to a copy of it. By law, we are not required to provide to the public draft copies of DCPS's report. DCPS's process for investigations of school incidents includes an initial report completed by our security office.  The draft report is provided to my office for review and discussion with our security investigator.

I will find out the status of DCPS's investigation and let you know. However, we are not responsible for releasing MPD's independent reports. Thanks.

*Abbey G. Hairston*
*General Counsel*
*District of Columbia Public Schools*
*825 North Capitol Street, NE*
*Room 9095*
*Washington, D.C. 20002*
*(202) 442 - 5168*

---

**From:** KDAlvarez@aol.com [mailto:KDAlvarez@aol.com]
**Sent:** Tuesday, May 08, 2007 9:14 AM
**To:** Hairston, Abbey G. (OGC)
**Cc:** TomoniaL@OD.NIH.GOV; ktotten@childrenslawcenter.org; Jkrell@ChildrensLawCenter.org; Janey, Clifford (OOS); Homesley, Dennis (ES)
**Subject:** Reginald Tomonia; Incident Report

Dear Ms. Hairston:

At a meeting at Payne ES yesterday, we were informed of an incident that took place at Payne Es on Wednesday of last week involving Reginald Tomonia. We were further informed that the MPD were called to Payne and interviewed Reginald on Friday of last week. Principal Homesley informed us that an Incident Report concerning this matter was created and would be provided us following the close of the meeting yesterday.

In the event, Principal Homesley later declined to provide us with a copy of the Incident Report. Mr. Homesley showed us the Incident Report, which bears Reginald's name. He stated that he had been instructed by your office to deny us a copy of the Report.

Board of Education regulations promulgated at 5 DCMR Chapter 2600, and FERPA, require that the Incident Report be provided my client.  Please provide me with a copy of the Incident Report. Otherwise, please advise me  what legal  authority DCPS believes justifies it in withholding the report.

Sincerely,

Karen D. Alvarez
Attorney At Law
1442 Foxhall Rd, NW
Washington, DC 20007
(202) 333-8553
202-333-1546 (Fax)

Attorney for Ms. Linda Tomonia

The information transmitted (including attachments) is covered by the
Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, is
intended only for the person(s) or entity/entities to which it is
addressed and may contain confidential and/or privileged material.
Any review, retransmission, dissemination or other use of, or taking
of any action in reliance upon, this information by persons or
entities other than the intended recipient(s) is prohibited.  If you
received this in error, please contact the sender and delete the
material from any computer.


****************************************
See what's free at http://www.aol.com.

# F A X



## Anita J. Turner Elementary
## 3264 Stanton Road S.E.
## Washington, D.C. 20020

To: _Karen  Alvarez_    Fax no.: (202) _333 - 1546_

Date: _1 / 10 / 2007_

Time: _____

From: _Vanissa   Craig_    Office Number: _(202) 698-1155_

Number of pages: _____

_Dr Arthur's  signature  is forth  coming._

_____

_____

## office(202)698-1155   fax:(202)698-1166

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM (MDT)
**Eligibility Meeting Notes**

| MDT |
| --- |

MEETING DATE: 1/9/2007

STUDENT: Reginald          Tomonia          SCHOOL: Turner Elementary

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
| --- | --- | --- |
| Linda Tomonia (via telephone conference :) | | Parent/Guardian |
| none | | Special Ed Teacher |
| Asa Daniels | | General Ed Teacher |
| Vanessa Craig | _Vanessa Craig_ | LEA Representative |
| Marcia Parker | _Marcia Parker_ | Principal or Designee |
| Dr. Leslie Arthur/Psychologist | | Student |
| Tarryna Saxton | _Tarryna Saxton_ | Speech Pathologist |
| Kristin Totten | | Guardian ad Litem _in attendance_ |
| Rodney Campfield | _Rodney Campfield_ | Comp Ed Specialist |
| Thomasina Garner | _Thomasina Garner_ | Social Worker |

Meeting convened and all disciplines introduced themselves to Ms. Linda Tomonia via telephone conference. Purpose of the meeting was to determine eligibility for special education services for Reginald Tomonia. Dr. Leslie Arthur discussed the Psychological evaluation with Ms. Tomonia brief summary: Cognitive testing revealed that Reginald's overall cognitive ability falls within the Average range (CIX=93). Achievement testing revealed that Reginald's overall reading (SS=97) and math (SS=91) skills fall within the Average range. Because there is no severe discrepancy between Reginald's cognitive and academic functioning, he does not appear to be eligible to receive special educational services as a student with a Learning Disability. The Speech Pathologist reports that the speech/language evaluation conducted in December showed that Reginald has average to above average skills in receptive and expressive language. His composite scores do not qualify him for speech/language services, according to DCPS eligibility criteria. In fact, his communication skills should be considered a definite strength for Reginald. Rodney Campfield Compensation Education Specialist stated there will be no comp ed offered because comp ed is a legal term and is given from a legal proceeding such as a HOD or SA. The DCPS MDT agreed that Reginald was ineligible for special education services based on results from evaluations performed and requested from the resolution meeting. Guardian ad litem and Ms. Tomonia disagreed and would not sign the Eligibility Meeting notes. It was requested that a copy of the notes be sent to advocate. It was agreed to hold a 504 meeting to update Reginald's 504 plan.

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT Reginald          Tomonia

☐ IS ELIGIBLE FOR SPECIAL EDUCATION AND RELATED SERVICES
    ☐ TEAM WILL COMPLETE IEP
    ☐ TEAM WILL SCHEDULE IEP MEETING
    ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

☒ IS NOT ELIGIBLE FOR SPECIAL EDUCATION
    ☒ STUDENT IS REFERRED BACK TO THE TAT
    ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student Reginald    Temonia    DOB 1/3/1995 Age 12    Grade 05  ID 9209703

You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION or DUE PROCESS HEARING form and mail it to the address listed below:

Student Hearing Office
D.C. Public Schools
825 North Capitol Street, N.E. 8th floor
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parent's Procedural Safeguards handbook is provided.
A list of free or low cost legal services, for which you may qualify depending on your income, is included.
If you would like an additional copy please contact the principal.

EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

Test/Description: Classroom Observation - assesses present functioning of the student within the classroom environment.

Date of Report: 11/21/2006

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

**Free or Low Cost Legal Services**

Neighborhood Legal Services
701 4th Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2732 (NE)
Fax 202-682-0588

Neighborhood Legal Services
1213 Good Hope Road, S.E.
Washington, D.C. 20020
202-678-2000
Fax 202-889-3374

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc.
1050 Connecticut Avenue, N.W.
Suite 1200 Washington, D.C. 20036-5317
202-467-4900
Fax 202-467-4949

National Coalition for Students
with Disabilities
10560 Main Street, Suite 417
Fairfax, VA 22030
703-267-6588
(fax) 703-267-6992

MDT Prior to Action Notice
03-30-2004

2

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:
[ ] Initial Evaluation
[x] Initial Placement
[ ] Reevaluation
    [ ] Change In Category Exit
    [ ] Related Service Add
    [ ] Related Service
    [ ] Change in Placement
    [ ] Annual
    [ ] Other

Date 1/9/2007
Student Reginald    Tomonia    DOB 1/3/1995
School Turner Elementary
Current Disability Category NONE
Setting General education classroom setting

Dear Linda Tomonia

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
[ ] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
[ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
[x] Other Eligibility for special education services

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)**

[x] Your child is not eligible for special education service(s).
[ ] Your child is eligible or continues to be eligible to receive special education services as a student with _____
[ ] Your child will begin receiving _____ as a related service(s).
[ ] Your child will no longer receive _____ as a related service(s).
[ ] Your child's category of disability is being changed from _____ to _____
[ ] Your child's alternative placement on continuum (next setting) is being changed,
    from _____ to _____
[ ] Your child is no longer eligible and will be exited from the special education program.
[ ] Other: _____
Location of Services Turner Elementary

<u>Description and Explanation of agency action proposed or refused.</u>

Based on results from the evaluations performed that was requested at the Resolution Meeting; DCPS MDT determined that Reginald is ineligible for special education services.

<u>Description of Other Options Considered and reasons for rejection of each option</u>

Reginald has a 504 plan. It was agreed to meet and update his 504 plan.

Other relevant factors to the decision- none
MDT Members:
[x] Principal or Designee
[x] Parent
[ ] Student
[x] Social Worker
[x] General Education Teacher
[x] Special Education Teacher
[x] Speech and Language
[x] *LEA & Interpreter (*may be one)
[x] Psychologist
[x] Other: Compensation Ed Specialist

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the **Procedural Safeguards** for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact Vanessa Craig     at (202)698-1155 _____ (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED    1

## DOCUMENTED LEVEL OF SERVICE
Complete and attach to MDT/IEP meeting notes

| | | | |
|---|---|---|---|
| School Turner Elementary | Principal Marcia Parker | Special Education Coordinator Vanessa Craig | |
| Date 1/9/2007    Case Manager LaChonda Kinzer | | Assistant Director Elva Gloster | |
| Student Reginald    Tomonia | DOB 1/3/1995  Age 12  Grade 05  ID# 9209703 | SSN# 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 | |
| Parent Linda Tomonia | Telephone (H) 2028892040 | (W) | |
| Address: 6817    Georgia Ave | NW    Washington | DC    20012 | |
|       Street #       Street | Quad  Apt. No.  City | State  Zip Code | |

REFERRAL SOURCE: (Check)  ☒ 120 Day  ☐ Reeval.  ☐ HOD  ☐ SA  ☐ MA  ☐ Annual

☐ Nonpublic  ☐ Residential  ☐ Citywide  ☐ Courts  ☒ Local School  ☐ Other:

Previous least restrictive environment (LRE Setting):  Combination general education and resource classroom

---

## JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| | Current IEP | Yes ☐ | No ☒ |
| | Signatures of required participants (MDT notes) | Yes ☒ | |
| | Intervention Behavior Plan | Yes ☐ | |
| | Copies of current class work and homework assignments: | Yes ☒ | |
| | Medical Reports: | Yes ☐ | No ☐ |
| | Clinical Reports: | Yes ☐ | No ☐ |
| none | Psychiatric Reports | Yes ☐ | No ☐ |
| | Medications: | Yes ☐ | No ☒ |
| | Attendance Record | Yes ☒ | |
| | Copies of most recent evaluation(s) | Yes ☒ | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| Eligibility Meeting 1/9/2007 | none |

---

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☒ combination general education and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21% and 60% of service time |
| 3 | ☐ *out of general education classroom | ☐ special educators and related service providers | ☐ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

Check the level of need as indicated:
**DIRECTIONS:**

| | |
|---|---|
| If two or three boxes are checked in the Row 1, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |

## 7. LEVEL OF NEED

| ☐ LOW | ☐ MODERATE | ☐ HIGH |
|---|---|---|

Attention: Technical Support Supervisor, Compliance Team

07-02-2001

# F A X



## Anita J. Turner Elementary
## 3264 Stanton Road S.E.
## Washington, D.C. 20020

To: _Karen Alvarez_    Fax no.: (w?) _333-1546_

Date: _1/12/2005_

Time: _____

From: _Vanessa Craig_    Office Number: _____

Number of pages: _2_

_Dr. Arthur's signature on Eli's Notes_

_____

_____

## office(202)698-1155    fax:(202)698-1166

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM (MDT)**
**Eligibility Meeting Notes**

MEETING DATE: 1/9/2007

| MDT |
| --- |

STUDENT: Reginald     Tomonia     SCHOOL: Turner Elementary

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
| --- | --- | --- |
| Linda Tomonia (via telephone conference) | | Parent/Guardian |
| none | | Special Ed Teacher |
| Asa Daniels | | General Ed Teacher |
| Vanessa Craig | *Vanessa Craig* | LEA Representative |
| Marcia Parker | *Marcia Parker* | Principal or Designee |
| Dr. Leslie Arthur/Psychologist | *Leslie Arthur* | Student |
| Tanyna Saxton | *Tanyna Saxton* | Speech Pathologist |
| Kristin Totten | | Guardian ad Litem (in attendance) |
| Rodney Campfield | *Rodney Campfield* | Comp Ed Specialist |
| Thomasina Garner | *Thomasina Garner* | Social Worker |

Meeting convened and all disciplines introduced themselves to Ms. Linda Tomonia via telephone conference. Purpose of the meeting was to determine eligibility for special education services for Reginald Tomonia. Dr. Leslie Arthur discussed the Psychological evaluation with Ms. Tomonia brief summary: Cognitive testing revealed that Reginald's overall cognitive ability falls within the Average range (CIX=93). Achievement testing revealed that Reginald's overall reading (SS=97) and math (SS=91) skills fall within the Average range. Because there is no severe discrepancy between Reginald's cognitive and academic functioning, he does not appear to be eligible to receive special educational services as a student with a Learning Disability. The Speech Pathologist reports that the speech/language evaluation conducted in December showed that Reginald has average to above average skills in receptive and expressive language. His composite scores do not qualify him for speech/language services, according to DCPS eligibility criteria. In fact, his communication skills should be considered a definite strength for Reginald. Rodney Campfield Compensation Education Specialist stated there will be no comp ed offered because comp ed is a legal term and is given from a legal proceeding such as a HOD or SA. The DCPS MDT agreed that Reginald was ineligible for special education services based on results from evaluations performed and requested from the resolution meeting. Guardian ad litem and Ms. Tomonia disagreed and would not sign the Eligibility Meeting notes . It was requested that a copy of the notes be sent to advocate. It was agreed to hold a 504 meeting to update Reginald's 504 plan.

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT Reginald     Tomonia

☐ **IS ELIGIBLE** FOR SPECIAL EDUCATION AND RELATED SERVICES
    ☐ TEAM WILL COMPLETE IEP
    ☐ TEAM WILL SCHEDULE IEP MEETING
    ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

☒ **IS NOT ELIGIBLE** FOR SPECIAL EDUCATION
    ☒ STUDENT IS REFERRED BACK TO THE TAT
    ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

# F A X



## Anita J. Turner Elementary
## 3264 Stanton Road S.E.
## Washington, D.C. 20020

To: _Karen D. Alvarez_    Fax no.: _302-333-1546_

Date: _1/12/07_

Time: _3:41 PM_

From: _Linda Colon_    Office Number: _202-698-1155_

Number of pages: _2_

_RE: This is a copy of Reginald Tomonia's_
_weekly progress report. Thanks_

## office(202)698-1155   fax:(202)698-1166

**PROGRESS REPORT**

PARENT/GUARDIAN:                                    Date _1/12/07_

THIS IS TO NOTIFY YOU THAT:

Student's Name _Reginald Tomonia_ _____ Grade _5_

_____ IS TO BE COMMENDED FOR HIS/HER WORK.

_____ IS WORKING BELOW HIS/HER ABILITY.

_____ IS DOING UNSATISFACTORY WORK.

_X_ GRADE _is showing Improvement_

The items checked below will aid you to evaluate the progress of the student in

(class/subject) _____

|  | GOOD | IMPROVEMENT NEEDED | UNSATISFACTORY |
|---|---|---|---|
| ASSUMES RESPONSIBILITY | X | — | — |
| ATTENTION IN CLASS | X | — | — |
| BEHAVIOR _Improving_ |  | — | — |
| BRINGS MATERIALS TO CLASS | X | — | — |
| CLASS ATTENDANCE | X | — | — |
| COMPLETES ASSIGNMENTS _Improving_ |  | — | — |
| COOPERATION | X | — | — |
| FOLLOWS DIRECTIONS | X | — | — |
| INTEREST IN LEARNING _Improving_ |  | — | — |
| PARTICIPATES IN CLASS | X | — | — |
| REQUESTS EXTRA HELP | X | — | — |
| RESPECTS RULES AND REGULATIONS | X | — | — |
| SOCIAL ADJUSTMENT | X | — | — |
| STUDY HABITS _Improving_ |  | — | — |
| TEST PERFORMANCE | X | — | — |
| USE OF SCHOOL TIME | X | — | — |

_Communicating need to Teacher_ X

_Focusing and staying on task_ X

If the school may be of assistance, please contact either the teacher or the counselor.

Teacher _Ms. D. Daniels_    Counselor/ Principal _Linda Coleman_

Comments _Reginald needs to Improve_

_scheduling to get to class on time._

☐ Please sign and return.

☒ Need not be returned.

_____

PARENT/GUARDIAN SIGNATURE

S09905 (No. 958) School Specialty

WHITE — PARENT/GUARDIAN   CANARY — OFFICE   PINK — TEACHER

ACTIVITY REPORT

TIME : 01/10/2007 10:50
NAME : K D ALVAREZ
FAX  : 2023331546
TEL  : 2023338553

| NO. | DATE | TIME | FAX NO./NAME | DURATION | PAGE(S) | RESULT | COMMENT |
|-----|------|------|--------------|----------|---------|--------|---------|
|     | 01/09 | 15:08 |            | 01:58    | 05      | OK     | RX    ECM |

BUSY: BUSY/NO RESPONSE
NG  : POOR LINE CONDITION / OUT OF MEMORY
CV  : COVERPAGE
POL : POLLING
RET : RETRIEVAL