IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


LINDA TOMONIA, et al,          )
                               )
                               )
                               )
     Plaintiffs,               ) Civil Action No 7-CV-0882(JR)
                               )
                               )
          v.                   )
                               )
DISTRICT OF COLUMBIA, et al,   )
                               )
     Defendants.               )
.....................................     )


## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I

This Court ruled that plaintiffs could not sue the individual defendants, pursuant to 1983, for violations of Section 504, Title II of the ADA, either for violations of the discrimination, exclusion and denial prohibitions of those statutes or the retaliation provisions of those statutes. Plaintiffs, accordingly have not addressed those claims in their motion for summary judgment.  Ps motion for summary judgment addresses the following remaining claims against the defendants:

   1) Claims against defendants DCPS and D.C. directly under Section 504, Title II of the ADA and the DC HRA ;

   2) Claims against the individual defendants under  the DC HRA as Ps sue defendants DCPS  and D.C.;

3)  Claims against defendants DCPS, DC, and the individual defendants for

violations of the constitutional rights of both plaintiffs.

Defendants have opposed Plaintiffs' Motion for Summary Judgment. As discussed

below, Defendants' Opposition fails to demonstrate that Plaintiffs can not establish the

elements of their claims under the disabilities statutes and their constitutional claims.

## I.    Evidence That May Be Considered by the Court on Summary Judgment

 The Court and parties have great flexibility with regard to the evidence that may be used

in a Rule 56 proceeding. 10 A Charles A. Wright et al, Federal Practice and Procedure,

Section 2721 at 360. The particular forms of evidence that are mentioned in the rule are

not the exclusive means of presenting evidence in a Rule 56 motion. Id. at 361. The Court

may consider any material that would be admissible or usable at trial. Id.  Consideration

at summary judgment does not require the unequivocal conclusion that the evidence will

be admissible at trial as a condition precedent to consideration as evidence on the

summary judgment motion. Reed v. Ford Motor Co, 679 F Supp 873, 874 (D. Ind. 1988).

Unauthenticated exhibits may be considered by the Court when the documents have a

prima facie aura of reliability. Oglesby v. Coca Cola Bottling Co, 620 F Supp 1336m

1344 (D. Ill 1985).

### A.  Hearing Officer's Determinations

Plaintiffs Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment relied extensively on the two Hearing Officers' Determinations (HOD) issued by the DCPS SEID Student Hearing Office. Defendants' Opposition objects to consideration of those Hearing Officer's Determinations on the ground that the HODs were not certified. Defendants' Opposition does not dispute that they HODs are in fact authentic and do not dispute that the HODs submitted by Plaintiffs in support of their Motion and in support of their Opposition to Defendants' Motion for Summary Judgment are reliable.

The DCPS Student Hearing Office is an entity within the DCPS SEO and is entirely under the control of defendants DCPS and DC, and acts subject to the orders of Defendant DCPS' staff attorneys. Defendants consequently are in a pre-eminent position to determine whether the HODs that Plaintiffs submitted to the Court are authentic and reliable. The copies submitted by Plaintiffs as exhibits to Plaintiffs' pleadings bear all indicia of authenticity : they appear under Student Hearing Office letter head; the cover sheet of each bears the Student Hearing Office date stamp; each page of each HOD bears the DCPS Student Hearing Office fax logo and fax telephone number; each page bears the page number and the total number of pages faxed at the upper corner of each page; and each is singed by the impartial hearing officer whose name appears on the cover page of each order. Both HODs bear every indication that they were faxed to counsel for Plaintiffs in accordance with the SCPS SEO's Standard Operating Procedures for the Student Hearing Office. See Ex. 1 at Section 1003(DCPS Standard Operating Procedure) (providing for faxing of HODs).

Defendants do not argue that the filed HODs, which were issued by their very own entity and which they have had every opportunity to review, were inaccurate; they do not argue that the HODs filed by plaintiffs were not authentic; they do not argue that pages of the HODs filed here were missing; they do not argue that the HODs filed by Plaintiffs were not in fact issued by defendants' Student Hearing Office.  Instead, Defendants argue that the Court may not consider the HODs because, so they claim, the Court may not consider any HOD unless it is certified as a true copy. Defendants do not point to Rule 56(e) in support of that argument, and do not point to the Federal Rules of Evidence in support of that argument. Instead, defendants rely on Airlie Foundation , Inc v. United States, 826 F.Supp. 537  (DDC 1993).

Airlie does not stand for the proposition that Plaintiffs may not rely on the HODs unless the HODs are certified by the Student Hearing Office. Airlie involved a district court review of an IRS decision revoking AFI's charitable tax status. At summary judgment, plaintiff AFI, a charity challenged the IRS's reliance, in its motion for summary judgment, on transcripts of prior testimony at the criminal trial of AFI's controlling person and on certain exhibits.  The Airlie court held that the transcripts and exhibits were admissible on any one of three independent grounds. Id .at 547. First, they were admissible because they were part of the administrative record in a declaratory judgment action under 26 USC 7428; second they were admissible  because use of prior trial testimony and exhibits is proper, by case law, in summary judgment actions, and finally they were admissible because any issue of authentication was satisfied, Id.

As to authentication, the Airlie court found that the fact that the transcripts of prior trial testimony were certified by the various criminal trial courts eliminated any issue. Id. The Airlie court did not hold that other methods of authentication could not be utilized. See id. Here Plaintiffs' HODs, as originally filed with the Court are admissible because they bear all indicia of reliability.

Plaintiffs have obtained and have attached hereto as Exhibit 1, certified copies of both HODs.

**B. Other Documents**

Defendants similarly assert that what they refer to only as "several unauthenticated documents" may not be considered by the Court in connection with Plaintiff Linda Tomonia's claim that defendants violated her constitutional rights. Doc. 53 at 10. Defendants object to these documents on the ground that they have not been authenticated. Defendants do not so much as identify these documents; much less dispute their actual authenticity. Id. (referring only to page and section of Plaintiff's motion for summary judgment as form of identification of the documents at issue).

The documents at issue are of two kinds: notices of suspension, issued on DCPS forms and of correspondence by fax and email. Exhibits consisting of faxed correspondence bear the fax logos of the sender and recipient, are on letterhead, and include receipt confirmations. See Doc. 47 at 19, citing to SMF 61 (citing suspension notices issued by defendants, correspondence from Defendants, Defendants' Admission). These documents all are documents prepared by Defendants, sent by Defendants or sent to Defendants by Plaintiffs. All were or should have been in Defendants' files. All were

turned over to Defendants in response to their notice of Deposition of Plaintiff Tomonia.

See Ex. 3 at Para.2.


### C. Documents Now Authenticated or Certifed


Plaintiff Linda Tomonia's declaration authenticating the exhibits to her Motion for

Summary Judgment and her Opposition to Defendant's motion for summary judgment is

attached hereto as Ex. 3.


### II. Hearing Officer's Determinations Establish All Elements of Plaintiffs' Claims for Violations of the Disabilities Statutes

### A. Defendants' Arguments

Defendants' own motion for summary judgment did not challenge the predicate

factual elements of Plaintiff's claim. See Doc 46 at 9-12 (not challenging that RT is is

disabled within the meaning of the three disabilities statutes,) Defendants' Opposition to

plaintiffs' motion for summary judgment does raise that factual issue. Doc. 53 at

4(asserting that plaintiffs "have failed to establish the first element of their burden of

proof that [RT] is disabled as defined by the various Acts"). Defendants Opposition raises

only one other issue with respect to Plaintiffs' statutory disability claims, that is the issue

of whether Defendants suspended RT for conduct arising out of his disability. See id at 5-

6.


### B. Hearing Officers' Determinations Establish Elements Conclusively

Defendants' arguments are precluded by the doctrine of issue preclusion. Yamaha Corp. v. United States, 961 F.2d 245, 254 (DC Cir., 1992). Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a different cause of action involving a party to the first case. Id.,citing, Allen v. McCurry, 449 US 90,94 (1980). Issue preclusion applies where (1) the same issue in now being raised that (2) actually and necessarily was determined in a prior case .

Both issues were determined by the Hearing officer's decisions, decisions from which Defendants have not taken an appeal or sought trial de novo. The first Hearing Officer's Determination, issued following a hearing on March 19, 2007, found that RT had been determined disabled and in need of accommodations pursuant to Section 504 in 2002. Doc. 47-3 at 4, Finding 10; id at 5, Conclusion 2. That hearing Officer also found that DCPS had repeatedly suspended RT without performing any evaluations pursuant to Section 504.  Id. at 5, Conclusion 2, 4 (notwithstanding student's qualification for 504 Plan, student suspended from school multiple times); id at 5, conclusion 2 (despite fact that student diagnosed with ADHD, student has been suspended from school multiple times due to his behavior).

Under Section 504, unless DCPS performs evaluations of RT, convenes a Section 504 team meeting to review these evaluation and that team determines that the evaluations demonstrate that the child's conduct was not conduct arising out of his disability, DCPS can not suspend him.  S-1 v. Turlington, 635 F2d 342, 348 (5th Cir); Morgan v. Chris L. , 1997 US App Lexis 1041 at *12 (6th Cir. 1997)( if conduct arises from disability, school must accommodate behavioral problems with revised behavior management plan, not discipline child); LIH v. N.Y. City Bd. Of Ed, 103 F. Supp.2d 658, 670 n. 18(suspending

Section 504 student without conducting manifestation review violates Section 504).. The burden therefore was on DCPS to perform those evaluations, convene a 504 team to review those evaluations, and to determine that the conduct was not conduct arising from his disability, before disciplining him. That burden was triggered each school year, at the point that any proposed disciplinary action would result in a pattern of suspensions cumulating to 10 days.  In the case of school year 2006-2007, Turner ES had suspended him for a cumulative 7 days within the first month or so of his registration. Doc. 47-4 at 9 (second hearing officer's determination, factual finding 13). Thereafter any disciplinary action that would remove him from school for more than 2 days would have triggered the evaluation and manifestation determination requirement. Precisely when that trigger date was reached, can not be said with certainty, because Turner ES made "informal suspensions" and did so without informing Ms. Tomonia. That trigger date was reached, however, not later than February 5, 2007 . Doc. 50-3 at 2. As a result, all further suspensions during the course of school year 2006-2007 constituted exclusions, denials and discrimination in violation of the disabilities statutes. As to the 2005-2006 school year, Defendants admit that no Section 504 team meetings occurred during that school year. Doc. 48-7 at 2. Therefore no manifestation reviews were made at any time that school year and all suspensions after the 10-day trigger point were discriminatory.

The second of the Tomonia due process complaints was filed April 19, 2007, and alleged, inter alia, that Defendants had violated Section 504 by suspending RT for conduct arising out of his disability. The Hearing Officer hearing that complaint, reviewed the February and March suspensions and expressly determined that these suspensions were in fact suspensions for conduct arising out of RT's disability, Doc , 47-

4 at 16, and constituted exclusion from participation in DCPS programs solely because of his disability.

Defendants' pleadings and Admissions repeatedly assert, as justifications for actions taken against RT that actions were taken on account of RT's behavior. Doc. 48-7 at 6; Doc. 46 at 10(defendants' motion for summary judgment)(RT suspended at Takoma for fighting or disrupting class); Id at 11 (RT suspended at Turner for inappropriate behavior including talking back, walking out of class, roaming the halls); id (RT suspended at Payne ES for roaming hallways, not going to class, fighting ). Defendants admit in their pleadings that RT was suspended "because of " these behavioral issues. Id at 12. See also id at 9 (RT suspended from school because of his disruptive behavior).

RT's disabilities make it difficult for him to control his behavior. Doc. 47-4 at 13, 17-18. As the second hearing officer found, these behaviors are behaviors arising out of his ADHD and emotional disabilities. Defendants repeated suspensions and exclusions of RT for conduct arising out of his disability . Doc. 47-4 at 16, conclusion 4.

### C. Defendants Concede Other Disability Claims

As discussed in  Plaintiffs' opposition to Defendants' motion for summary judgment, Defendants do not address any of the other acts of Defendants taken against RT, which Plaintiffs' amended complaint sets out as claims under the three disabilities statutes. See at 8-11 (plaintiffs' opposition to defendants' motion for summary judgment)(reciting additional claims and noting that defendants do not address them). Defendants' opposition to Plaintiffs' motion for summary judgment also does not address any of those other claims. See Doc. 53 at 4-7  (addressing only suspension issues). Defendants therefore have conceded that Defendants violated RT's rights under the disabilities

statutes with respect to those acts. Issues not addressed in their opposition are conceded.

Hall v.CIA 2008 WL631247 at *6 (D.D.C. March 10, 2008)

### III. Defendants Retaliated Against Plaintiff Linda Tomonia

At the due process hearing held March 19, 2007, Defendants made a groundless motion to dismiss Ms. Tomonia's complaint, asserting that the Student Hearing Office lacked jurisdiction over Section 504 complaints. They did so only after ms. Tomonia sought an emergency order, requiring defendants---who had just suspended RT for 10 days---to re-admit him to Payne. See Doc. 47-4 at 3 (hearing officer's determination). Defendants in their motion for summary judgment to all intents and purposes admitted that their motion to dismiss Ms. Tomonia's first due process complaint was groundless. See_Doc. 46 at 18. Defendants there justified their conduct by reference exclusively to a presumed privilege to utilize whatever litigation tactics suited them Id.

Now, in Defendants ' Opposition to plaintiffs motion for summary judgment, Defendants assert that their dismissal motion was made "with a good faith belief" that the hearing officer lacked jurisdiction. Doc. 53 at 8. Defendants offer absolutely no support for that assertion, See id.  Defendants do not, in their Opposition, offer any explanation as to how they then happened to make the same motion to dismiss at Ms. Tomonia's second due process hearing, on June 13, 2007, when by coincidence, RT again was under suspension at Payne ES. See Doc.47-4 at 4,13 . Once the first hearing officer had  entered his order, determined that the Student Hearing Office had jurisdiction and that

Defendant's motion to dismiss was groundless, Defendants could not claim that any re-assertion of the same motion was made in 'good faith."

**IV. Defendants Violated Linda Tomonia's Constitutional Rights**

Plaintiffs allege that Defendants violated her fundamental substantive due process right to direct the education of her son RT and allege that Defendants violated her right to equal protection of the law, when they denied her right to information concerning her child's education and right to participate in disciplinary conferences and hearings, both of which rights are established by DCPS regulations.

Defendants' Opposition theorizes that any violation of Ms. Tomonia's fundamental substantive due process interest under the Fifth Amendment to direct the education of her child was cured because Ms. Tomonia filed and received due process hearings on a Section 504 compliant---one of the two that defendants attempted to dismiss for lack of Section 504 jurisdiction.  Doc. 53 at 11. But see Doc. 47-2 and 47-3. Defendants do not explain how they could hold a "good faith" belief that the Student Hearing Office does not have jurisdiction to hear federal statutory claims, but nevertheless has  jurisdiction to hear and determine federal constitutional claims. See id. Nor do Defendants refer to either of the two HODs in support of their theory that ms. Tomonia's Fifth Amendment rights were addressed in her complaints, or determined by the hearing officers.

Plaintiffs'' equal protection claim alleged that Defendants willfully denied her ---though not other parents---information that she needed in order to defend RT from the

suspensions and exclusions that Defendants imposed in violation of the disabilities statutes. She required timely information if she were to take action before a suspension or exclusion went into effect. Defendants' Opposition theorizes that Ms. Tomonia has no equal protection argument, because, so they say, at some point along the line, Defendants gave her access to some of RT's records. Doc. 53 at 12 That is irrelevant to Ms. Tomonia's equal protection claim. Ms. Tomonia was denied the prior notification and contemporaneous access to records that DCPS regulations entitle a parent. See Doc 47-4 at 2 (access ordered by hearing officer and not given until June 22, 2007), 14 ( (hearing (finding that Ms. Tomonia denied information and access to records).

**V.. Defendants Violated RT's Constitutional Rights**

Plaintiffs' have alleged that Defendants' violated RT's substantive due process right to education without due process of law. See Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 20-24 .

Defendants assert that they are immune from a Section 1983 action for violation of RT's rights because (a) they suspended him for conduct arising from his disability in violation of the federal disabilities statutes and (b) they had a "good faith" belief that they were entitled to do so. See Doc. 53 at 9. This is essentially a re-statement of their argument in their motion for summary judgment. See Plaintiffs' Opposition at 20-24 (analyzing argument in Defendants' motion ).

Nowhere, whether in their motion for summary judgment nor in their Opposition to Plaintiffs' motion for summary judgment, do defendants support any part of their qualified immunity argument by any factual referent or any legal authority.

None of the defendants submits a declaration or affidavit setting out why he believed that he could suspend RT for 10 days or more without implicating RT's substantive due process interest in his education. See Doc. 53 at 9, Doc. 46 at 13. There is no factual basis offered the Court on which it could make a determination as to the reasonableness of any belief of any of the defendants. Defendants can not claim qualified immunity because no reasonably competent school official could have believed that RT did not have a due process right to a hearing before any proposed suspension of 10 days or more. See Goss v. Lopez., 429 US 565 (1982) (clearly establishing a student's due process right to a hearing in the course of any suspension for 10 days or more).

**VI. Plaintiffs' Pleadings Should Not Be Summarily Denied**.

Defendants argue that Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment should be summarily denied because Plaintiffs logged onto the ECF system to file those pleadings approximately 2. 5 and 4.0 hours after the deadline set by the Parties' Rule 16.3 Report, as amended. Because Plaintiffs access the ECF system by dial-up service, uploading of documents is slow. Defendants do not assert that they were injured by those de minimis delays. Nor do they represent that that those very brief delays interfered with or hindered their preparation of their responses. Plaintiffs apologize to the Court and Defendants for those delays.

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Road, N.W.
Washington, D.C. 20007

(202) 333-8553

```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA


LINDA TOMONIA, et al,           )
                                )
                                )
                                )
     Plaintiffs,                )Civil Action No 7-CV-0882(JR)
                                )
                                )
          v.                    )
                                )
DISTRICT OF COLUMBIA, et al,    )
                                )
     Defendants.                )
.......................................)
```

**Plaintiffs' Statement of Material Facts in Response to Defendants' Document 55**

1.Denied.

2.Denied

3.Denied

4.Denied.

5.The Standard Operating Procedures(SOP) of the DCPS SEID Student Hearing Office

are required to meet the due process safeguards of the IDEA, 20 USC Sections 1400 ff.

These procedures are subject to review by this Court, as a result of the Blackman-Jones

class action. The SOP provides for, inter alia, swearing of witnesses under oath.Ex. 1 at

600.1; 1001.


 6. Denied. At the time this action was filed, and for all times relevant to the events in this

action, Defendant Janey was Superintendent of DCPS.

7. Denied. Defendant Janey  was the chief policy making officer of by DCPS. V DC

Mum. Reg. Ch. 2.

11. Defendant's Answer admits that he supervised Payne ES. Doc. 32 at Para. 11.

12. Plaintiffs deny that the Hearing Officer's Determination is insufficient to support

their statement of fact. See also, Ex. 3 at Para. 9-12.

13.  The central administration was informed that RT had ADHD and that RT was

determined eligible for Section 504 accommodations. Ex. II-A at Para 3, II.-B. II-G,  Ex.

3 at Para. 18-20.

14. Denied. See Ex. 3 at Para. 19-20.

The due process hearings to which Defendants refer took place in 2007.Doc. 473, 47-4.

15.Plaintiffs deny that the evidence is insufficient.

16.Admitted

17.(a) Denied. See also, Ex. 3 at Para. 23, 27. )

(b) Denied. Doc. 47-4.

© Denied.

(d) Ms. Tomonia testified that a meeting was held at which DCPS determined that

RT was not eligible for special education services under the IDEA. See citation

referenced by Defendants. A manifestation determination meeting is not a

meeting at which legibility for special education services is decided. See 20 USC

1415. See also Ex. 3 at 7.

(e) Plaintiffs deny that the hearing officer's determination is insufficient to

support this .

(f) Plaintiffs deny that a factual finding that Defendants withheld records is a conclusion of lawyer. 3 at Para. 19-39.

18. Plaintiffs deny that the evidence cited is insufficient.

19. Plaintiffs admit that Defendants suspended RT for behavioral reasons and deny that this did not constitute suspension for conduct arising out of his disability.

20. Admitted.

21. Admitted.

22. See No..19.

23.  The evidence supports the statement of fact.

24. The evidence cited demonstrates that counsel for plaintiffs wrote all the persons named. See also, Doc. 49-4, 49-5, 49-6, 50-2, 50-6,50-7.

25. Denied.

26. Denied.

27. See evidence cited in No. 24 and 25.

28. Exhibit 1-A establishes that Ms. Tomonia received a hearing on her complaint under Section 504 of the Rehabilitation Act. It does not evidence any hearing on Ms. Tomonia's Fifth Amendment substantive due process rights.

29. Plaintiffs deny that the Hearing Officer's Determination does not support the facts asserted.

30. Denied.

31. The Hearing Officer's close to two month delay in issuing his decision deprived RT of relief that would have supported him for the remainder of that school year.

***32. The evidence cited demonstrates that Mr. Janey was notified. The evidence cited demonstrates that Ms. Hairston was notified and received that notification. See also Doc, 54-3, 54-4.

33. Defendants do not admit or deny, therefore it is admitted.

34. Denied. See evidence cited in No. .

36. Denied. See No. 31.

37.(a) Plaintiffs deny the asserted insufficiency.

37(b)  plaintiffs deny the asserted insufficiency

38.This constitutes an admission by defendants that they failed to perform any manifestation determination of RT.

39.Denied . See also Ex. 3 at Para. 27-28, 30-40. See Doc. 47-4.

40. Denied. See above. Plaintiff was denied prior notice of disciplinary action and was denied contemporaneous information concerning those actions. See Ex. 3 at 27-28, 30-40.

41.Denied . See Ex,. 3 at 27-28, 30-40.

42. Denied. See Ex. 3 at Para. 34-35.

45. Admitted.

46, Denied. See Ex. 3 at Para. 7.

47. Admitted.

48. DCPS did not conduct Section 504 evaluations, or convene Manifestation Determinations for any suspension of Rt. Ex. 3 at Para, 7.

DCPS conducted evaluations to determine whether RT was eligible for special

education services in connection with the January 9, 2007 MDT meeting at which

DCPS determined RT ineligible for special education.

49. Denied. See also Ex, 3, Para,30-33.

50. Admitted.

51. Denied.

53. See above.

54. See above.

55. Plaintiffs deny that these are not statements of fact.

56.Plaintiffs deny that these are not statements of fact.

57. Defendants' citations are irrelevant.  Judge Breslow's September 19 Order has not

been revoked. Ex. 3 at Para.24.

58b. Defendants do not deny this statement. It therefore is admitted. See Ex. 3 at Para

25.The statement is material and demonstrates that Defendants knowingly denied Ms.

Tomonia, who held and retained all parental rights, her right as a parent under DCPS

regulations. See Ex. 50-2.

59.Defendants repeatedly withheld information from Plaintiff. Ex. 3 at Para. 27-40.

___

60. Denied. See Ex. 3 at 27-40.

61. Defendants do not deny these statements. They therefore are admitted. See also, Ex. 3 at 27-40. As noted earlier, Ms.Tomonia testified that she was permitted to review a file containing some of RT's records after a hearing officer ordered Payne ES to give her access to his records. Ms. Tomonia was permitted by Payne ES to review that file on June 22, 2008—after the close of the school year. See 47-4 at 3.

62. Defendants do not admit or deny these facts. Therefore Defendants have admitted them. See also Ex. 3 at Para. 27-40.

63. Denied. See also. Doc. 54-3, 54-4 (emails of General Counsel).

64. Plaintiffs deny that these statements are not factually supported.

65. Denied. See Ex. 3 at Para.40-41.

66. Denied.

67.Denied.

68. See Ex, 3 at Para. 40-41.

69-74. Denied. Plaintiffs deny that these are legal conclusions.

75. Denied. See Doc.49-3, 50-3, 50-4, 50-5.

76. See No, 75.

77. Denied.

78. See No. 75.

79. Denied. See Ex. 3 at Para. 21.

80. Denied . See Ex. 3 at Para. 12.

82. Denied. Ms. Tomonia testified at deposition that she resided within the Takoma

attendance zone. See also Ex. V-E;  Ex. 3 at Para. 22..

83 . Defendants do not admit or deny. Therefore this is admitted.

84. Defendant informed Ms. Tomonia that RT could not return to Takoma the next

school year.  Ex. 3 at 22. (Declaration of Ms. Tomonia ).

85. Denied. See Ex. 3 at Para.22.

86. Plaintiffs admit that these statements are conclusions, but deny that they are not

supported by the evidence.

87. Denied. See Doc. 47-3, 47-4. See also Ex. 3 at Para. 40-41.

88. Denied. RT failed Fifth Grade because he was excluded from the classroom for

some 51 days. See Ex. 3 at Para. 40.

89. Denied. See evidence cited in No 88.

90. Denied on the basis of evidence cited in original,

91. Denied, See Ex. 3 at Para. 42-44.  (Declaration of Ms Tomonia)

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Road, N.W.
Washington, D.C. 20007
202.333.8553.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


LINDA TOMONIA, et al,           )
                                )
                                )
                                )
      Plaintiffs,               ) Civil Action No 7-CV-0882(JR)
                                )
                                )
            v.                  )
                                )
DISTRICT OF COLUMBIA, et al,    )
                                )
      Defendants.               )
..............................................)


## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I

      This Court ruled that plaintiffs could not sue the individual defendants, pursuant to 1983, for violations of Section 504, Title II of the ADA, either for violations of the discrimination, exclusion and denial prohibitions of those statutes or the retaliation provisions of those statutes. Plaintiffs, accordingly have not addressed those claims in their motion for summary judgment.  Ps motion for summary judgment addresses the following remaining claims against the defendants:

      1)  Claims against defendants DCPS and D.C. directly under Section 504, Title II of the ADA and the DC HRA ;

      2)  Claims against the individual defendants under  the DC HRA as Ps sue defendants DCPS  and D.C.;

1

3)  Claims against defendants DCPS, DC, and the individual defendants for

violations of the constitutional rights of both plaintiffs.

Defendants have opposed Plaintiffs' Motion for Summary Judgment. As discussed

below, Defendants' Opposition fails to demonstrate that Plaintiffs can not establish the

elements of their claims under the disabilities statutes and their constitutional claims.

## I.      Evidence That May Be Considered by the Court on Summary Judgment

 The Court and parties have great flexibility with regard to the evidence that may be used

in a Rule 56 proceeding. 10 A Charles A. Wright et al, Federal Practice and Procedure,

Section 2721 at 360. The particular forms of evidence that are mentioned in the rule are

not the exclusive means of presenting evidence in a Rule 56 motion. Id. at 361. The Court

may consider any material that would be admissible or usable at trial. Id.  Consideration

at summary judgment does not require the unequivocal conclusion that the evidence will

be admissible at trial as a condition precedent to consideration as evidence on the

summary judgment motion. Reed v. Ford Motor Co, 679 F Supp 873, 874 (D. Ind. 1988).

Unauthenticated exhibits may be considered by the Court when the documents have a

prima facie aura of reliability. Oglesby v. Coca Cola Bottling Co, 620 F Supp 1336m

1344 (D. Ill 1985).

### A.  Hearing Officer's Determinations

Plaintiffs Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment relied extensively on the two Hearing Officers' Determinations (HOD) issued by the DCPS SEID Student Hearing Office. Defendants' Opposition objects to consideration of those Hearing Officer's Determinations on the ground that the HODs were not certified. Defendants' Opposition does not dispute that they HODs are in fact authentic and do not dispute that the HODs submitted by Plaintiffs in support of their Motion and in support of their Opposition to Defendants' Motion for Summary Judgment are reliable.

The DCPS Student Hearing Office is an entity within the DCPS SEO and is entirely under the control of defendants DCPS and DC, and acts subject to the orders of Defendant DCPS' staff attorneys. Defendants consequently are in a pre-eminent position to determine whether the HODs that Plaintiffs submitted to the Court are authentic and reliable. The copies submitted by Plaintiffs as exhibits to Plaintiffs' pleadings bear all indicia of authenticity : they appear under Student Hearing Office letter head; the cover sheet of each bears the Student Hearing Office date stamp; each page of each HOD bears the DCPS Student Hearing Office fax logo and fax telephone number; each page bears the page number and the total number of pages faxed at the upper corner of each page; and each is singed by the impartial hearing officer whose name appears on the cover page of each order. Both HODs bear every indication that they were faxed to counsel for Plaintiffs in accordance with the SCPS SEO's Standard Operating Procedures for the Student Hearing Office. See Ex. 1 at Section 1003(DCPS Standard Operating Procedure) (providing for faxing of HODs).

Defendants do not argue that the filed HODs, which were issued by their very own entity and which they have had every opportunity to review, were inaccurate; they do not argue that the HODs filed by plaintiffs were not authentic; they do not argue that pages of the HODs filed here were missing; they do not argue that the HODs filed by Plaintiffs were not in fact issued by defendants' Student Hearing Office.  Instead, Defendants argue that the Court may not consider the HODs because, so they claim, the Court may not consider any HOD unless it is certified as a true copy. Defendants do not point to Rule 56(e) in support of that argument, and do not point to the Federal Rules of Evidence in support of that argument. Instead, defendants rely on <u>Airlie Foundation , Inc v. United States</u>, 826 F.Supp. 537   (DDC 1993).

Airlie does not stand for the proposition that Plaintiffs may not rely on the HODs unless the HODs are certified by the Student Hearing Office. Airlie involved a district court review of an IRS decision revoking AFI's charitable tax status. At summary judgment, plaintiff AFI, a charity challenged the IRS's reliance, in its motion for summary judgment, on transcripts of prior testimony at the criminal trial of AFI's controlling person and on certain exhibits.  The Airlie court held that the transcripts and exhibits were admissible on any one of three independent grounds. Id .at 547. First, they were admissible because they were part of the administrative record in a declaratory judgment action under 26 USC 7428; second they were admissible  because use of prior trial testimony and exhibits is proper, by case law, in summary judgment actions, and finally they were admissible because any issue of authentication was satisfied, Id.

As to authentication, the Airlie court found that the fact that the transcripts of prior trial testimony were certified by the various criminal trial courts eliminated any issue. Id. The Airlie court did not hold that other methods of authentication could not be utilized. See id. Here Plaintiffs' HODs, as originally filed with the Court are admissible because they bear all indicia of reliability.

Plaintiffs have obtained and have attached hereto as Exhibit 1, certified copies of both HODs.

**B. Other Documents**

Defendants similarly assert that what they refer to only as "several unauthenticated documents" may not be considered by the Court in connection with Plaintiff Linda Tomonia's claim that defendants violated her constitutional rights. Doc. 53 at 10. Defendants object to these documents on the ground that they have not been authenticated. Defendants do not so much as identify these documents; much less dispute their actual authenticity. Id. (referring only to page and section of Plaintiff's motion for summary judgment as form of identification of the documents at issue).

The documents at issue are of two kinds: notices of suspension, issued on DCPS forms and of correspondence by fax and email. Exhibits consisting of faxed correspondence bear the fax logos of the sender and recipient, are on letterhead, and include receipt confirmations. See Doc. 47 at 19, citing to SMF 61 (citing suspension notices issued by defendants, correspondence from Defendants, Defendants' Admission). These documents all are documents prepared by Defendants, sent by Defendants or sent to Defendants by Plaintiffs. All were or should have been in Defendants' files. All were

turned over to Defendants in response to their notice of Deposition of Plaintiff Tomonia. See Ex. 3 at Para.2.

### C.  Documents Now Authenticated or Certifed

Plaintiff Linda Tomonia's declaration authenticating the exhibits to her Motion for Summary Judgment and her Opposition to Defendant's motion for summary judgment is attached hereto as Ex. 3.

## II. Hearing Officer's Determinations Establish All Elements of Plaintiffs' Claims for Violations of the Disabilities Statutes

A. Defendants' Arguments

Defendants' own motion for summary judgment did not challenge the predicate factual elements of Plaintiff's claim. See Doc 46 at 9-12 (not challenging that RT is disabled within the meaning of the three disabilities statutes,) Defendants' Opposition to plaintiffs' motion for summary judgment does raise that factual issue. Doc. 53 at 4(asserting that plaintiffs "have failed to establish the first element of their burden of proof that [RT] is disabled as defined by the various Acts"). Defendants Opposition raises only one other issue with respect to Plaintiffs' statutory disability claims, that is the issue of whether Defendants suspended RT for conduct arising out of his disability. See id at 5-6.

### B.  Hearing Officers' Determinations Establish Elements Conclusively

Defendants' arguments are precluded by the doctrine of issue preclusion. Yamaha Corp. v. United States, 961 F.2d 245, 254 (DC Cir., 1992). Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a different cause of action involving a party to the first case. Id.,citing, Allen v. McCurry, 449 US 90,94 (1980). Issue preclusion applies where (1) the same issue in now being raised that (2) actually and necessarily was determined in a prior case .

Both issues were determined by the Hearing officer's decisions, decisions from which Defendants have not taken an appeal or sought trial de novo. The first Hearing Officer's Determination, issued following a hearing on March 19, 2007, found that RT had been determined disabled and in need of accommodations pursuant to Section 504 in 2002. Doc. 47-3 at 4, Finding 10; id at 5, Conclusion 2. That hearing Officer also found that DCPS had repeatedly suspended RT without performing any evaluations pursuant to Section 504.  Id. at 5, Conclusion 2, 4 (notwithstanding student's qualification for 504 Plan, student suspended from school multiple times); id at 5, conclusion 2 (despite fact that student diagnosed with ADHD, student has been suspended from school multiple times due to his behavior).

Under Section 504, unless DCPS performs evaluations of RT, convenes a Section 504 team meeting to review these evaluation and that team determines that the evaluations demonstrate that the child's conduct was not conduct arising out of his disability, DCPS can not suspend him.  S-1 v. Turlington, 635 F2d 342, 348 (5th Cir); Morgan v. Chris L. , 1997 US App Lexis 1041 at *12 (6th Cir. 1997)( if conduct arises from disability, school must accommodate behavioral problems with revised behavior management plan, not discipline child); LIH v. N.Y. City Bd. Of Ed, 103 F. Supp.2d 658, 670 n. 18(suspending

Section 504 student without conducting manifestation review violates Section 504).. The burden therefore was on DCPS to perform those evaluations, convene a 504 team to review those evaluations, and to determine that the conduct was not conduct arising from his disability, before disciplining him. That burden was triggered each school year, at the point that any proposed disciplinary action would result in a pattern of suspensions cumulating to 10 days.  In the case of school year 2006-2007, Turner ES had suspended him for a cumulative 7 days within the first month or so of his registration. Doc. 47-4 at 9 (second hearing officer's determination, factual finding 13). Thereafter any disciplinary action that would remove him from school for more than 2 days would have triggered the evaluation and manifestation determination requirement. Precisely when that trigger date was reached, can not be said with certainty, because Turner ES made "informal suspensions" and did so without informing Ms. Tomonia. That trigger date was reached, however, not later than February 5, 2007 . Doc. 50-3 at 2. As a result, all further suspensions during the course of school year 2006-2007 constituted exclusions, denials and discrimination in violation of the disabilities statutes. As to the 2005-2006 school year, Defendants admit that no Section 504 team meetings occurred during that school year. Doc. 48-7 at 2. Therefore no manifestation reviews were made at any time that school year and all suspensions after the 10-day trigger point were discriminatory.

The second of the Tomonia due process complaints was filed April 19, 2007, and alleged, inter alia, that Defendants had violated Section 504 by suspending RT for conduct arising out of his disability. The Hearing Officer hearing that complaint, reviewed the February and March suspensions and expressly determined that these suspensions were in fact suspensions for conduct arising out of RT's disability, Doc , 47-

4 at 16, and constituted exclusion from participation in DCPS programs solely because of his disability.

Defendants' pleadings and Admissions repeatedly assert, as justifications for actions taken against RT that actions were taken on account of RT's behavior. Doc. 48-7 at 6; Doc. 46 at 10(defendants' motion for summary judgment)(RT suspended at Takoma for fighting or disrupting class); Id at 11 (RT suspended at Turner for inappropriate behavior including talking back, walking out of class, roaming the halls); id (RT suspended at Payne ES for roaming hallways, not going to class, fighting ). Defendants admit in their pleadings that RT was suspended "because of " these behavioral issues. Id at 12. See also id at 9 (RT suspended from school because of his disruptive behavior).

RT's disabilities make it difficult for him to control his behavior. Doc. 47-4 at 13, 17-18. As the second hearing officer found, these behaviors are behaviors arising out of his ADHD and emotional disabilities. Defendants repeated suspensions and exclusions of RT for conduct arising out of his disability . Doc. 47-4 at 16, conclusion 4.

### C. Defendants Concede Other Disability Claims

As discussed in Plaintiffs' opposition to Defendants' motion for summary judgment, Defendants do not address any of the other acts of Defendants taken against RT, which Plaintiffs' amended complaint sets out as claims under the three disabilities statutes. See at 8-11 (plaintiffs' opposition to defendants' motion for summary judgment)(reciting additional claims and noting that defendants do not address them). Defendants' opposition to Plaintiffs' motion for summary judgment also does not address any of those other claims. See Doc. 53 at 4-7 (addressing only suspension issues). Defendants therefore have conceded that Defendants violated RT's rights under the disabilities

statutes with respect to those acts. Issues not addressed in their opposition are conceded.

Hall v.CIA 2008 WL631247 at *6 (D.D.C. March 10, 2008)

## III. Defendants Retaliated Against Plaintiff Linda Tomonia

At the due process hearing held March 19, 2007, Defendants made a groundless motion to dismiss Ms. Tomonia's complaint, asserting that the Student Hearing Office lacked jurisdiction over Section 504 complaints. They did so only after ms. Tomonia sought an emergency order, requiring defendants---who had just suspended RT for 10 days---to re-admit him to Payne. See Doc. 47-4 at 3 (hearing officer's determination). Defendants in their motion for summary judgment to all intents and purposes admitted that their motion to dismiss Ms. Tomonia's first due process complaint was groundless. See Doc. 46 at 18. Defendants there justified their conduct by reference exclusively to a presumed privilege to utilize whatever litigation tactics suited them Id.

Now, in Defendants ' Opposition to plaintiffs motion for summary judgment, Defendants assert that their dismissal motion was made "with a good faith belief" that the hearing officer lacked jurisdiction. Doc. 53 at 8. Defendants offer absolutely no support for that assertion, See id.  Defendants do not, in their Opposition, offer any explanation as to how they then happened to make the same motion to dismiss at Ms. Tomonia's second due process hearing, on June 13, 2007, when by coincidence, RT again was under suspension at Payne ES. See Doc.47-4 at 4,13 . Once the first hearing officer had  entered his order, determined that the Student Hearing Office had jurisdiction and that

Defendant's motion to dismiss was groundless, Defendants could not claim that any re-assertion of the same motion was made in 'good faith."

**IV. Defendants Violated Linda Tomonia's Constitutional Rights**

Plaintiffs allege that Defendants violated her fundamental substantive due process right to direct the education of her son RT and allege that Defendants violated her right to equal protection of the law, when they denied her right to information concerning her child's education and right to participate in disciplinary conferences and hearings, both of which rights are established by DCPS regulations.

Defendants' Opposition theorizes that any violation of Ms. Tomonia's fundamental substantive due process interest under the Fifth Amendment to direct the education of her child was cured because Ms. Tomonia filed and received due process hearings on a Section 504 compliant---one of the two that defendants attempted to dismiss for lack of Section 504 jurisdiction. Doc. 53 at 11. But see Doc. 47-2 and 47-3. Defendants do not explain how they could hold a "good faith" belief that the Student Hearing Office does not have jurisdiction to hear federal statutory claims, but nevertheless has jurisdiction to hear and determine federal constitutional claims. See id. Nor do Defendants refer to either of the two HODs in support of their theory that ms. Tomonia's Fifth Amendment rights were addressed in her complaints, or determined by the hearing officers.

Plaintiffs'' equal protection claim alleged that Defendants willfully denied her ---though not other parents---information that she needed in order to defend RT from the

11

suspensions and exclusions that Defendants imposed in violation of the disabilities

statutes.  She required timely information if she were to take action before a suspension

or exclusion went into effect. Defendants' Opposition theorizes that Ms. Tomonia has no

equal protection argument, because, so they say, at some point along the line, Defendants

gave her access to some of RT's records. Doc. 53 at 12 That is irrelevant to Ms.

Tomonia's  equal protection claim. Ms. Tomonia was denied the prior notification and

contemporaneous access to records that DCPS regulations entitle a parent. See Doc 47-4

at 2 (access ordered by hearing officer and not given until June 22, 2007), 14 ( (hearing

(finding that Ms. Tomonia denied information and access to records).

**V.. Defendants Violated RT's Constitutional Rights**

Plaintiffs' have  alleged that Defendants' violated RT's substantive due process

right to education without due process of law. See  Plaintiffs' Opposition to Defendants'

Motion for Summary Judgment at 20-24 .

Defendants assert that they are immune from a Section 1983 action for violation

of RT's rights because (a) they suspended him  for conduct arising from his disability in

violation of the federal disabilities statutes and (b) they had a "good faith" belief that they

were entitled to do so. See Doc. 53 at 9. This is essentially a re-statement of their

argument in their motion for summary judgment. See Plaintiffs' Opposition at 20-24

(analyzing argument in  Defendants' motion ).

Nowhere, whether in their motion for summary judgment nor in their Opposition

to Plaintiffs' motion for summary judgment, do defendants support any part of their

qualified immunity argument by any factual referent or any legal authority.

None of the defendants submits a declaration or affidavit setting out why he believed that he could suspend RT for 10 days or more without implicating RT's substantive due process interest in his education. See Doc. 53 at 9, Doc. 46 at 13. There is no factual basis offered the Court on which it could make a determination as to the reasonableness of any belief of any of the defendants. Defendants can not claim qualified immunity because no reasonably competent school official could have believed that RT did not have a due process right to a hearing before any proposed suspension of 10 days or more. See Goss v. Lopez., 429 US 565 (1982) (clearly establishing a student's due process right to a hearing in the course of any suspension for 10 days or more).

**VI. Plaintiffs' Pleadings Should Not Be Summarily Denied**.

Defendants argue that Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment should be summarily denied because Plaintiffs logged onto the ECF system to file those pleadings approximately 2. 5 and 4.0 hours after the deadline set by the Parties' Rule 16.3 Report, as amended. Because Plaintiffs access the ECF system by dial-up service, uploading of documents is slow. Defendants do not assert that they were injured by those de minimis delays. Nor do they represent that that those very brief delays interfered with or hindered their preparation of their responses. Plaintiffs apologize to the Court and Defendants for those delays.

Respectfully submitted,

Karen D. Alvarez
D.C. Bar No. 423186
1442 Foxhall Road, N.W.
Washington, D.C. 20007

(202) 333-8553

**OSSE**

DC Office of the
State Superintendent
of Education

27 March 2008

Dr. Jo Ann Smoak
Executive Director
Office of Review and Compliance
Office of the State Superintendent of Education
Government of the District of Columbia
1150 5th Street, SE
Washington, DC 20003

Mrs. Karen D. Alvarez, Esq.
Attorney at Law
1442 Foxhall Road, NW
Washington, DC 20007

Dear Mrs. Alvarez:

This letter serves to certify that the attached Hearing Officer Decisions are true and correct copies of the decisions that were filed with the Student Hearing Office as final "Impartial Due Process Hearing Officer Decisions".

The following Hearing Officer Decisions are attached and hereby certified:

1. A decision from Hearing Officer David R. Smith for a hearing administered on March 19, 2007 in the matter of <u>Reginald Tomonia v. District of Columbia Public Schools.</u>
2. A decision from Hearing Officer Kimm H. Massey, Esq. for a hearing administered on June 19 and 27, and July 17, 18 and 23, 2007, in the matter of <u>Reginald Tomonia v. The District of Columbia Public Schools.</u>

Sincerely,

Dr. Jo Ann Smoak
Executive Director

# District of Columbia Public Schools
## State Enforcement and Investigation Division
Kimm H. Massey, Esq., Due Process Hearing Officer
1150 5th Street, S.E., Washington, DC 20003
Facsimile: (202) 689-3825
Phone: (202) 698-3819

### Confidential

| | | |
|---|---|---|
| TOMONIA, REGINALD, Student<br>Date of Birth: 01/03/1995 )<br> )<br> )<br> Petitioner, )<br> )<br>vs. )<br> )<br>The District of Columbia Public Schools, )<br>Attending: Payne Elementary School )<br> )<br> Respondent. )<br>_____ ) | **IMPARTIAL DUE<br>PROCESS HEARING<br>OFFICER'S DECISION**<br><br>Complaint Date: April 19, 2007<br><br>Hearing Dates: June 19 and 27, 2007<br> AND July 17, 18 and 23, 2007<br><br>Hearing Held: 1150 5th St., S.E<br> Washington, DC 20003 | |

| | |
|---|---|
| Parent: | Mrs. Linda Tomonia<br>6817 Georgia Avenue, N.W.,<br>Apartment 421<br>Washington, DC 20012 |
| Counsel for the Parent/Student: | Karen D. Alvarez, Esq.<br>1442 Foxhall Road, N.W.<br>Washington, D.C. 20007 |
| District of Columbia Public Schools: | Rashida T. Wilson, Esq.<br>Attorney-Advisor<br>Office of the General Counsel<br>825 North Capitol Street, NE,<br>9th Floor<br>Washington, D.C. 20002 |

1

**JURISDICTION**

The Due Process hearing was convened and this Decision and accompanying Order written pursuant to the Individuals with Disabilities Education Improvement Act of 2004 (IDEIA), 20 U.S.C. §§ 1400 et. seq., the implementing regulations for IDEIA, 34 C.F.R. Part 300, and Title V, Chapter 30 of the District of Columbia Municipal Regulations ("D.C.M.R.").

**INTRODUCTION**

Student is twelve years old. For the 2006/2007 school year, Student initially attended Turner Elementary School ("Turner"). However, in March of 2007, Student was transferred from Turner to Payne Elementary School ("Payne"), where he remained for the remainder of the school year.

On April 19, 2007, counsel for Parent and Student ("Petitioner's counsel") filed a Due Process Complaint ("Complaint") against the District of Columbia Public Schools ("DCPS"), alleging that DCPS (1) failed to provide Parent access to Student's educational records; (2) improperly determined that Student is not eligible for special education services; (3) improperly suspended Student for behavior arising out of his disability; (4) violated § 504 of the Rehabilitation Act ("§ 504"); and (5) failed to carry out the requirements of Student's § 504 Plan. As relief for the alleged violations of IDEA, § 504, and the Family Educational Rights and Privacy Act ("FERPA"), Petitioner requested the provision of specialized instruction and related services, an appropriate placement, compensatory education, copies of all educational records, and an order prohibiting DCPS from suspending Student or excluding him from the classroom.

DCPS did not respond to the Complaint.

The Student Hearing Office (SHO) scheduled Due Process Hearings for June 19, 2007 at 9:00 a.m. and 11:00 a.m. On June 11, 2007, Petitioner filed Plaintiff's Motion for Stay Put Order and Plaintiff's Motion to Compel Production of Educational Records. By letter dated June 12, 2007, Petitioner's counsel submitted a Five-Day Disclosure that listed six potential witnesses and forty-eight documents that Petitioner intended to rely on at the due process hearing. However, the letter did not enclose documents 1 through 31 and 42 through 48, stating instead that those documents were not attached because they either had been disclosed on January 24, 2007 and March 12, 2007 in connection with a prior case (documents 1 though 23), had been distributed by the SHO to all parties (documents 24 through 26), had been filed with the SHO and served upon all parties (documents 27 through 31), or were educational records generated by DCPS that had not been provided to Parent (documents 42 through 48).[1] DCPS also submitted its Five-Day Disclosure on June 12, 2007, disclosing eight potential witnesses and no documents.

---

[1] Petitioner's Five-Day Disclosure actually used the number 42 twice in referring to documents. The first document 42, a psychoeducational report, was included with the disclosure. The second document 42, a suspension notice, was among the documents that intentionally had not been disclosed.

2

The due process hearing was convened on June 19, 2007. As preliminary matters, DCPS objected to documents 1 through 31 of Petitioner's Five-Day Disclosure, Petitioner advanced its Motion for Production of Records, and the hearing officer raised Petitioner's Motion for Stay Put Order. The hearing officer stated that Petitioner's Motion for Stay Put Order was moot, as the school year had already ended by the time of the due process hearing, and Petitioner's counsel agreed. Thereafter, Petitioner requested a ruling on its Motion to Compel Production of Educational Records, asserting that Parent had been denied access to the records. After inquiry by the hearing officer, DCPS agreed that it could make Student's educational records available for review and copying on Friday, June 22, 2007. The hearing officer then granted Petitioner's motion and stated that an appropriate Order would follow.

With respect to documents 1 though 31 of Petitioner's disclosure, DCPS objected to that portion of the disclosure on grounds that the documents had not actually been disclosed and were not part of the record in this case because they were used in a prior case. DCPS also objected to Petitioner's attempt to incorporate by reference into its present Complaint the statement of facts set forth in its prior Complaint of November 1, 2006. Petitioner maintained that issues and documents from prior due process hearings could properly be incorporated into subsequent hearings. The hearing officer rejected Petitioner's argument, ruling that Petitioner's prior case was separate and distinct from the instant case, and that all documents and facts Petitioner intended to rely upon in this case had to be disclosed in this case. The hearing officer gave Petitioner the choice of either proceeding without relying upon documents 1 though 31, or requesting a continuance so that all documents listed in its disclosure could be produced prior to the next hearing. Petitioner selected the latter option, and the hearing officer granted a continuance until June 27, 2007 at 1:00 p.m. and 3:00 pm, noting that an appropriate Order would follow. Petitioner gave DCPS a copy of documents 1 through 21 and stated that documents 22 through 31 would be provided to DCPS at least five days before the next hearing and documents 1 through 31 would also be provided to the hearing officer. Thereafter, the hearing was adjourned.

The hearing was reconvened on June 27, 2007. Petitioner provided the hearing officer with a copy of documents 1 through 23. Petitioner also provided copies for the record of documents 24 through 27(b) and 49 through 54, which had been disclosed to DCPS by cover letter dated June 20, 2007. All of Petitioner's documents were received into evidence without objection from DCPS.

As a preliminary matter, Petitioner asserted that DCPS had failed to comply with the hearing officer's Order granting Petitioner's Motion to Compel Production of Educational Records, because all of Student's educational records had not been provided. DCPS responded that Petitioner's counsel arrived at the appropriate school on the designated day and received copies of records, and there was no prior notice given to the hearing officer or DCPS regarding any alleged failure to comply with the Order. The hearing officer deferred ruling on the issue, stating that Petitioner would need to present evidence regarding the records that had allegedly been withheld before a ruling would be appropriate.

3

Thereafter, DCPS made two oral motions. First, DCPS asserted that the issues in Petitioner's instant Complaint had already been litigated in Petitioner's prior action and should not be re-litigated. However, after the hearing officer led the parties through a comparison of Petitioner's prior and present Complaints, DCPS realized that the prior Complaint concerned primarily the 2004/2005 school year, whereas the Present Complaint concerns the 2006/2007 school year. As a result, DCPS withdrew its first oral motion.

The second oral motion concerned DCPS's contention that the hearing officer lacked authority to adjudicate any portion of the dispute that concerned § 504 of the Rehabilitation Act. The hearing officer ruled that evidence concerning Petitioner's § 504 claims would be admitted; however, the parties would be allowed to file briefs on the issue of the hearing's officer jurisdiction, and the hearing officer would defer ruling on the motion until issuance of the Hearing Officer's Determination.[2]

Once the preliminary issues had been settled, the hearing proceeded and expert witness testimony was presented. However, as the time allotted for the hearing neared its end, the parties and the hearing officer realized that additional hearings would be necessary. After consulting their individual calendars, the hearing officer and the parties selected July 17 and 18, 2007 at 9:00 a.m. and 11:00 a.m. for additional hearings, the hearing officer confirmed the dates with the SHO, and the hearing officer stated that an interim Order continuing the hearing would follow. The hearing was thereafter adjourned.

On June 28, 2007, Petitioner filed a Motion to Take Testimony of GAL, Jonathon Krell, on an Earlier Date. (GAL is short for guardian ad litem.) Petitioner asserted that Mr. Krell had attended the initial hearing on June 19, 2007, and had been on standby to testify by telephone during the second hearing on June 27, 2007, but would be on vacation "outside the area" during the entire week of July 17 and 18, 2007. Petitioner requested that additional time be set aside for Mr. Krell to testify during the week before the week of July 17th and 18th. On July 5, 2007, the hearing officer denied Petitioner's Motion on grounds of undue burden and inconvenience.

The hearing was reconvened on July 17, 2007. As a preliminary matter, Petitioner renewed its Motion to Take Testimony of GAL, Jonathon Krell, on an Earlier Date, but the hearing officer denied the Motion on the grounds set forth in the July 5, 2007 Order. Thereafter, the hearing proceeded until the allotted time period had expired, at which point the hearing was adjourned.

The hearing was reconvened on July 18, 2007. The parties proceeded with the examination and cross-examination of various witnesses. As the time allotted for the

---

[2] Subsequent to the conclusion of the due process hearings in this case, counsel for DCPS orally advised the hearing officer that DCPS had withdrawn its motion in writing. However, as the hearing officer has not actually received a copy of the withdrawal, and the SHO has been unable to locate same, the hearing officer has included a ruling on the motion, *infra*, in the Discussion and Conclusions of Law section of this determination.

4

hearing neared its end, Petitioner made an oral motion to make closing arguments in writing, in light of the complexity of the case. DCPS opposed the motion, stating that it did not want to make closing argument in writing. The hearing officer ruled that closing arguments would be made orally, but that the hearing officer would accept written Proposed Findings of Facts if either party or both parties wished to submit them after the hearing concluded. As it turned out, however, DCPS did not have sufficient time to fully present its case before the hearing ended. DCPS made an oral motion for a continuance, the hearing officer granted the motion, the parties agreed on July 23, 2007 at 9:00 a.m. as the final hearing date, and after confirming the date and time with the SHO, the hearing officer stated that an appropriate interim Order would follow. The hearing was thereafter adjourned.

The hearing was reconvened on July 23, 2007. As a preliminary issue, Petitioner's counsel made an oral motion for permission to call a rebuttal witness, Mr. Jonathan Krell, the guardian ad litem, to rebut the testimony of DCPS witness, Ms. Pheadra Smith, who had testified at the hearing held on July 18, 2007. DCPS opposed the motion, on grounds that Petitioner was attempting "back door" in the testimony of Mr. Krell and should have given notification of the rebuttal witness at the end of the July 18th hearing. The hearing officer ruled that, time permitting, Petitioner would be allowed to call its rebuttal witness, but the witness would be limited to rebutting the testimony of Ms. Smith. Thereafter, the hearing proceeded, and after DCPS rested its case, Petitioner was allowed to call Mr. Krell as a rebuttal witness.

After all testimony had been received, Petitioner once again requested that the parties be allowed to present closing argument in written, "bullet-like" form, given the complexity of the case. This time, DCPS did not disagree, and the hearing officer granted Petitioner's request. The parties were given five calendar days to submit their written closing arguments, any Proposed Findings of Fact, and their briefs concerning the hearing officer's authority to adjudicate Petitioner's § 504 claims. The hearing officer then asked for a brief extension of time to issue the Hearing Officer Decision ("HOD") in this case, pointing out the voluminous documents and extensive testimony that had been received into evidence. The hearing officer suggested Monday, August 6, 2007, as the HOD due date, instead of the normal ten-day deadline of Thursday, August 2, 2007. Both parties agreed to the hearing officer's request for an extension, and the hearing was thereafter concluded.

On July 24, 2007, Petitioner filed Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction, setting forth its arguments and supporting authorities concerning the hearing officer's authority to adjudicate Petitioner's § 504 claims. On July 25, 2007, Petitioner submitted Plaintiff's Proposed Findings of Fact and Legal Notes.

According to the SHO as late as Friday, August 3, 2007, no documents were submitted by DCPS subsequent to the conclusion of the final due process hearing in this case.

5

**WITNESSES**

**For Petitioner:**
1. Margot Richters, Ph.D., Clinical Psychologist (by telephone)
2. Kristen Rhinehart Totten, Esq., Staff Attorney, Children's Law Center (by telephone)
3. Ms. Lauren Russell, Investigator, Children's Law Center
4. Mrs. Linda Tomonia, Parent
5. Jaren Van Den Heuvel, Ph.D., Director, Oak Valley Center (by telephone)
6. Mr. Jonathan Krell, Esq., Student's Guardian Ad Litem (by telephone)

**For DCPS:**
1. Ms. Pheadra Smith, Special Education Coordinator, Payne Elementary School (by telephone)
2. Ms. Marcia S. Parker, Principal, Turner Elementary School (by telephone)
3. Ms. Vanessa Craig, Special Education Coordinator, Turner Elementary School (by telephone)


## FINDINGS OF FACT

1. Student was born on January 3, 1995, and he is presently twelve years old.[3]

2. Parent has always been very involved in Student's educational career. Parent holds a Bachelor of Science degree from Virginia Commonwealth University. She has also worked internships in drugs and alcoholism and taught daycare.[4]

3. In 1997, Student was enrolled in a youth enrichment program for infants and toddlers at a private school in Silver Spring, Maryland. Student remained in this program through 2000.[5]

4. For kindergarten, Parent enrolled Student in Bridges Academy, a private school in the District of Columbia. The school experienced difficulty with Student's behavior throughout the year, but did not tell Parent until approximately April. The school personnel advised Parent that Student's academics were superb, but they would not consider reenrolling Student for the following school year because of his defiant behavior and aggression, which included talking back, hitting other kids, and not staying in his seat and doing as he was told.[6]

5. During the summer following his attendance at Bridges Academy, Student was evaluated at Kaiser Permanente ("Kaiser") and diagnosed with ADHD, impulsivity, and oppositional/defiant behavior.[7]

---

[3] *See* Complaint, p.1.
[4] Testimony of Parent.
[5] *Id.*
[6] *Id.*
[7] Testimony of Parent; *See* Petitioner's Exhibit RT-8 (at 68-69).

6. In 2001, Parent enrolled Student in Community Academy Public Charter School, a DCPS school located in northwest Washington, D.C. Based on Kaiser's diagnoses of Student, Community Academy developed a § 504 Plan for him. Student attended Community Academy for first and second grade, but he left at the end of the second grade because the school asked that he not return. The school personnel stated that Student's disruptive behavior resulted in their inability to give attention to other students. They stated that if Parent did not remove Student voluntarily, they would expunge him. They recommended that Parent try The School for Arts In Learning ("SAIL"), a DCPS school that deals with special education children and children who have physical disabilities.[8]

7. Parent applied to SAIL on Student's behalf, Student was accepted, and he began attending SAIL in the third grade. SAIL revised the § 504 Plan Student brought with him from Community Academy. The revised § 504 Plan was implemented and team meetings were held, but no progress was seen. At the end of Student's fourth grade year, SAIL requested that he not return because of his behavior. Parent was told that she could withdraw Student, or he would be expunged.[9]

8. For the 2005/2006 school year, Parent enrolled Student at Takoma Educational Center ("Takoma"), Student's neighborhood school. Parent also took Student's § 504 Plan to Takoma. Student's behavior did not improve at Takoma, which is an open space setting. The school personnel constantly called Parent at work to report that Student was talking back, hitting other children, getting out of his seat, walking out of the classroom, yelling into other classes, and otherwise interfering with other classes. Initially, Student's teacher would call Parent and ask her to redirect Student. After approximately one month, however, Parent began receiving calls from the school office to come and pick up Student. This change began at or about the end of October and lasted through May. On some of these occasions, Student was suspended, but not all of the suspensions were documented.[10]

9. While Student was attending Takoma, Parent requested a special education evaluation and for implementation of Student's § 504 Plan. Student was on ADHD medication at the time, and Takoma felt that his medications were not lasting long enough. Parent asked Kaiser to allow the school to administer an additional dose of medicine to Student, and the request was granted. Takoma administered ADHD medication to Student at approximately noon each day, but the additional dose of medication did not eliminate Student's behavior problems. In DCPS standardized assessments administered at Takoma on April 24, 2006, Student performed at the "Below Basic" level in Reading and Mathematics. In May, Takoma suspended Student for the rest of the school year. Takoma also retained Student in the fifth grade.[11]

---

[8] Testimony of Parent; Petitioner's Exhibit RT-8 (at 48-49).
[9] Testimony of Parent; Petitioner's Exhibit RT-8 (at 44-47).
[10] Testimony of Parent; Petitioner's Exhibits RT-5, RT-7.
[11] Testimony of Parent; Petitioner's Exhibits RT-3, RT-5, RT-6, RT-7.

10. On March 30, 2006, a Child Psychiatrist at Kaiser diagnosed Student with Attention Deficit Disorder and Depression.[12]

11. On May 15, 2006, Student was placed in St. Ann's Infant and Maternity Home ("St. Ann's"), which is a group home. Student's behavioral problems did not relent while he was at St. Ann's. To the contrary, a series of incident reports reveals that he repeatedly fought with other children, he absconded on more than one occasion, he hit and/or kicked various staff members, and threatened himself and others. The staff at St. Ann's recommended Student's removal from their residential program due to his anger, aggressive behavior, and non-compliance. On May 25, 2006, Alberta M. Vallis, M.D., a Child Psychiatrist at St. Ann's evaluated Student, gave a diagnosis of ADHD, and determined that Student was an at risk, angry, aggressive boy who required close monitoring. The psychiatrist recommended, *inter alia*, a more restricted special education placement for Student, weekly therapy, a therapeutic foster home, and hospitalization for stabilization of Student's E.D. On or about June 4, 2006, several St. Ann's staff members took Student to Children's National Medical Center ("Children's"), where he was admitted to the psychiatric unit.[13]

12. Student also was evaluated by Margot L. Richters, Ph.D., Clinical Psychologist, in May and June of 2006. In her evaluation report, Dr. Richters indicated as follows[14]:

> [Student] is currently functioning in the average range of intelligence. While he demonstrates ample capacity for learning, there was some variability in his mental abilities . . . Educational testing reveals average academic skills across all domains . . . Given [Student's] intellectual potential, his academic achievement is slightly below what would be expected. It is clear that fluctuations in attention, concentration and motivation are impairing [his] ability to learn effectively . . . Consistent with school reports and medical records, the results of this evaluation indicate that behaviorally, [Student] continues to demonstrate significant problems with attention, hyperactivity, impulsivity, and conduct . . . [Student] has troubled peer relationships, limited social skills and inadequate coping strategies . . . Emotionally, [he] is a guarded, angry boy who is experiencing unresolved sadness, grief and guilt around the recent loss of his father. Furthermore, he exhibits feelings of disappointment, confusion, anger, loneliness, abandonment and inadequacy, particularly with regard to his troubled relationships with significant adults.

Dr. Richters concluded that:

---

[12] Petitioner's Exhibit RT-11.
[13] Petitioner's Exhibits RT-8 (at 57-59), RT-18.
[14] Petitioner's Exhibit RT-19.

8

[T]he results of this clinical evaluation provide ample evidence to confirm the diagnoses of Attention Deficit/Hyperactivity Disorder and Oppositional Defiant Disorder. In addition, . . . the diagnosis of Tourette's Disorder cannot be ruled out . . . [Student] also exhibits symptoms of unresolved grief surrounding the death of his father. These symptoms support the diagnosis of Bereavement. Finally, the current problems between [Student] and his mother warrant the diagnosis of Parent-Child Relational problem. *It is extremely important to recognize that the cumulative effect of these diagnoses place [Student] at high risk for a number of poor outcomes . . . Without immediate, intensive, long term intervention, it is highly likely that he will continue to deteriorate academically, behaviorally and emotionally.* (emphasis in original)

13. At the beginning of the 2006/2007 school year, Student began attending Turner Elementary School, where his behavior problems continued. By this time, he had been placed in a foster home. Although Student's foster parent was called on at least seven occasions to come pick him up from school, no formal record was made that Student had been sent home. The staff at Turner was unaware of Student's existing § 504 Plan until October of 2006, when Petitioner's counsel advised the Principal at Turner, Ms. Marcia Parker, of Student's § 504 Plan. Then, in November of 2006, Turner developed a revised § 504 Plan for Student. At the initial Plan meeting on November 7, 2006, the teacher in charge of the "learning centers" in Student's classroom stated that Student tended to spend most of his time with other children, repeatedly got out of his seat, gravitated to the bad children, and had poor focus on his work. At the follow up Plan meeting on November 14, 2006, Student's general education teacher stated that Student caused basic class disruptions that prevented the teacher from teaching, and that Student's disruptive behavior included getting out of his seat, talking across the room, being disrespectful to adults, not staying on task, beating on his desk as if playing drums, being defiant and disobedient, and using curse words. Student's § 504 Plan called for an extremely large number of accommodations for Student in the areas of physical arrangement of the classroom, lesson presentation, assignments/worksheets, test taking, organization, behavior, computer/assistive technology, special considerations, and medication. The Plan also included thirty minutes per week each of individual counseling, group counseling, and ADHD adaptability coaching. Student's behavior initially improved under the revised § 504 Plan, as reflected in progress reports for the weeks of December 8, 2006, December 22, 2006, January 12, 2007, and January 26, 2007 that were sent to Petitioner's counsel, and Student's second advisory report card. On January 25, 2007, Turner convened a 504 Plan Meeting to review and revise Student's Plan, and several additional accommodations were added to Student's Plan. Nevertheless, in or about February, Student's behavior began to deteriorate. He was suspended at least twice in

9

February, and Parent found Student roaming the halls on at least two occasions when she went to visit the school. Student was also allowed to spend time in the Principal's office when he got off task.[15]

14. In the meantime, in or about October of 2006, Parent had requested a special education evaluation for Student. Parent believed that Student needed special education services because his behavior problems had been in existence since the beginning of his school career. DCPS conducted psychological, speech and language, and occupational therapy evaluations of Student on November 21, 2006, December 5, 2006, and January 19, 2007, respectively. The report of Psychological Evaluation, prepared by Leslie A. Arthur, Ph.D., DCPS Certified School Psychologist, stated as follows:

> Cognitive testing revealed that [Student's] cognitive ability falls within the Average range (CIX = 93). Achievement testing revealed that [his] overall reading (SS = 97) and math (SS = 91) skills fall within the Average range. Because there is no severe discrepancy between [Student's] cognitive and academic functioning, he does not appear to be eligible to receive special education services as a student with a Learning Disability.

The Speech and Language Evaluation report, prepared by Tanyna Saxton, MA-SLP, DCPS, similarly stated as follows:

> [Student's] performance on the CELF-4 indicates above average skills in overall language, with exceptional skills in his oral expression and his short-term memory for language. The CREVT-2 was used to assess his vocabulary. The resulting General Vocabulary score indicates average skills in receptive and expressive vocabulary. He showed no articulation errors, no voice problems, and no dysfluency . . . According to DCPS eligibility criteria, [Student] does not qualify for speech-language intervention. His communication skills appear to be a definite strength that can be exploited to enhance his overall academic achievement.

The Occupational Therapy report, prepared by Nikia Brocks, OTR/L, stated as follows:

> [Student] demonstrated average scores in fine motor skills . . . He demonstrated below average visual motor integration skills when tested by the school psychologist, but scored average with this therapist when given the supplemental assessments for visual perception and motor coordination.

---

[15] Testimony of Parent; Testimony of Ms. Totten; Testimony of Ms. Parker; Petitioner's Exhibits RT-7 (at 3), RT-8 (at 38, 40), RT-9, RT-12, RT-13, RT-22, RT-23, RT-37, RT-39, RT-51.

This therapist believes that . . . [he] has average abilities in that area. . . In addition, [Student] demonstrated average to above average abilities in all 7 subtests areas of visual perception . . . It is felt that [Student] is not a candidate for occupational therapy services at this time.

The results of the psychological and speech and language evaluations were presented by the respective evaluators at a January 9, 2007 MDT eligibility meeting for Student. (The occupational therapy evaluation was not conducted until ten days after the meeting.) There was no discussion of Student's classroom performance at the meeting, and Student's classroom teacher was not present. The DCPS MDT team determined that Student was not eligible for special education services as a learning disabled student.[16] Student's GAL at the time, Ms. Totten, asked DCPS to consider whether Student was eligible for special education based on his ED, but DCPS refused to do so. Petitioner's GAL and Petitioner's counsel[17] refused to sign the meeting notes.[18]

15.  In or about March of 2007, Student transferred to Payne Elementary School when he was moved to a new foster home. For the first week of class, Student's new teacher, Ms. Johnson, was basically unable to keep him in class. On March 12, 2007, Ms. Johnson and a counselor met concerning Student and decided to use daily progress report as a way to help Student remain in and participate in class. However, from March 19, 2007 through April 3, 2007, Student was suspended from Payne for walking the halls and not attending class. Upon Student's return to school, Ms. Johnson began sending daily progress reports home for the signature of Student's foster parent. Student did not receive a DCPS report card for the third advisory because he was enrolled at Payne for only eighteen days of the third advisory, and he was suspended for ten of those eighteen days. Student's report card from Payne for the end of the school year reflected that he had received grades of "2-" in Reading/English Language Arts, Mathematics, and Social Studies, "2" in Arts, and "1" in Science, and that he was being promoted to seventh grade for the 2007/2008 school year. The report card indicates that 1 equals "Below Basic" and 2 equals "Basic."[19]

16.  Student's behavior problems did not cease while he was attending Payne. In addition to Student's suspension in March, the Metropolitan Police Department ("MPD") was called to Payne on two occasions due to Student's behavior. In the beginning of May 2007, the MPD was called to the school after Student was accused of pulling up a female student's skirt. On or about Friday, June 1, 2007, the MPD was called to the school because Student had been involved in two incidents where he 1) hit a girl with a wire and

---

[16] Indeed, Turner's Special Education Coordinator, Ms. Vanessa Craig, who took the official Meeting Notes and produced the Notice of Ineligibility, stated at the due process hearing in this case that Student "is very intelligent." She feels that he needs to be challenged a little more, but noted that he holds a very intelligent conversation and reads very well.

[17] Petitioner's counsel had also been appointed Student's educational advocate pursuant to a Magistrate's Order. *See* Petitioner's Exhibit RT-8 (at 38).

[18] Testimony of Parent; Testimony of Ms. Totten; Testimony of Ms. Craig; Petitioner's Exhibits RT-17, RT-42.

[19] Testimony of Ms. Totten; Testimony of Parent; Petitioner's Exhibits RT-40, RT-49, RT-52.

2) kicked another child. Student was taken to a detention center, and after a June 16, 2007 youth court hearing, a jury of his peers made Student apologize to the girl he hit with the wire and to Parent. Also, Student's daily progress reports indicate that although he had some good days, he continued to talk in class, blurting out comments at any time and "joning" on other students.[20]

17. The Complaint in this case was filed on April 19, 2007, and the resolution session was held on May 7, 2007. Ms. Phaedra Smith, the Special Education Coordinator ("SEC") at Payne scheduled the resolution meeting. Ms. Smith had arranged for all members of the MDT team to be present at the meeting so that a special education eligibility determination could be made regarding Student. However, Petitioner's counsel objected to the presence of the team members because they were not listed in the letter of invitation to the meeting. Petitioner's counsel also refused to allow the MDT team to proceed with an eligibility meeting, so DCPS announced that it would stand upon its previous determination of ineligibility. When questioned, Student's teacher, Ms. Johnson, did not seem to be aware of Student's § 504 Plan.[21]

18. At the due process hearing in this case, Dr. Richters testified that Student's ED problems are now trumping his ADHD problems. On or about June 13, 2007, Dr. Richters interviewed Student again, as well as interviewing Parent, Student's mental health worker and caseworker. Student has told Dr. Richters that other children do not like him and that nobody likes him. She believes Student knows he is having trouble learning and having social success, so school makes him feel bad and his ED problems are at the forefront. He runs the halls as an escape mechanism, puts his head down in class -- basically shuts down because it feels so bad to be in school. Student's § 504 Plans clearly have not been enough to meet Student's needs. They contain no real strategies to help Student manage his behaviors. Student already takes serious medications with significant side effects that are given to children only as a last resort, and even the medications are not enough to help him cope. Dr. Richters opined that Student requires a special education setting because he has demonstrated that he can't function in a regular educational setting. She stated that Student needs a free-standing special education setting that has small classes with two teachers to no more than ten children, a highly structured behavioral management plan, a behavioral management specialist, trained teachers who know how to work with ADHD and LD issues, social skills assistance and group therapy, multi-sensory presentation of material, and tutoring. Dr. Richters is of the opinion that Oak Valley Center would be an appropriate placement for Student.[22]

19. Parent has visited three special education schools, including Oak Valley Center, and would like for Student to attend Oak Valley Center. Parent feels that Student mastered nothing from DCPS's curriculum during the 2006/2007 school year, because he spent his time roaming the halls, sleeping in class, and/or under suspension from school. Although Student has been promoted to the seventh grade, he needs some work on his addition

---

[20] Testimony of Ms. Russell; Petitioner's Exhibits RT-35, RT-40, RT-41 (at 5).
[21] Testimony of Ms. Smith; Testimony of Mr. Krell; Petitioner's Exhibit RT-41.
[22] Testimony of Dr. Richters.

skills, he cannot multiply three-digit numbers, and although he can read words with some stumbling, he doesn't comprehend, retain or visualize what he has read.[23]

20. Student visited the three special education schools with Parent, and has stated a preference for attending Oak Valley Center.[24]

21. The staff at Oak Valley Center has reviewed Student's application package, interviewed Student, spoken with Parent, and administered a wide range achievement test to Student. The director of Oak Valley believes Oak Valley can meet Student's needs and would be happy to accept Student, because Student's major problem appears to be emotional, and Oak Valley is a school for students with emotional challenges, learning disabilities, and ADHD (other health impaired). The related services provided at Oak Valley include intensive academic remediation, speech and language therapy, individual and social/life skills groups, and an intensive reading program.[25]

## DISCUSSION AND CONCLUSIONS OF LAW

As the party seeking relief, Petitioner bears the burden of proof in this case with respect to all claims alleged in the Complaint. *See* 5 D.C.M.R. § 3030.3; *Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528 (2005).

### 1. DCPS's Oral Motion to Dismiss Petitioner's § 504 Claims for Lack of Jurisdiction

At the due process hearing in this case, DCPS asserted that the hearing officer lacked authority to adjudicate any portion of this dispute concerning § 504. Under 34 C.F.R. § 104.36, an implementing regulation for § 504, DCPS is required to establish and implement, with respect to actions regarding the identification, evaluation or educational placement of handicapped persons believed to need special instruction or related services, a system of procedural safeguards that includes notice and an impartial hearing. The regulation further states that compliance with the procedural safeguards of IDEIA's predecessor, the Education of the Handicapped Act, is one means of meeting this requirement. As Petitioner points out in its opposition brief, DCPS has failed to create a separate procedural structure for the handling of impartial due process hearings for § 504 actions. Moreover, in a previous § 504 due process proceeding initiated by Petitioner's counsel on Parent's behalf and concerning Student, the presiding hearing officer determined, after consideration of post-hearing briefs filed by both Petitioner and DCPS, that DCPS impartial due process hearing officers have jurisdiction to consider § 504 claims. *See* Petitioner's Exhibit RT-25. Under these circumstances, and considering that DCPS has failed to present legal arguments and citations of authority demonstrating otherwise, the hearing officer concludes that jurisdiction exists over Petitioner's § 504 claims in this case. Accordingly, the hearing officer denies DCPS's oral motion to dismiss Petitioner's § 504 claims for lack of jurisdiction.

---

[23] Testimony of Parent.
[24] Testimony of Parent.
[25] Testimony of Dr. Van Den Heuvel.

## 2. DCPS's Alleged Failure to Provide Parent Access to Student's Educational Records during School Year 2006/2007

Petitioner alleged in its Complaint that, "[f]rom October 2006 forward, DCPS declined to provide the parent access to this student's educational records, as required by FERPA, Section 504 of the Rehabilitation Act, the Individuals with Disabilities Education Act, as amended, and D.C. Municipal Regulations." Complaint at p.5. Petitioner also presented evidence that DCPS failed to provide Petitioner with requested educational records for Student in the 2006/2007 school year, especially in connection with the various § 504 Plan and IDEIA eligibility meetings that were held for Student.

On June 19, 2007, the hearing officer issued an Order Granting Petitioner's Motion to Compel Production of Educational Records, pursuant to which Parent and Petitioner's counsel visited Payne ES on Friday, June 22, 2007, for purposes of reviewing and copying Student's educational records. At a subsequent due process hearing in this case, Petitioner's counsel represented that DCPS failed to comply with the Order because all of Student's educational records were not provided during the visit to Payne, whereas DCPS's counsel represented its client had advised that the visit proceeded as planned and copies of records had been provided.

After careful consideration of the representations of counsel and the evidence in this case, the hearing officer concludes that DCPS did not fail to comply with the hearing officer's June 19, 2007 Order. The hearing officer acknowledges that DCPS may not have provided Parent and Petitioner's counsel with all of the educational records they sought to review, in the nature of class logs, classroom work, homework grades, and the like. However, in light of the evidence in this case, which details DCPS's repeated inability to supply requested educational records for Student, the hearing officer concludes that it is more likely than not that DCPS failed to supply Parent and Petitioner's counsel with all requested records during their visit to Payne because the records either did not exist or were not in Student's file, and not because DCPS was intentionally withholding access to Student's educational records. As a result, the hearing officer concludes that there has been no violation of the June 19, 2007 Order issued in this case, and the hearing officer declines to order DCPS to produce educational records that it should, but apparently does not, have in its possession.

## 3. DCPS's Determination that Student is Ineligible for Special Education Services

Petitioner alleged in its Complaint that "DCPS conducted an MDT meeting on January 9, 2007 to consider the student's eligibility for special education services" and that "DCPS improperly determined that this student was not eligible for special education services." Complaint at p.5. Petitioner's evidence in this case proves that Student repeatedly has been diagnosed with ADHD, he has also been diagnosed with oppositional/defiant disorder, depression, and bereavement, and at least one psychologist has determined that a diagnoses of Tourette's disorder cannot be ruled out. Petitioner's evidence further demonstrates that DCPS determined at a January 9, 2007 MDT meeting that Student was

ineligible for special education services as a learning disabled Student, and DCPS refused to consider whether Student may have been eligible for special education services under IDEIA as an emotionally disturbed Student.

Under IDEIA, a "child with a disability" includes a child who has a serious emotional disturbance and/or an other health impairment, and who, by reason thereof, needs special education and related services. 34 C.F.R. § 300.8; 20 U.S.C. § 1401(3)(A). "Other health impairment" is defined to include children having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that (i) is due to chronic or acute health problems such as attention deficit disorder, attention deficit hyperactivity disorder, or Tourette's syndrome, and (ii) adversely affects a child's educational performance. 34 C.F.R. § 300.8(c)(9). "Emotional disturbance" is defined as a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance: an inability to learn that cannot be explained by intellectual, sensory, or health factors; an inability to build or maintain satisfactory interpersonal relationships with peers and teachers; inappropriate types of behavior or feelings under normal circumstances; a general pervasive mood of unhappiness or depression; or a tendency to develop physical symptoms or fears associated with personal or school problems. 34 C.F.R. § 300.8(c)(4)(i); *See also* D.C.M.R. § 3003.2.

IDEIA further provides that as part of an initial evaluation, the MDT team must review existing evaluation data on the child, including evaluations and information provided by the parents of the child. 34 C.F.R. § 300.305(a)(1) (emphasis supplied). Upon completion of administrative assessments and other evaluation measures, a group of qualified professionals and the parent of the child determines whether the child is a child with a disability. 34 C.F.R. § 300.306(a)(1).

In *Mr. I. et al., v. Maine School Administrative District No. 55*, 480 F.3d 1 (1st Cir. 2007), the student at issue was an honor roll student, who was considered by her teacher to be "a very bright young girl with strong language and math skills," but who had begun experiencing sadness, anxiety, and difficulty with peer relationships that eventually led to a diagnosis of Asperger's syndrome and adjustment disorder with depressed mood. Defendant school district refused to offer the student special education services, on the ground that there had been no significant adverse effect on her education, and instead determined that the student qualified for an array of services under § 504 of the Rehabilitation Act. In administrative proceedings initiated by the student's parents, the school district prevailed. On appeal by the parents, however, a district court ruled that the student was eligible for special education and related services, noting that the school district had agreed to provide the student with a number of accommodations under § 504, including one-on-one tutoring and instruction in social pragmatics, that fit the definition of special education. The district court ordered the school district to convene a meeting to develop an IEP for the student. On further appeal by the school district, the U.S. Court of Appeals for the First Circuit affirmed the district court's decision.

agency solely by reason of his or her disability.  *See* 29 U.S.C. § 794; 34 C.F.R. § 104.33(d).

### 5. DCPS's Alleged Failure to Implement Student's § 504 Plan in School Year 2006/2007

Petitioner alleged in its Complaint that "DCPS failed to carry out the requirements of the Section 504 Plan that DCPS created for this student."  Complaint at p.5.  Petitioner's undisputed evidence in this case shows that the staff at Turner ES was unaware of Student's existing § 504 Plan until October of 2006, when Petitioner's counsel advised Turner's principal of the Plan.  Additional evidence presented by Petitioner proves that it is more likely than not that Turner did not begin to implement a § 504 Plan for Student until after November 14, 2007, when the staff at Turner developed a revised Plan for Student and Student's general education teacher began sending weekly progress reports to Petitioner's counsel.  Finally, there is evidence tending to prove (1) that the staff at Turner abandoned their efforts to implement Student's § 504 Plan in early February of 2007, when Student began once again receiving suspensions due to his behavior problems, and (2) that the staff at Payne was totally unaware that Student had a § 504 Plan until they were advised of the Plan at the May 7, 2007 resolution meeting, at which point the school year was nearing its end.  Based on this evidence, the hearing officer concludes that Petitioner has proven that, for approximately seven months of the 2006/2007 school year, DCPS failed to implement Student's § 504 Plan.  The hearing officer further concludes that such failure to implement Student's Plan constituted a violation of § 504 of the Rehabilitation Act of 1973.  *See* 29 U.S.C. § 794; 34 C.F.R. § 104.33(b)(1).

In consideration of the foregoing, the hearing officer makes the following

### ORDER

1.  DCPS's oral motion to dismiss Petitioner's § 504 claims for lack of jurisdiction is **Denied.**

2.  Within five business days of the issuance of this Order, DCPS shall convene an MDT/IEP/Placement meeting to (1) review all of Student's evaluations, including the independent evaluations that have been secured by Parent, and determine whether additional evaluations are necessary; (2) develop an appropriate IEP for Student; (3) discuss and determine an appropriate placement for Student, giving due consideration to the preference of Student and Parent for a placement at Oak Valley Center; and (4) discuss and determine the form, amount and delivery of compensatory education services to Student.

3. In the event DCPS fails to provide a suitable placement for Student by the beginning of the 2007/2008 school year, Student is to be placed at Oak Valley Center, at DCPS's expense, on an interim basis until DCPS complies with the provisions of this Order.

4. All communications and scheduling in connection with the execution of this Order shall be made through Petitioner's counsel. For every day of delay caused by Parent and/or Petitioner's Counsel, the deadlines established herein for DCPS shall be extended by one day. Any disputes under this paragraph will be resolved based upon the documentation of the parties.

This is the FINAL ADMINISTRATIVE DECISION in this matter. Any party aggrieved by the findings and decision may APPEAL to a State court of competent jurisdiction or a district court of the United States, without regard to the amount in controversy, within 90 days from the date of the decision pursuant to 20 U.S.C. § 1415(i)(2).

Kimm H. Massey, Esq.                    8/6/2007
Impartial Hearing Officer                Date

Issued: 8|6|07
Student Hearing Office, DCPS

18

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
# STATE ENFORCEMENT & INVESTIGATONS DIVISION

David R. Smith, Due Process Hearing Officer
825 North Capitol Street, 8th Floor, N.E.
Washington, DC 20002
(202) 442-5432 (phone); (202) 442-5556(fax)

| | | |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL DUE PROCESS** |
| | ) | |
| Reginald Tomonia ("Student") | ) | **HEARING OFFICER'S DECISION**[1] |
| Date of Birth: January 3, 1995 | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 825 North Capitol Street, NW |
| | ) | 8th Floor |
| | ) | Washington, DC 20002 |
| District of Columbia Public Schools | ) | |
| 825 North Capitol Street, NW | ) | Attending School: |
| Washington, DC 20002 | ) | Payne ES |
| ("DCPS" or "District") | ) | |
| | ) | Due Process Complaint Notice: |
| Respondent. | ) | November 6, 2006 |

Counsel for Parent:          Karen Alvarez, Esq.
                            1442 Foxhall Road, NW
                            Washington, DC. 20007

Counsel for DCPS:           Saurabh Gupta, Esq.
                            District of Columbia Public Schools,
                            9th Floor
                            825 North Capitol Street, NW
                            Washington, DC 20002

---

[1]   An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Hearing Officer's Determination as a public record.

## INDEX OF NAMES

Reginald Tomonia v. DCPS

| Parent/Student's Representative | Karen Alvarez, Esq |
| Parent: | Ms. Linda Tomonia |
| | |
| School System's Representative | Saurabh Gupta, Esq |

**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**IMPARTIAL DUE PROCESS HEARING**

**INTRODUCTION:**

A Due Process Hearing was convened on March 19, 2007. The Hearing was held at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002. The Hearing was held pursuant to a Due Process Complaint Notice submitted by counsel for the parent dated November 6, 2006.

**ISSUES:**

1.    Whether the hearing officer lacks jurisdiction to hear alleged Section 504 Plan matters.
2.    Whether DCPS failed to develop an appropriate Section 504 Plan for the student and whether DCPS inappropriately suspended the student.

**JURISDICTION:**

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Improvement Act* (I.D.E.I.A.), 20 U.S.C. 1400, et. seq. and the *Rules of the Board of Education of the District of Columbia.*

**DUE PROCESS RIGHTS:**

The student's educational advocate waived a formal reading of the due process rights.

**FINDINGS OF FACT:**

1.    On November 6, 2006, a Due Process Complaint Notice was filed with the Student Hearing Office on behalf of the above named student. The Complaint was filed under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794. The Complaint alleged, among other things, repeated suspensions of the student in violation of Section 504 requirements resulting in the student being retained in the 5th Grade.

2.    On March 19, 2007, a Due Process Hearing was held at which Petitioner stated that the student had been suspended that day for ten days, an additional Section 504 violation and that Petitioner was requesting that Payne readmit the student.

3.    At the Hearing, DCPS made an oral Motion to dismiss the case stating that a DCPS hearing officer lacked jurisdiction to hear Section 504 violations. DCPS subsequently submitted a written Post Hearing Brief on March 26, 2007 presenting the same argument. In its Motion, DCPS states that hearing officers lack jurisdiction over Section 504 matters and that "There are adequate existing Section 504 due process channels for Petitioner to pursue this claim." However, DCPS' Motion did not contain a citation to support this contention.

4.      DCPS further states that the Student Haring Office of DCPS was specifically created to adjudicate special education hearings. The Motion refers to the Sections 200 and 201 of the Student Hearing Office Standard Operating Procedures with regard to jurisdiction and apparently concludes that because the SOP does not specifically reference Section 504 that the SHO is without jurisdiction to handle such matters.

5.      DCPS also refers to the *Blackman/Jones* Consent Decree as a basis for contending that the SHO and therefore hearing officers, lack jurisdiction to handle Section 504 matters. However, the Motion does not refer to a specific section of the Consent Decree that supports this position and the hearing officer has found no basis in the Consent Decree for concluding that it was the intent of the parties to preclude Section 504 issues from being decided by hearing officers.

6.      Lastly, in support of the contention that hearing officers lack jurisdiction, DCPS attached to its Motion a two page document titled "Procedural Safeguards – Section 504 of the Rehabilitation Act of 1973. Significant here is paragraph 7 as follows:

If your child qualifies under Section 504, you have the right to:

"7.      Seek resolution of issues if you are dissatisfied with any decision regarding the eligibility determination of your child. You may request a Section 504 central review by the impartial Central Review Team/Section 504 Coordinator and/or **hearing officer** by contacting the Section 504 Coordinator. The hearing provides opportunity for participation by the parents and/or student and representation by counsel. Either party may appeal the decision of the **hearing officer** and request a review of that decision. In addition, you may contact the Office of Civil Rights in the U.S. Department of Education."

(Emphasis added)

7.      Accordingly, DCPS' own guidance with respect to Section 504 provides for matters to be heard before a hearing officer. The provision about contacting the Department of Education's Office of civil Rights, is not stated as an exclusive remedy, but rather an additional procedure that Petitioner could have followed.

8.      On April 3, 2007, Petitioner filed an opposition to the Motion to the brief filed by DCPS supporting the view that DCPS hearing officer do have jurisdiction to consider Section 504 matters. Among other things, the opposition points out that DCPS has historically used hearing officers to handle 504 cases and that DCPS is yet to structure a separate procedure for handling 504 matters.

9.      In view of the above discussion, it is clear that DCPS hearing officers have jurisdiction to consider Section 504 allegations; accordingly, for the reasons stated above, DCPS's Motion to Dismiss is **DENIED.**

10.      The next two issues concern whether DCPS failed to develop an appropriate Section 504 Plan for the student and whether DCPS inappropriately suspended the student. Based on the documents submitted as part of the record, while attending the Takoma EC, the student was determined eligible for

4

Section 504 services in 2002, due to a diagnosis of ADHD. The mother contends that the services however were not implemented.

11.    The student began attending the Turner ES for the 2005-2006 school year; however, the mother contends that Turner failed to implement the 504 Plan and also suspended the student multiple times for his behavior.

12.    While at Turner for the current school year, a 504 Plan was developed for the student on November 7, 2006 and November 14, 2006. The parent consented to DCPS performing a psycho-educational evaluation, a speech and language evaluation, focusing on receptive language and auditory processing skills, visual and perceptual testing as part of an occupational therapy evaluation and memory and sequencing ability testing.[2] The record does not reflect that these evaluations were completed.

13.    On January 25, 2007, a 504 Plan Meeting was convened, resulting in additions to the student's 504 Plan.[3] However, the record does not reflect that the plan was implemented.

**DECISION AND CONCLUSIONS OF LAW:**

1.    This matter is before this Hearing Officer as the result of the student's educational advocate filing a Complaint contending that DCPS failed to offer the student a Free and Appropriate Public Education ("FAPE") in accordance with 34 C.F.R. §104 implementing Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794.

2.    Based on the record, the student qualified for Section 504 Plan services, resulting in a 504 Plan being prepared; however, notwithstanding the Plan, the student, diagnosed with ADHD, has been suspended from school multiple times due to his behavior.

3.    The mother consented to evaluations of the student at a meetings held on November 7 and 14, 2006 in which the student's 504 Plan was addressed; however, the evaluations agreed to have not been completed. A follow-up meeting on the 504 Plan took place on January 25, 2007, but there is no evidence that the services were implemented.

4.    Notwithstanding the fact that a 504 Plan was developed for the student, the student has faced multiple suspensions from school.

5.    Based on The Rules of the D.C. Board of Education, Section 3030.3, the petitioner, here the student, had the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student and to provide the student with FAPE. Based on the record, DCPS has failed to implement the student's 504 Plan and failed to conduct requested evaluations; accordingly, the parent has met her burden.

---

[2]    DCPS-02
[3]    DCPS-03

**ORDER:**

1.     Within 20 school days of the issuance of this Order, DCPS shall conduct evaluations of the student in all areas of suspected disability, including a psycho-educational evaluation, a speech and language evaluation, focusing on receptive language and auditory processing skills, visual and perceptual testing as part of an occupational therapy evaluation and memory and sequencing ability testing. In the event DCPS fails to conduct the evaluations, the parent is entitled to obtain independent evaluations at DCPS expense, within the superintendent's cost guidelines.

2.     Within 10 days of completion or receipt of the last evaluations, DCPS shall convene a 504/IEP meeting to review the evaluations and either develop a revised 504 Plan or, if the student is determined eligible for special education, develop an IEP and discuss and determine an appropriate placement and discuss and determine whether or not the student is entitled to compensatory education services.

3.     All meeting shall be scheduled through the parent's counsel and any delay in any timeline as a result of the parent, student or parent's counsel shall extend the applicable timeline by one day for each day of delay.

**APPEAL PROCESS:**

**This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.**

Date: S-8-07

Issued: 8 9 07

David R. Smith, Esq.
Impartial Hearing Officer

6

**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**IMPARTIAL DUE PROCESS HEARING**

| | | |
|---|---|---|
| In the Matter of | ) | **CERTIFICATION OF RECORD** |
| | ) | |
| Reginald Tomonia, | ) | |
|    Petitioner, | ) | |
| | ) | |
|      v. | ) | |
| | ) | |
| District of Columbia Public Schools | ) | |
| 825 North Capitol Street, NW | ) | |
| Washington, DC 20002 | ) | |
| ("DCPS" or "District") | ) | |
|     Respondent. | ) | |
| | ) | |

    I, David R. Smith, Impartial Due Process Hearing Officer in this matter, DO

HEREBY CERTIFY that the attached Record of Proceeding itemizes the record in

the above-entitled matter as of this date, consisting of the items admitted into evidence,

including disclosure exhibits and the audio tape recording of the Due Process Hearing.

                          EXECUTED this _8th_ day of _May_, 2007.

                          **DUE PROCESS HEARING OFFICER**

7

## MATTER OF REGINALD TOMONIA V. DCPS

### RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|---|---|
| 11-6-06 | Request for Due Process |
| | Notice of Pre-Hearing Conference (as applicable) |
| | Notice of Hearing |
| 3-26-07 | DCPS Disclosure Post Hearing Brief |
| 2-12-07 | DCPS Disclosures |
| 3-19-07 | Audio recordings of hearings |
| 4-3-07 | Petitioner's Response to DCPS Brief |
| 1-24-07 | Petitioner's Disclosures, 1-23 |
| 3-12-07 | |

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
**Clifford B. Janey, Ed. D, Chief State School Officer**



## *The Special Education Student Hearing Office*
## *Due Process Hearing*
## *Standard Operating Procedures*

*A Handbook for Hearing Officers, the Local and State Educational Agencies, Parent / Child's Representatives, and the Student Hearing Office Staff*

**District of Columbia Public Schools**
**State Enforcement & Investigation Division**
**Special Education Programs**
**Student Hearing Office**
**825 North Capitol Street NE, Suite 8076**
**Washington, DC   20002-1994**
**Phone:  (202)442-5432   /   Fax:  (202)442-5556**

1

| www.k12.dc.us |
| --- |

# Table Of Contents

**Rules**

**SECTION I**         **INTRODUCTION** ....................................................... **4**

**SECTION II**       **STUDENT HEARING OFFICE** ..................................... **5**

§  **200**      **Purpose**........................................................ **5**
§  **201**      **General Responsibilities** ........................................ **5**
§  **202**      **Hours of Operation** .......................................... **7**
§  **203**      **Filing of Pleadings & Documents** ............................. **7**
§  **204**      **Service of Documents** ........................................ **8**
§  **205**      **Fairness and Impartiality** ......................................... **8**
§  **206**      **Civility and Decorum** ......................................... **9**

**SECTION III**     **THE DUE PROCESS HEARING** ................................. **9**

§  **300**      **OVERVIEW** ..................................................... **9**
§  **301**      **Requesting a Due Process Hearing** ........................... **9**
§  **301.1**   **Filing a Due Process Complaint**............................... **9**
§  **301.2**   **Contents & Timeline for Filing Complaint** ................... **11**
§  **302**      **Requesting Hearing Against Charter School** .............. **12**
§  **302.1**   **Notice of Appearance by Charter School Attorney**......... **12**
§  **303**      **Responding to a Due Process Complaint** .................... **13**
§  **304**      **Pre-hearing Matters** ......................................... **14**

§  **400**      **DUE PROCESS HEARING** ...................................... **17**
§  **400.1**   **Scheduling the Hearing** ...................................... **17**
§  **401**      **Motions** ....................................................... **20**
§  **402**      **Continuances** ................................................... **21**

§  **500**      **PREPARING FOR THE HEARING** ............................... **25**

§  **600**      **THE HEARING OFFICER** ......................................... **25**
§  **600.1**   **Authority and Responsibilities** ......................................**25**
§  **600.2**   **Qualifications of Hearing Officers** ................................**26**

2

§   600.3   **Ex Parte Communications Prohibited** ……………………**27**
§   600.4   **Disqualification of Hearing Officer** ……………………**27**

§   700   **HELPFUL INFORMATION ABOUT
            DUE PROCESS HEARINGS** ………………………………**28**

§   700.1   **General Information** ……………………………………...**28**
§   700.2   **Purpose** ……………………………………………… **28**
§   700.3   **Failure to Appear** ……………………………………… **29**
§   700.4   **Conducting the Hearing** ………………………………... **29**
§   700.5   **Burden of Proof** ………………………………………… **30**

§   800   **RIGHTS** ……………………………………………… **30**

§   800.1   **Rights of All Parties** …………………………………… **30**
§   800.2   **Special Rights of Parents** ……………………………… **32**

§   900   **PRACTICE OF LAW** ………………………………… **33**

§   1000   **ATTORNEYS AND ATTORNEYS FEES** ……………… **33**

§   1001   **EVIDENCE** …………………………………………… **34**

§   1002   **OUTCOMES** ………………………………………… **34**

§   1002.1   **Settlement** …………………………………………… **34**
§   1002.2   **Dismissal** …………………………………………… **35**
§   1002.3   **Withdrawal** ………………………………………… **35**

§   1003   **THE HEARING OFFICER'S DETERMINATION** …………… **35**

§   1004   **FINAL DECISION AND RIGHT OF APPEAL** ……………… **36**

§   1005   **RECONSIDERATION OF HEARING DECISION** ………….. **36**

§   1006   **HEARING RECORD AND TRANSCRIPT** …………………… **36**

§   1007   **REQUESTING A TRANSCRIPT** ……………………………… **37**

§   1008   **EXPEDITED DUE PROCESS HEARING** ……………………… **37**

**SECTION IV**   **CONCLUSION** …………………………………………… **38**

**APPENDIX** ………………………………………………………….... **39**

3

**Model Due Process Complaint Notice** ……………………………………. **40**

**Model Notice To Appear form**   ……………………………………. **44**

# SECTION I
# INTRODUCTION

**FACT**     More than 11,000 children receive special education and related services in the District of Columbia.

**FACT**     Parents and schools do not always agree about a child's special education identification, evaluation, eligibility, program, or placement.

**FACT**     Children are best served when parents and educators work together.

**FACT**     Federal special education law affords children, their parents, and educational systems certain legal rights when disputes arise, including the right to a due process hearing.

The information in the Standard Operating Procedures Manual for the Student Hearing Office is not intended as legal advice or as an interpretation of the laws and regulations governing special education in the United States. All individuals are urged to seek professional legal advice for guidance in understanding the laws, rules, and regulations that govern special education.  The Student Hearing Office will provide information about any free or low-cost legal services available in the District of Columbia upon request. These guidelines will, however, help individuals understand the implementation of these laws in the District of Columbia and the steps for filing a due process complaint to obtain a due process hearing. This document also details procedures to be followed by the Student Hearing Office ("SHO"), the Independent Hearing Officers assigned to conduct due process hearings on disputed issues, and the representatives of the Local Educational Agency (LEA), the State Educational Agency (SEA), and parents/children. You are also invited to visit the District of Columbia Public

4

Schools (DCPS) website (www.k12.dc.us) for additional information about special education and other dispute resolution options.  Unless otherwise specified, all days in this handbook are defined as calendar days.

# SECTION II

# THE SPECIAL EDUCATION STUDENT HEARING OFFICE

## § 200        PURPOSE

The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, requires each state and the District of Columbia to establish and maintain procedures to ensure that parents and children with disabilities have an opportunity to seek mediation and/or an impartial due process hearing to resolve disagreements over the identification, evaluation, educational placement, or provision of a free appropriate public education for students with disabilities.  These Standard Operating Procedures are designed to implement the requirements of the IDEA and to give notice to the public.  Copies of these procedures shall be maintained at all District of Columbia Public and Charter schools and a copy shall be provided without cost or delay to any person on oral or written request.  If there is any conflict between the Standard Operating Procedures and the IDEA or the *Blackman/Jones* Consent Decree, the IDEA or the *Blackman/Jones* Consent Decree govern.

## § 201        GENERAL RESPONSIBILITIES

A.     The due process system is administered in the District of Columbia by the Student Hearing Office in the State Enforcement & Investigation Division for Special Education Programs in accordance with the IDEA, 20 U.S.C. § 1400 *et seq.* and Title 5 of the District of Columbia Municipal Regulations

5

(5 DCMR § 3000, *et seq.*). The Student Hearing Office is responsible for the following:

1.  Receiving the written due process complaint for requesting a due process hearing;
2.  Scheduling, or coordinating with the Hearing Officer to schedule the hearing, within the statutory time limit;
3.  Contracting and assigning an impartial Hearing Officer;
4.  Notifying the parties to the hearing of the time and place of the hearing;
5.  Providing and coordinating logistical support for the hearing such as adequate space, recording equipment, and an impartial and qualified interpreter who is not an employee of DC Public Schools, if needed;
6.  Obtaining transcripts and audio recordings of hearings and retaining copies;
7.  Providing copies of transcripts and recordings upon request;
8.  Maintaining historical statistical data and archiving hearing files;
9.  Processing pre-hearing matters;
10. Maintaining records of due process hearings;
11. Publishing Hearing Officer Determinations; and
12. Promptly and professionally respond to inquiries.

B.  The Student Hearing Office shall maintain sufficient staff, equipment, and other resources and implement appropriate training, supervision, and other practices to ensure that hearings are held in a timely and professional manner.  The Student Hearing Office administrative support staff will ensure:

1.  Office staff promptly and professionally respond to inquiries and otherwise perform their duties competently.
2.  Office space is sufficient to provide reasonable working space for the staff at all times and for the use of Hearing Officers in the period before, after and between hearings.
3.  Hearings have adequate time and space to be conducted in the time reasonably requested by the parties or allotted by a Hearing Officer.
4.  The telephone is answered promptly and professionally during normal business hours; in the exceptional situations in which the telephone cannot be answered promptly (e.g., 5 or more calls come in simultaneously), calls immediately roll over to an answering machine or voice mail system that has sufficient memory to handle all messages.

6

5.    After normal business hours, calls immediately roll over to an answering machine or voice mail system that has sufficient memory to handle all messages.

6.    All messages handled by the answering machine or voice mail are retrieved promptly and calls returned no later than the close of the next business day, unless exceptional circumstances prevent it.

7.    Incoming communications and documents, including faxes, are received and documented promptly by date stamp; outgoing faxes are sent promptly, and the fax machine produces written transmittal confirmation for each fax attempted. Requests for copies of certified records, transcripts and audio recordings of pre-hearing conferences and hearings shall be kept in a log maintained by the SHO. Five-day disclosures, due process complaints, amended complaints, and HODs shall be logged into the ENCORE data base and tracking system.

8.    The Student Hearing Office shall provide and maintain in working order a date stamp machine for use by persons submitting documents by hand and will provide personnel to date stamp documents received by mail. SHO personnel shall return date-stamped documents by mail no later than the next business day if self-addressed postage-prepaid envelopes are provided.

9.    Case files for each Hearing Request are accurately maintained and include documentation of all correspondence, including fax transmittal confirmations, 5-day disclosures, and all documents from related cases involving the same student.

10.    All notices, decisions, and other correspondence are transmitted in a timely manner to the parties.

11.    The Student Hearing Office shall maintain and provide for staff and Hearing Officers reasonable working conditions.

12.    Hearing Officers shall be adequately and timely compensated. Hearing Officer compensation shall be competitive with comparable jurisdictions and sufficient to ensure there are enough Hearing Officers to ensure timely hearings. In addition, Hearing Officers shall be provided reasonable assistance from the Student Hearing Office staff so that the Hearing Officers can function efficiently without undue burdens from clerical responsibilities.

# § 202         SHO HOURS OF OPERATION

The Student Hearing Office shall open at 8:30a.m. and remain open until 5:00p.m. Monday through Friday except for District of Columbia holidays.

# § 203    FILING OF PLEADINGS & DOCUMENTS

1.    Except as otherwise provided, all documents, pleadings, and motions shall be filed with the State Enforcement & Investigation Division for Special Education Programs, Student Hearing Office, 825 North Capitol St., N.E., Washington, D.C. 20002.  All facsimile filings shall be sent to the following facsimile number: (202)442-5556, which is a dedicated fax line.

2.    Electronic filing of documents is not permitted and will not be accepted for filing.

3.    All documents received for filing by 5:00 p.m. Eastern Time will be accepted for filing that day.  All documents filed after 5:00 p.m. Eastern Time, and all documents filed on any  designated holiday, Saturday,  or Sunday shall be deemed filed on the following business day, except as provided in ¶ 1 above.

4.    Upon the filing of any pleading or motion an attorney is certifying that to the best of the his/her knowledge, information and belief, after an inquiry reasonable under the circumstances, that (a) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (b) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law; (c) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a  reasonable opportunity for further investigation or discovery; and (d) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

5.    Notice of Appearance of Legal Counsel.  The filing of a Notice of Appearance or other pleading by an attorney on behalf of a party in comformity with the requirements of this section shall constitute the entry of an appearance by the party.  All pleadings and other papers filed by the attorney shall set forth the name, full business or street address, telephone number, and fax number, if any, of the attorney.  Subsequent notices, pleadings, and documents shall be served on the attorney of record or, if not represented, the party.

# § 204    SERVICE OF DOCUMENTS

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

Unless otherwise provided by law, every letter or document, including every pleading, motion, or notification filed with the Student Hearing Office shall simultaneously be served on all parties or party representatives by the same method as the document was filed with the SHO, except that service by facsimile may be substituted for personal service.

## § 205    FAIRNESS AND IMPARTIALITY

The staff of the Student Hearing Office is not part of nor under the supervision of any District of Columbia Public Schools division or staff office that will participate in the hearing or implement the decision of the Hearing Officer. In fairness to all parties, the Staff shall maintain neutrality and neither favor nor promote the interests of the litigants who participate in due process hearings, and will neither express nor imply an opinion about the outcome of a hearing to anyone seeking information regarding the substantive merit of any claim. The Staff may advise parents/students where to obtain low or no cost legal counsel and refer inquiries to other offices in DCPS.

## § 206    CIVILITY AND DECORUM

All parties and counsel involved in a Special Education Due Process Hearing, including hearing officers, are expected to act with respect and decorum. Rude, offensive, and unprofessional conduct such as inappropriate language, angry outbursts and threatening statements directed at any other person or party is absolutely prohibited.  All attorneys are governed by the D.C. Rules of Professional Conduct.  The hearing officer has the responsibility for maintaining the integrity and orderly conduct of the hearing process, ensuring that the rights of all parties are protected, and maintaining an atmosphere conducive to impartiality and fairness at all times.  When appropriate, the hearing officer may exclude any person, halt or suspend a hearing, consider a referral to Bar Counsel and/or summon appropriate law enforcement authorities to address any inappropriate conduct or misbehavior by any person that disrupts a hearing.

# Section III

# THE DUE PROCESS HEARING

## § 300    OVERVIEW

A special education due process hearing is an administrative proceeding during which the parties are given the opportunity to present witnesses, documentary evidence, and oral and written argument in support of their respective positions on disputed special education issues. A Hearing Officer then issues a written decision concerning the matters in dispute.

# § 301 REQUESTING A DUE PROCESS HEARING

## § 301.1   Filing a Due Process Complaint

A.  What must be filed.

To obtain a due process hearing, the complaining party must file a due process complaint.  A party may not have a due process hearing until a party, or the attorney representing the party, files notice of a due process complaint.

B.  Who may file a due process complaint.

Anyone (parent, student, Local Educational Agency (LEA), or the State Educational Agency (SEA)) may file a due process complaint. Typical reasons for filing a due process complaint by parents and students include, but are not limited to, disputes regarding:

1.  Eligibility for special education services;
2.  Identification of the child as a student with a disability;
3.  Results of an evaluation or need for an evaluation;
4.  The appropriate educational placement of the student;
5.  Entitlement to, types of, and quantity of compensatory education services/products;
6.  Appropriateness of the student's IEP;
7.  Proper implementation of the student's IEP;
8.  Transportation problems;
9.  Disciplinary actions taken by the school; or
10. The provision of a free appropriate public education to a child with a disability.

C.  Typical reasons for which the Local Educational Agency (LEA) or State Educational Agency (SEA) may file a due process complaint to initiate a hearing include, but are not limited to, disputes regarding:

10

1.    A parent's refusal to consent to an initial evaluation or reevaluation;

2.    A parent's refusal to consent to the release of a record;

3.    Placement of a child with a disability in an interim alternative educational placement for disciplinary reasons; or

4.    The need for an independent evaluation.

D.    <u>Notice</u>

1.    LEA: Parents initiating a complaint must provide notice of the due process complaint to the Local Educational Agency ("LEA"). For students in traditional public schools, non-public day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St.,NE, Washington, D.C. 20002.  If the student attends a charter school, the parents must file notice of the due process complaint with the principal or director of the charter school.  LEAs or SEAs initiating a complaint must provide notice of the due process complaint to the parents.

2.    Student Hearing Office: A written copy of the due process complaint must be filed with the Student Hearing Office, 825 N. Capitol St., NE, Washington, D.C. 20002. The complaint may be filed by mail, hand-delivery, or facsimile (unless the parent is unable to read or write or has a disability that prevents a written request).  If a parent or guardian is unable to read or write, is not fluent in English or has a disability that prevents a written request, Student Hearing Office personnel shall assist the parent or guardian in filling out the complaint or refer the parent to a legal services program that handles special education matters without charge and is open for intake or Advocates for Justice in Education, the District's Parent Training and Information Center.

3.    Model Form: A model "Due Process Complaint Notice" form created by the State Education Agency may be used to give proper notice.  A copy of the model form is provided in the Appendix of this procedural manual.  DCPS will provide a copy of the form upon oral or written request. DCPS shall maintain an electronic copy of the form on its website with an easily identifiable link to the form from its homepage.  Copies of the form shall also be available on request by a parent at every District of Columbia Public School and Charter School and in the Office of Special Education, Office of the General Counsel, Student Hearing Office, State Complaint Office, the DCPS Care Center, Parent Resource Centers, Office of the

11

Superintendent, and the general office of the State Enforcement & Investigation Division. Nothing in these procedures shall be construed to require use of the model form so long as hearing requests filed in another manner comply with 20 U.S.C. § 1415(a)(7)(A) and § 301.2.B of these standard operating procedures.

# § 301.2   Contents of and Timeline for Filing the Due Process Complaint

A.   <u>Timeline for Requesting Hearing: Two Year Limitation Period</u>

1.   Unless otherwise provided by law or regulation and except as provided in § 301.2.B., the due process complaint must be filed not more than two (2) years after the date that the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint.

B.   <u>Exceptions to the Two Year Statute of Limitation Period</u>

1.   The timeline described in § 301.2.A.1 shall not apply to a parent if the parent was prevented from requesting the hearing due to:
   (a)   Specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
   (b)   The local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

2.   Nothing stated above should be construed to limit the right of the parties to rely upon other applicable exceptions to the statute of limitations period.

C.   <u>Contents of a Due Process Complaint.  The Due Process Complaint must contain the following information:</u>

a.   The name and address of the child.  In the case of a homeless child, available contact information for the child;
b.   The name of the school the child currently attends;
c.   A brief fact-based description of the problem or disagreement about the child's education;
d.   A proposed resolution of the problem to the extent known, and

12

e.      The signature of the parent or complaining party.

# § 302   REQUESTING A HEARING WHEN THE STUDENT ATTENDS A CHARTER SCHOOL

The parents of a student who attends a charter school have the same right to request a due process hearing as the parent of a student who attends a traditional public school.   If the Charter School is a named party, a copy of the due process complaint must be provided to the principal or director of the charter school at the same time that it is filed with the Student Hearing Office.   The failure to issue notice of the complaint to a charter school that is a party will result in a delay in scheduling a due process hearing.

# § 302.1   Notice of Appearance For Charter School

The filing of a Notice of Appearance or other pleading by an attorney on behalf of a charter school in conformity with the requirements of this section shall constitute the entry of an appearance by the charter school.   All pleadings and other papers filed by the attorney shall set forth the name, full business or street address, telephone number, and fax number, if any, of the attorney.   Subsequent notices, pleadings, and documents shall be served on the attorney of record for the charter school.

# § 303   RESPONDING TO A COMPLAINT

A.      <u>Sufficiency of Complaint</u>.

A due process complaint shall be deemed sufficient unless the party receiving the due process complaint notifies the Student Hearing Office or assigned Impartial Hearing Officer (if a hearing officer has been assigned to the complaint) and the other party in writing within fifteen (15) days of receipt of the due process complaint that the receiving party believes the due process complaint does not meet the requirements of § 301.2.C.   For purposes of this provision, and consistent with § 204 above, the receiving party shall be presumed to have received the complaint on the date received by the student hearing office.

1.    <u>Hearing Officer Decision on Sufficiency</u>.  Within five (5) days of receipt of notification that a party believes the due process complaint is legally insufficient, an Impartial Hearing Officer shall make a determination based on the face of the notice whether the due process complaint is sufficient to meet the requirements of 301.2.C. and shall immediately notify the parties in writing of that determination.

2.    <u>Amending the Due Process Complaint</u>.

    a.    A party may amend its due process complaint only if:

        i.    The other party consents in writing to the amendment and is given the opportunity to resolve the due process complaint through a resolution session meeting held pursuant to 20 U.S.C. § 1415 (f)(1)(B) and any controlling federal or local regulations; or

        ii.    The hearing officer grants permission, except that the hearing officer may only grant permission to amend at any time not later than five (5) days before the due process hearing begins.

    b.    If a party files an amended due process complaint, the timelines for the resolution meeting and the time period to resolve the complaint begin again with the filing of the amended due process complaint.

3.    A party may not have a hearing on a due process complaint until the party, or the attorney representing the party, files a due process complaint notice that meets the above requirements.

B.    <u>Response to Complaint by the Local Educational Agency</u>

1.    If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint, the LEA shall, within ten (10) days of receiving the due process complaint, send to the parent a response that includes:

    a.    An explanation of why the agency proposed or refused to take the action raised in the due process complaint;

    b.    A description of other options that the IEP Team considered and the reasons why those options were rejected;

14

c.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and

d.    A description of the other factors that are relevant to the agency's proposed or refused action.

2.    A response by an LEA under this subsection B shall not be construed to preclude the LEA from asserting that the parent's due process complaint was insufficient, where appropriate.

C.    <u>Other Party Response to a Due Process Complaint</u>

Except as provided in section B. above, the party receiving a due processcomplaint must, within ten (10) days of receiving the due process complaint, send to the other party a response that specifically addresses the issues raised in the due process complaint as set out at 20 U.S.C. 1415(c)(2)**.**

D.    Parties should be cognizant of the 10 day statutory period for filing the response noted in § 303.C.1.   Hearing officers may take the failure to so file into consideration in determining how to proceed on a case by case basis, considering the equities of the circumstances.

# § 304    PRE-HEARING MATTERS

A.    <u>PRE-HEARING CONFERENCES.</u>

1.    <u>General Information about Pre-hearing Conferences</u>.  The purpose of a pre-hearing conference is to identify all ripe issues that are truly in dispute and that could benefit from a joinder of claims and remedies. Pre-hearing conferences are not mandatory, however, the Hearing Officer may order the conference or either party may request a conference. It permits the Hearing Officer to raise the issue of settlement or mediation if the circumstances suggest that exploration of this issue would be beneficial to the parties and not result in delaying resolution of the complaint. However, hearing officers shall not discuss the terms of settlement or mediate settlement discussions.  Conducting a pre-hearing conference also provides the Hearing Officer the opportunity to advise all parties how the hearing will be conducted. Establishing ground rules, which

15

remove surprise from the proceedings, will result in a more efficient and focused evidentiary hearing.

The Hearing Officer shall not offer advice to any of the parties and/or their representatives, however, a Hearing Officer shall advise pro se litigants that they have a right to counsel and where free legal services may be obtained. The pre-hearing conference must be held in the presence of all parties concerned (either telephonically or face-to-face). Discussion with either party separately could result in an *Ex Parte* relationship that would taint the impartiality of the process and violate the Judicial Code of Conduct. No delay in the hearing date should result from a pre-hearing conference absent the consent of both parties or an Order of the Hearing Officer.

The pre-hearing Order should contain a confirmation of matters addressed during the pre-hearing conference including: (1) a statement of the issues to be resolved at the hearing, (2) the time, date, place, and other physical arrangements for the hearing, and (3) clarification of any procedural points including pre-hearing deadlines, and other various responsibilities of the parties. The Order can also help avoid unnecessary issues arising at the hearing, such as (1) a party's failure to appear, (2) a party's failure to meet a pre-hearing deadline, (3) a party not being prepared to proceed with the provision of evidence, (4) a party seeking a last-minute continuance where good cause is not shown, and (5) confirming special requests. The Order does not have to be a verbatim recitation of everything discussed in the pre-hearing conference; its chief purpose is to set forth the matters either stipulated to by the parties or ordered by the Hearing Officer.

Unless otherwise agreed to by the parties, the hearing officer should transmit the Order to the parties for receipt by each of them within 3 business days after the pre-hearing conference or at least seven business days prior to the hearing, whichever is earlier. The Order shall be sent by fax whenever possible and otherwise by mail to the parties. The Hearing Officer must also provide a copy to the Student Hearing Office.

2.  Prior to a hearing, the hearing officer or a party may move for the setting of a pre-hearing conference. At the hearing officer's discretion, the parties shall be directed to appear, either in person or by telephone, at a specific time for a conference prior to a

16

hearing on the merits for the purposes of considering preliminary matters, including any of the following:

a.    Setting the date and amount of time for the hearing;

b.    The formulation or simplification of issues;

c.    Admission of certain assertions of fact or stipulations;

d.    The procedures at the hearing on the merits;

e.    To establish any limitation on the number of witnesses and the time to be allotted each party to present their case in chief;

f.    Consideration of any motions; and/or

g.    To discuss any other matter that may aid in simplifying the proceeding, disposing of any matter in controversy, up to and including settlement of the dispute.

3.    Motions for pre-hearing conferences.

a.    Motions by parties for a pre-hearing conference, unless by consent, shall be filed with the SHO and served on opposing parties (by facsimile whenever possible) no more than ten (10) calendar days after the Notice of Hearing is issued by the SHO.  All motions should include a proposed order. Consent motions for a pre-hearing conference shall be filed at least 20 days before the hearing date and include a proposed order.

b.    Any reply or opposition to a non-consent motion under 3.a shall be filed and served not later than 5 business days after receipt.

c.    Hearing officers shall rule on motions for a pre-hearing conference in sufficient time to allow the conference to be held and a pre-hearing Order issued within 3 business days after the pre-hearing conference or no later than 7 days before the hearing, whichever is earlier.

4.    In exercising discretion under this provision, hearing officers shall not unreasonably deny a request for a pre-hearing conference.

17

The pre-hearing conference is not to be used in lieu of a resolution session.

5.    To ensure implementation of this section, the SEA shall ensure that there are sufficient hearing officers to accommodate reasonable requests for pre-hearing conferences and that hearing officers are assigned to cases in a timely manner.

6.    Action taken at the pre-hearing conference shall be on the record.

7.    A written request to reschedule a pre-hearing conference must contain a statement that all parties have been consulted or the reason why all parties were not consulted and list any objection and shall set forth three alternate dates and times for rescheduling the conference. Unless consented to by the parties, continuances shall not be granted without a showing of good cause.

# § 400    DUE PROCESS HEARING

## § 400.1  Scheduling the Hearing

A.    If the LEA has not resolved the due process complaint to the satisfaction of the parents within thirty (30) days of the receipt of the due process complaint, the due process hearing must occur.

B.    The timeline for issuing a final hearing officer's determination begins at the expiration of this 30-day period.  Pursuant to federal law, not later than 45 days after the expiration of the 30 day resolution period:

1.    A final hearing decision shall be issued by the hearing officer; and
2.    A copy of the decision shall be faxed when possible and otherwise is mailed to each of the parties.

C.    Exceptions:

1.    Waiver of the 30-day resolution period.  The parties may jointly waive the resolution session.  When the parties have jointly agreed to waive the Resolution Session, the due process hearing will be set for an expedited hearing, not later than 20 days following the date of the waiver.

18

2. <u>OGC determination that settlement discussions not productive</u>. If the resolution session was unsuccessful, as soon as the OGC determines that further settlement discussions would not be productive, the OGC is obligated to immediately notify the SHO to schedule the case for hearing.

D. General Procedures

1. The Student Hearing Office and the parties shall work reasonably in scheduling the case for a hearing. The date and time of the due process hearing may be set during a pre-hearing scheduling conference at the discretion of the Impartial Hearing Officer assigned to preside over the case. However, if the date of the hearing is not set during a pre-hearing scheduling conference, the following general guidelines shall apply:

a. Upon notification that the due process complaint has not been resolved, (SHO will receive a Due Process Complaint Disposition Form), upon request by mutual agreement of the parties, or upon the expiration of the 30 day resolution period, whichever occurs first, the SHO Hearing Coordinator will schedule the matter for a due process hearing.

b. The complaining party may indicate on the Due Process Complaint Form the estimated amount of time that will be needed for the hearing. All hearings will be scheduled for two hours unless a party requests otherwise. Unless the requesting party agrees to a modification of their request for a particular time allotment, only Hearing Officers may deny or modify a party's request to alter the time allotted for a hearing. If the Student Hearing Office has good cause to believe the time request is unreasonable, the matter shall immediately be referred to the Chief Hearing Officer who shall convene a pre-hearing conference call with the parties' counsel within 3 business days for the purpose of scheduling the hearing and establishing the time allotment. Hearing Officers may deny or modify a party's request to alter the time only after allowing the requesting party an opportunity to be heard about the reason for the request, and may grant such request only after allowing the opposing party an opportunity to be heard.

19

  c. The parent, or the parent's attorney if the parent is represented by legal counsel, will be contacted and requested to provide 3 available days for scheduling the hearing, and the amount of time needed for the hearing. At this time, the complaining party is required to notify the SHO if the case will require more than 2 hours for the hearing.

  d. The SHO will make every effort to schedule the hearing on one of the requested dates if one of the dates is available. If one of the 3 (three) dates is available, a Notice of Hearing will be sent by fax to every party/counsel who has a fax and by mail to any party/counsel who does not have a fax.

  e. If none of the 3 dates are available, and if a date and time has not otherwise been determined by a pre-hearing conference, SHO will propose the next available open hearing date and shall issue a Provisional Notice of Hearing to the parties.

  f. If any party objects to the provisional hearing date selected by the Hearing Coordinator, and no other date is agreed to between the parties, the matter will be referred to an Impartial Hearing Officer for a telephone pre-hearing conference, and the hearing officer shall render a final decision on the date and time of the hearing. Oral requests for a continuance will be ruled upon during the teleconference.

2. When the parties have jointly agreed to waive the Resolution Session, the due process hearing will be set for an expedited hearing, not later than 20 calendar days following the date of waiver. See § 1007 for the procedures that govern expedited hearings.

3. Not less than 10 business days before the hearing, the SHO will notify the parties of the hearing officer assigned to the case. This does not preclude the substitution of another hearing officer after the notice of the assignment as a result of unexpected emergencies or other exceptional circumstances.

# § 401     MOTIONS

A.    A motion is a request that a Hearing Officer rule or make a decision on a particular issue prior to or during a hearing. Pre-hearing motions are normally heard by the presiding Hearing Officer, but may be heard by another Hearing Officer for expediency.

B.    The following are examples of issues that are appropriate for resolution through a pre-hearing motion:

1.    Whether good cause exists for continuance;
2.    The child's stay-put placement pending resolution of the dispute;
3.    Dismissal of a party or parties to the hearing;
4.    Recusal of the Hearing Officer;
5.    Clarification of the issues in dispute;
6.    Consolidation of multiple cases into one hearing.

C.    Procedures for Filing Motions:

1.    A party may obtain a ruling on a pre-hearing issue by submitting a motion in writing to the presiding Hearing Officer (with a copy to the Student Hearing Office).

2.    A copy of the motion must be simultaneously faxed when the party or counsel has a fax machine and otherwise mailed to all other parties.  A certificate of service must be attached to the motion verifying that all other parties, or, if represented, their attorney of record, have been served with a copy of the motion.  Failure to timely serve the motion to all other parties may result in denial of the motion or scheduling of a contested hearing on the motion at the discretion of the Hearing Officer.

3.    The party making the motion must set forth the specific facts supporting the motion and attach supporting affidavits, declarations or documents when appropriate.

4.    All motions must be filed no later than the 5-day deadline for disclosing evidence and witnesses.  Any motion filed after that date shall be considered untimely, and may be denied at the discretion of the Hearing Officer without further consideration.  This rule does not limit the Hearing Officer's discretion to grant a motion filed after the 5-day disclosure deadline upon a showing of good cause by the party for the late filing.

21

5.     Any party wishing to respond to or oppose the motion shall file and serve by fax or mail as specified in 2 above a written response no later than 3 business days from the date the motion is filed with the Student Hearing Office or with the Hearing Officer if one has been assigned.  Responses contesting facts shall so state and supply supporting affidavits, declarations or documents as appropriate. Failure to timely respond may be taken as concession of the motion.  Failure to timely serve the response motion to all other parties may result in granting of the motion or scheduling of a contested hearing on the motion at the discretion of the Hearing Officer.

6.     Requests that require an immediate ruling may be directed to the Chief Hearing Officer at any time prior to the appointment of the hearing officer who will be assigned to preside over the case, or at the pre-hearing conference. No motion shall be decided before the time periods specified above have passed. Hearing officers shall be cognizant of timelines when considering motions and shall decide motions so as not to delay hearings or necessitate requests for continuances.

7.     If the parties disagree as to the facts relating to the motion, and both parties have supported their positions with appropriate affidavits, declarations, or documents, if necessary, the Hearing Officer may convene a pre-hearing conference to receive sworn testimony related to the disputed facts, or delay ruling on the motion until the hearing convenes to allow the parties to provide evidence relating to the disputed facts. In ruling on disputed facts, the Hearing Officer will not rely solely on statements made by an attorney or advocate representing a party.

# § 402     CONTINUANCES

**It is the policy of the Student Hearing Office to render final hearing decisions within all stated federal and local rules.  Continuances often cause unreasonable delays in the resolution or development of an appropriate educational plan for the student.  The SHO discourages the use of continuances; the granting of an extension of time to render the final hearing decision is prohibited in the absence of good cause.**

A.     Continuance defined

22

1.    A continuance is a request by one or more of the parties that a scheduled hearing, pre-hearing conference, or other event be rescheduled to a later date, and may request an extension of time for issuance of the final hearing officer's determination be granted. A party may only request a continuance for "good cause." In determining whether good cause exists for a continuance, the Hearing Officer will consider the facts supporting the request for the continuance, prior rulings, and the legal mandate for prompt resolution of special education disputes. The Hearing Officer may require documentation prior to granting a continuance request and an extension of time to issue a final determination.

2.    Pursuant to the *Blackman/Jones* Consent Decree, there is a rebuttable presumption that good cause does not exist for a continuance sought by DCPS for any of the following reasons:

a.    Unavailability of DCPS witnesses or counsel, unless DCPS has made a diligent effort to have such persons appear;

b.    Hearing officer unavailability, unless SHO has made a diligent effort to have such persons appear;

c.    The SHO's or Hearing Officer's decision to allot a different amount of time from that requested by the parent;

d.    The SHO's failure to secure adequate physical space for the hearing, unless SHO made a diligent effort to schedule reasonable space under the circumstances known to them at the time of the hearing;

e.    SHO failure to transmit in a timely manner those notices and documents which it is responsible for distributing;

f.    Late arrival of the Hearing Officer of DCPS attorney to the scheduled hearing; or

g.    SHO failure to provide the necessary recording equipment to adequately capture the entire proceeding.

B.    Procedures for Requesting a Continuance:

1.    A request or motion for a continuance shall be submitted to the Student Hearing Office in writing.  Only hearing officers can grant a continuance of hearings that have already been set on the hearing docket.

2.    A copy of the request shall be provided simultaneously to all other parties by facsimile if the party or counsel has a facsimile.  If the other party does not have a facsimile the requesting party shall call

23

the other party or counsel and leave a voice mail message or leave a message with a responsible adult over the age of 18 and also mail a copy of the request. The requesting party shall make diligent efforts to confer with all other parties or counsel to seek agreement with the continuance. If the parties agree to a continuance, the agreed motion or request should be filed with the Student Hearing Office. In general, the parties' agreement to a continuance constitutes "good cause" to reschedule the hearing to another date and to extend the deadline for issuance of a final determination.

3.   A certificate of service must be attached to the request or motion verifying that all other parties have been served and/or notified as provided above. Unless good cause is shown, failure to provide timely notice of the motion to all other parties shall result in denial of the motion or scheduling of a hearing on the motion at the discretion of the hearing officer.

4.   Parties opposed to a continuance must submit a written objection to the continuance within 3 business days of the date the motion is filed with the Student Hearing Office and serve same or provide notice as provided for in 2 above.

5.   All requests or motions for a continuance shall be submitted and filed no later than the 5-day deadline set for disclosing witnesses and evidence. Any request or motion for a continuance made or filed after that date shall be considered untimely, and may be denied at the discretion of the Hearing Officer without further consideration. This does not prohibit the Hearing Officer from granting a continuance submitted or requested after the 5-day disclosure deadline upon a showing of good cause by the party for the late request.

   a.   **Exception**. This rule imposing a deadline for filing a request or motion for a continuance does not apply to a request or motion that is based upon the unavailability of the student, the student's parent or guardian. Such requests or motions shall be considered timely filed even if filed after the disclosure deadline.

6.   The Chief Hearing Officer shall rule on all requests or motions for a continuance unless the case has already been assigned to another Hearing Officer.

24

7.    Until a ruling has been made on the continuance request, the parties should be prepared to proceed on the date and time for hearing indicated on the Notice of Hearing.

8.    A Hearing Officer must rule upon all continuance requests within 5 business days of the request or sooner, if practicable. To comply with this provision, the Hearing Officer must issue a written determination whether to grant or deny the continuance stating the basis for the decision, including whether good cause was found.  If the factual circumstances relating to the continuance are in dispute, the Hearing Officer may ask the parties to submit declarations, affidavits or other evidence, including witness testimony, which may be taken by telephone.

9.    When the Hearing Officer grants the request, the hearing shall be rescheduled and the 45-day time limit will be extended for the duration of the continuance.  The case must be reset to a date certain, with notice to all counsel and unrepresented parties, and the final hearing decision must be issued within the extended timelines.

10.   No more than one (1) continuance per side shall be granted in any case unless the Chief Hearing Officer grants another continuance based on exceptional circumstances.   All continuances shall be limited to ten (10) days, except by the agreement of the parties, or if the applicable Hearing Officer orders otherwise after review.

   a.    **Continuance granted**.  The Hearing Officer shall issue an Order confirming that the continuance was granted and provide the parties with notice of the new hearing date. The order shall identify (1) the good cause grounds for granting the extension of time, and (2) the new date for the hearing. The extension of time for issuance of the final hearing determination will only be for the number of days covered by the extension.  No open-ended continuance requests will be granted or allowed unless good cause is shown or the parties agree.

   b.    **Continuance denied**.  If the continuance request is denied, the hearing will proceed as scheduled and the original deadline for issuance of a final determination will apply.

11.   **Recessing a Hearing From Day to Day**.  If a hearing cannot be concluded within the time allotted for the hearing, and the case

25

needs to be recessed from day to day, the hearing will be reconvened as soon as reasonably possible, but in no event shall the case be recessed for more than ten (10) business days, except upon the mutual agreement of the parties, or upon the finding of good cause for a longer delay.  The deadline for the issuance of the final hearing decision will be extended only for the duration of the recess period.

12.    **No continuance for DCPS failure to attempt Resolution Session,** In the absence of agreement of the parties, if DCPS fails to make any attempt to schedule a Resolution Session within the statutory fifteen (15) days, DCPS shall not be granted a continuance of the due process hearing, except under exceptional circumstances.  The failure to notice and conduct a Resolution Session shall not constitute an exceptional circumstance.

13.    **Expedited Hearings**.  No continuance shall be granted on any case set for an expedited hearing unless the party was not consulted regarding the date or the parties agree. Where parties have no counsel a hearing officer must determine if the pro se parent's assent is knowing and willing.

# § 500    PREPARING FOR THE HEARING

In preparing for a hearing, a party must not only determine what issues need to be addressed by the Hearing Officer but also arrange to provide evidence to support the party's position on those issues during the hearing.

A.    Five (5) Day Disclosure Rule.

1.    At least five business days prior to a scheduled due process hearing, each party must disclose and provide to all other parties and the Student Hearing Office copies of all evidence which the party intends to use at the hearing.  This rule requires specific disclosure of:

a.    All documents and tangible things the party wants admitted into evidence for the Hearing Officer to consider;

b.    The names, addresses, and telephone numbers of all witnesses the party intends to call to testify during the hearing; and

26

    c.    All evaluations completed by that date and recommendations based upon the offering party's evaluations that the party intends to use at the hearing.

    2.    A party who does not receive adequate prior disclosure of evidence may ask the Hearing Officer to exclude the evidence from the hearing. It is within the discretion of the Hearing Officer to determine whether the evidence will be excluded.

# § 600    THE HEARING OFFICER

## § 600.1    Authority and Responsibilities

The Hearing Officer has the authority and responsibility to conduct the hearing with integrity and dignity; ensure the rights of all parties are protected; rule on procedural matters; take actions necessary to complete the hearing in an efficient and expeditious manner; to be fair and impartial, and to render a final independent administrative decision. The Hearing Officer has additional specific authority to:

1. Administer oaths or affirmations and question a witness on the record.
2. With the consent of all parties to the hearing, request that conflicting experts discuss an issue with each other while on the record.
3. Visit the proposed placement site when the physical attributes of the site are at issue.
4. Call a witness to testify at the hearing if all parties to the hearing consent to the witness giving testimony, or if the hearing is continued for at least five days prior to the witness testifying.
5. Order that an impartial assessment of the child be conducted (the cost of which will be paid by the school system).
6. Restrict the number of witnesses and limit the length of their testimony, provided such limitations do not prohibit a party from introducing relevant material and competent evidence.
7. Ask questions of counsel and parties in order to fully develop an appropriate record.

Hearing Officers have discretion in managing a due process hearing.  Hearing Officers may have individualized procedures or rules concerning the handling of documents, exhibits, witnesses and the like.  Such preferences shall be expressed in writing and made available upon request by the Student Hearing Office, and posted with timely updates on the DCPS website.

## § 600.2    Qualifications of Hearing Officers

27

Impartial special education hearing officers are not employees of the DC Public Schools.  They are private attorneys who have qualified to serve as hearing officers and who have executed a contract with the DC Public Schools for that purpose.  The Student Hearing Office will assign impartial Hearing Officers to cases on a rotating basis. Hearing Officers are selected based on their academic achievement, background in special education and special education law, professional experience, writing ability, and personal qualities. All Hearing Officers are members in good standing of the District of Columbia Bar, have at least five years of active legal experience as an attorney, and have received special training in conducting administrative hearings. Hearing Officers also receive training in special education laws, regulations, procedures, and programs.

The Student Hearing Office shall also maintain a statement of the qualifications of each person who serves as a Hearing Officer and make it available to the public without charge or undue delay upon request.

To ensure impartiality, every Hearing Officer is held to the American Bar Association's Code of Judicial Conduct. Additionally, no Hearing Officer may be employed by DCPS or any agency or organization involved with the care or education of the child in the case, have any other professional or personal interest that would conflict with his or her objectivity in the hearing, or have a prior involvement with the child. A person who otherwise qualifies to conduct a hearing is not an employee of DCPS solely because he or she is paid by DCPS to serve as a Hearing Officer. Additionally, a Hearing Officer may not be employed by or represent schools or parents in any manner in any jurisdiction, nor be an employee of any parent rights or disability rights agency or organization. A Hearing Officer must decline an assignment or ask to be recused as soon as a conflict is known .

# § 600.3  Ex Parte Communications Prohibited

A Hearing Officer may not communicate with either party or counsel about substantive matters in the case without the knowledge and/or participation of the other party(ies) or counsel when the party is represented. This prohibition does not include communication regarding scheduling. If an unrepresented parent is uncertain about what matters may or may not be discussed, they may ask the Hearing Officer what is appropriate. Especially when a parent or student is not represented, a Hearing Officer shall, to the extent possible, without becoming an advocate, assist the unrepresented party in developing the record. Counsel seeking clarification from a Hearing Officer shall always involve the other party's/parties' counsel.

# § 600.4      Disqualification of Hearing Officer

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

The Student Hearing Office shall ensure that the Hearing Officer assigned to a particular hearing is fair and impartial. The Hearing Officer shall disqualify him/herself from presiding over any case in which the Hearing Officer has a personal or professional interest which might conflict with the Hearing Officer's objectivity in the hearing. If a Hearing Officer is recused, the Student Hearing Office shall appoint another Hearing Officer as a replacement.

A.  PROCEDURES FOR DISQUALIFYING A HEARING OFFICER

1.  Any party to a hearing may challenge the assignment of a particular Hearing Officer. If any party to the hearing objects to the assigned Hearing Officer based on conflict of interest, bias or other reason, the objection shall be presented to the Hearing Officer in writing not less than five (5) business days prior to the date of the hearing.

2.  If any party to the hearing objects to the participation of the assigned Hearing Officer for any reason except bias after the five-day disclosure, the Hearing Officer shall use discretion in determining whether to disqualify him/herself from the proceedings. The Hearing Officer assignment will be changed if the Hearing Officer agrees.

3.  The Hearing Officer shall issue a written ruling on any objection to their participation. The written objection of any party to the participation of the Hearing Officer and the subsequent written ruling by the Hearing Officer shall preserve the issue for appellate review.

4.  No objection to the participation of a Hearing Officer shall be raised for the first time at the hearing itself, unless the grounds for such objection first became known after the deadline for filing the request for recusal or at the time of the hearing.

5.  All requests for recusal based on allegations of bias shall be reviewed by the Director of the SHO or an impartial and independent person, designated by the Director of the SHO, who meets the qualifications required for a hearing officer outlined above.  In the event that the allegation of bias is substantiated, or upon a determination that it is in the best interests of the student and the parties, the Student Hearing Office shall assign a different Hearing Officer to the case within 2 business days.

# § 700          HELPFUL INFORMATION ABOUT ADMINISTRATIVE HEARINGS

## § 700.1          General Information

Hearings will normally be held during regular business hours.  Hearings may be scheduled outside regular business hours upon request. Hearings will not be scheduled on weekends or holidays without the consent of all parties. An impartial Hearing Officer assigned by the Student Hearing Office on a rotating basis will conduct the hearing.

## § 700.2  Purpose

The purpose of the hearing is to allow all parties to present evidence supporting their positions and to explain to the Hearing Officer why they believe they should prevail on the issues in the hearing.

## § 700.3  Failure to Appear

If the party who requested the hearing (complainant) does not appear at the hearing, the hearing may be dismissed by the Hearing Officer. If the party who did not request the hearing (respondent) does not attend the hearing, the hearing may proceed without that party and a decision will be rendered based upon the evidence presented during the hearing. If for some unexpected reason, a Hearing Officer is absent from a scheduled hearing, the Student Hearing Office will expedite a rescheduling by either rescheduling the hearing for the next available date or assigning another Hearing Officer who can hear the case sooner than the next available date.

## § 700.4  Conducting the Hearing

The hearing is not governed by formal rules of procedure or evidence.  The Hearing Officer will attempt to ensure that all parties have an adequate opportunity to present their cases. Although less formal than a court trial, the hearing will proceed in an orderly fashion.  Timeliness is important.  Unjustified delays that prevent hearings from starting on time should be avoided.  Hearing Officers may take such delays into consideration in determining how to proceed on a case by case basis, considering the equities of the circumstances.

At the beginning of the hearing, the Hearing Officer turns on a recorder to make a record of the hearing and, after identifying the case and the parties for the record, briefly explains how the hearing will proceed. The Hearing Officer then usually clarifies the issues to be decided by discussing the case with the parties (and reviews the pre-hearing conference stipulations). If the recorder malfunctions during the hearing, the proceedings must be stopped and an attempt made to remedy the situation. If the problem cannot be solved, the hearing must be continued until such time when proper recording equipment is available. The Student Hearing Office shall ensure that all equipment is in good working order.

The Hearing Officer will ask the parties whether they have discussed settlement of the case.  At the parties' request, the Hearing Officer will provide the parties an opportunity to discuss settlement off the record or to request a mediator, if desired. The Hearing Officer will ask whether there are preliminary issues, then will rule on accepting into evidence the documents that the parties have presented. The Hearing officer will determine the order in which the witnesses will be presented.

Once preliminary matters are completed, the parties are generally given an opportunity to make opening statements. Opening statements should provide the Hearing Officer with a brief summary of the parties' positions on the issues for hearing. Following opening statements, the party presenting first will call its witnesses. Oral evidence may be taken only after oath or affirmation and may be provided via telephone. In cases where oral evidence is provided via telephone, the hearing officer shall use appropriate measures to ensure that the circumstance for the taking of that testimony are fair, appropriate, and designed to ensure accuracy and credibility.  For example, a hearing officer may ask a witness testifying by telephone to state on the record, under oath, whether anyone else is present in the room from which he or she is giving testimony by telephone and if so, allow the other party to object.

After one party has presented its witnesses and other evidence, the other party(ies) will call its (their) witnesses. Each party will be given an opportunity to ask questions of the other parties' witnesses, and the Hearing Officer may also ask questions of the witnesses.  The length of the due process hearing can vary, but the hearing officer shall run the hearing efficiently.

At the end of the hearing, each party is allowed to make a closing statement. The Hearing Officer may ask the parties to make oral closing statements, or if necessary because of the complexity of the issues, submit them in writing after the hearing. The Hearing Officer may also continue the hearing to request written briefs on particular legal issues and schedule additional oral argument, if necessary. No request for written closing statements or briefs shall be grounds for extending the timeline for issuing a hearing decision without the express consent of the parties/counsel. After closing statements are presented, the hearing record is closed. The Hearing Officer then has up

31

to 10 days to prepare a written decision, unless a decision is due sooner, which will be provided to the Student Hearing Office for distribution to all parties.

# § 700.5  Burden of Proof

As of June 30, 2006,  DCPS Board of Education policy regarding the burden of proof was amended (53 DCR 5249 (June 30, 2006)).  The revised rule shall apply to all hearing requests filed on or after Monday July 3, 2006.

# § 800          RIGHTS

# § 800.1  Rights of All Parties

All parties have the following rights:

1.     Right to representation. All parties have the right to be represented by legal counsel, and to be accompanied and assisted by persons with special knowledge or training related to the problems of disabled children.

2.     Right to present evidence and argument. All parties have the right to call witnesses and present written and other evidence that will help them prove their cases. The will also be given the opportunity to argue the merits of their cases.

3.     Right to confront and cross-examine adverse witnesses. All parties have the right to be present when witnesses testify against their positions and to ask them questions concerning their views.

4.     Right to compel the presence of witnesses. It is the responsibility of the party seeking relief to secure the presence of their witnesses for due process hearings by serving the witness with a Notice to Appear or other form of notification.  Only if a relevant witness refuses to appear at the hearing voluntarily, the party requesting the witness has the right to request the hearing officer to issue a "Notice to Appear" to the requested party.  Any Notice to Appear shall be issued by the Chief Hearing Officer and shall be served by the party requesting the Notice.

Procedures:

a.     The party should complete and file a Notice to Appear no later than fourteen (14) calendar days prior to the date of the scheduled

hearing.  A copy of the Notice must be served on all counsel of record.

b.  The Notice to Appear must specifically identify the witness or witnesses who are the subjects of the Notice, and must state the relevance of the requested testimony to the pending case.

c.  The Notice to Appear shall be signed and issued by the Chief Hearing Officer within two (2) business days.  [A]ny opposing party has a right to request that the hearing officer withdraw or quash the Notice to Appear.

d.  Service.  It is the responsibility of the requesting party to serve the Notice to Appear.   The Notice to Appear must be served by delivering a copy to the witness by certified mail, fax transmission, or hand delivery.  If the witness is a party, or an employee of a party, the Notice to Appear shall be served on the witness' attorney of record.

e.  Proof of Service.   Proof of service must be made by filing a statement by the person who made the service stating the date, time, and manner of service, and the name of the person served.

5.  Right to a record of the hearing. The Hearing Officer shall make an electronic record of the hearing. The Student Hearing Office shall maintain the electronic record at all times, including during recesses to new dates, and make it available for review by any party upon request. The parties have a right to a written or electronic copy of the electronic recording at no cost. A copy of the electronic recording will be provided within 5 (five) business days of the request. A transcript will be provided within 30 (thirty) calendar days of the request.

6.  Right to written finding of fact and decision. The Hearing Officer must prepare a written decision setting forth his or her findings of fact, analysis of the law, and final order. Copies of the decision will be provided to the parties by the Student Hearing Office.

7.  Right to prohibit the introduction of surprise evidence. The Hearing Officer may prohibit the introduction of any evidence at the hearing that has not been disclosed to all parties at least five (5) business days before the hearing.  This includes all evaluations and recommendations based upon those evaluations that the party intends to use at the hearing

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

8.      Right to request the exclusion of witnesses. A party may ask the Hearing Officer to order the prospective witnesses to remain outside the hearing room while other witnesses are testifying. The hearing officer shall have the discretion to rule on a motion by either party to allow expert witnesses, who offer opinion testimony (based on their understanding of the facts) to remain in the hearing room while other witnesses are testifying.  A party making such a motion shall support it with reference to legal authority and the facts of the particular case.

9.      Right to an interpreter. If the primary language of a party is other than English, an interpreter will be provided by the Student Hearing Office without charge. It is important that the parties notify the Student Hearing Office at least 10 days before the hearing when an interpreter is needed. In such circumstances, the party whose primary language is other than English shall also have a right to have their own interpreter present for confidential communications with their counsel.  Neither DCPS nor the Student Hearing Office shall be required to pay for this interpreter. When an interpreter is present, the hearing officer will allow time for a verbatim oral interpretation of all statements and all testimony at the hearing, stopping every two to three sentences to allow for such interpretation. The Student Hearing Office, all parties and the Hearing Officer shall plan for the hearing with the recognition that this process requires approximately twice the amount of time that would otherwise be needed for the hearing

# § 800.2  Special Rights of Parents

The law also provides the following special rights of parents in addition to the rights set out above:

1.      Right to examine pupil records. Parents have the right to examine all records maintained by the school that are related to their child. Parents should call or write their individual LEA or school(s) to request access to pupil records. Parents may authorize counsel, advocates, investigators or other individuals to review and obtain copies of their children's records.

2.      Right to a public hearing. Parents have the right to elect to have a hearing closed to the public or to allow members of the public to attend the hearing.

3.      Right to have the child present at the hearing. Parents have the right to have the child involved in the dispute present at the hearing.

34

4.      Right to a written verbatim transcript of the hearing. If a parent wishes to have an electronic copy or written verbatim transcript of the hearing, the parent or parent's counsel should submit a request in writing to the Student Hearing Office. There is no cost to the parent(s) or their counsel.

# § 900          PRACTICE OF LAW

All attorneys and other persons who appear for the purpose of providing legal representation on behalf of a party must be licensed and in good standing to practice law in the District of Columbia. This provision is not intended to exclude law students who are working under the appropriate supervision of a licensed attorney.

# § 1000          ATTORNEYS AND ATTORNEYS FEES

All parties have the right to be represented at all stages of the hearing process by an attorney of their choosing. This does not mean that DCPS must pay for the parent's attorney. Parents may be entitled to have costs of attorney's fees reimbursed if they prevail as a consequence of initiating a due process hearing. A court of competent jurisdiction, in its discretion, may award reasonable attorney's fees to the parent(s) of a child who is the prevailing party. The Student Hearing Office will provide all parties, if requested, with a list of local persons and organizations that can provide free or low cost representation, and this list shall be posted on the DCPS website and updated regularly.  No referral to any public or private attorney, law firm, or legal service provider shall constitute an endorsement, representation, warranty, or guarantee by DCPS, the government of the District of Columbia, or the Student Hearing Office about the quality of the legal work or services provided by the attorney, law firm, or legal service provider.

# § 1001          EVIDENCE

Evidence is anything that helps a party prove a fact that is necessary for that party to prevail in the hearing. Common forms of evidence include testimony of witnesses, including the parent's own testimony, and documents. Often, many documents in the child's educational record are put into evidence.

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

All witnesses must give testimony under oath if their testimony is to be used as evidence in the hearing. The Hearing Officer will give the affirmation or oath whether the matter is being heard by telephone or in person during a hearing. When there is a dispute as to what the facts are, the parties will need to present evidence or witnesses who have direct knowledge of the facts.

To enter documents into evidence, the party must present documents to the Hearing Officer and ask that they be put into evidence. Normally this is done at the beginning of the hearing. As indicated above, all parties must provide copies of the documents they wish to offer as evidence to the other party(ies) at least five business days prior to the hearing.

Documentary evidence is often cumbersome, and dealing with it in the hearing can be confusing and time-consuming. To avoid this problem, each party should logically organize its own documents. All parties should also bring an extra copy of their evidence in a folder for use by witnesses.

Parties wishing to call witnesses should request their presence by contacting him or her to come to the hearing voluntarily. Parents wishing to call a witness who is an employee of the LEA should follow the procedures in § 800.1.4.

# § 1002　　　OUTCOMES

# § 1002.1　　Settlement

It is the policy of the DC Public Schools to encourage resolution of disputes in special education through negotiation and other alternative dispute devices.  The resolution process and mediation may prevent future costs to all participants by establishing a partnership between parents and educators, thereby protecting the cooperative relationship between them. Together, the parent(s) and the school system may reach an agreement, thus eliminating the need for a due process hearing or any other resolution action. The Hearing Officer has authority to dismiss a hearing when informed by the parties that the case has been settled (other than those that have been formally mediated), and may, if requested, incorporate the terms of an agreement into an Order with consent of both parties. Settlement negotiations are confidential and details of such shall not be brought to the attention of the Hearing Officer if the hearing goes forward.

# § 1002.2　　Dismissal

The Hearing Officer shall dismiss the case if he/she determines that a hearing has been initiated for reasons other than those under the Hearing Officer's jurisdiction

36

or authority to resolve under IDEA. The Hearing Officer will have a maximum of 10 days from the date of the hearing to issue an Order of Dismissal, noting the reason for dismissal of the hearing.

# § 1002.3     Withdrawal

If the party requesting the hearing decides it does not want to proceed to hearing, that party shall inform the Student Hearing Office and the other party(ies) in writing of the decision to withdraw at the earliest opportunity. If the party requesting the hearing wishes to withdraw the case after the hearing has begun and testimony has been heard, the party shall make a motion to the presiding Hearing Officer.  It is within the discretion of the Hearing Officer whether to grant the withdrawal with or without prejudice.

# § 1003   THE HEARING OFFICER'S DETERMINATION

The final decision of the Hearing Officer in the case is formalized in a document referred to as the Hearing Officer's Determination (HOD).  The decision must include the identity of the parties, the final determination, and appeal rights. The Hearing Officer's Determination must also include findings of fact and conclusions of law; identify who prevailed on what issue; and specify what the school system, the parent(s), and the child are expected to do to carry out the decision.

The decision of the Hearing Officer shall be based solely upon the oral and written evidence presented at the hearing and any other additional written documents requested by the Hearing Officer prior to closing arguments.

Except as provided in this Standard Operating Procedures Manual or in the *Blackman/Jones* Consent Decree, the final decision must be signed, dated, and issued within 10 days following the hearing and no more than seventy-five (75) days following the request for hearing (subject to any extensions requested by a party and granted by the Hearing Officer).  A final decision must be in writing and must include findings of fact and conclusions of law separately stated.  Findings of fact must be based solely on the evidence presented at the hearing.  The Hearing Officer may at his or her discretion render his or her decision orally at the conclusion of the hearing, to be followed by the written final decision.  The Hearing Officer's final decision is considered "issued" on the date that the Student Hearing Office transmits the decision of the Hearing Officer to the parties by Certified Mail/Return Receipt Requested, in person, or by facsimile. All final decisions received from the Hearing Officer and arriving in the Student Hearing Office prior to 3:00 p.m. on a regular business day will be transmitted to the parties that day; all final decisions received after 3:00 p.m. on a regular business day will be transmitted the next business day.

The Student Hearing Office will transmit the Hearing Officer's Determination to all parties as near-simultaneously as possible and will not disclose the content of any Hearing Officer's Determination to any party prior to the dissemination of the decision to all parties. Specifically, the Student Hearing Office will distribute a copy of the Hearing Officer's Determination to: (1) the Superintendent or Director of the LEA or their representative, (2) the child's parent or representative, and (3) the student (if greater than 18 years of age). The Student Hearing Office and the Hearing Officer will retain a copy of the final decision and maintain a record of the transmittal (fax confirmation, signature of personal delivery, and/or certified mail receipt). After deleting personally identifiable information from the Hearing Officer's Determination, the Student Hearing Office shall make the findings and decisions available to the public by publication or at a reasonable cost and within 30 days of issuance.

# § 1004   FINAL DECISION AND RIGHT OF APPEAL

The decision issued by the Hearing Officer is final, except that any party aggrieved by the findings and decision of the Hearing Officer shall have 90 days from the date of the decision of the hearing officer to file a civil action with respect to the issues presented at the due process hearing in a district court of the United States or a District of Columbia court of competent jurisdiction, as provided in 20 U.S.C. § 1415(i)(2).

# § 1005   RECONSIDERATION OF HEARING DECISION

Reconsideration of a hearing decision may be granted on the timely filing of a motion for reconsideration.

Any motion for reconsideration must be filed within ten (10) days of the date of the Order is issued. The hearing officer shall afford the opposing party or parties an opportunity to respond prior to granting the motion. No response to a motion for reconsideration is required unless ordered by the Hearing Officer, which order shall specify the deadline for filing of a response.

Unless otherwise ordered by the hearing officer, the filing of a motion for reconsideration shall not stay the effectiveness of the order. The filing of a motion for reconsideration on a final order, if such motion is timely filed, the order shall not be deemed final for purposes of judicial review until the motion is ruled upon by the Hearing Officer or is denied by operation of law.

A motion for reconsideration shall be deemed denied by operation of law if the Hearing Officer has not ruled upon the motion within thirty (30) days of the date that the motion is filed with the Student Hearing Office.

38

If a motion for reconsideration is granted, the Hearing Officer may reopen the record in the matter, amend the findings of fact and conclusions of law, correct errors or mistakes, or make new findings of fact, conclusions of law, and issue a new order.

# § 1006   HEARING RECORD AND TRANSCRIPTS

After the hearing and all other legal proceedings have been completed, the Hearing Officer shall deliver all documents (which constitute the complete record of the due process hearing) to the Student Hearing Office.  The following items shall constitute the hearing record:

   a. All documents and tangible things submitted to the Hearing Officer during the hearing, whether or not formally admitted into evidence, along with an index of exhibits admitted;
   b. All correspondence and pleadings filed with the Student Hearing Office (exhibits, letters, pleadings, files or orders); and
   c. All Interim Orders and the Hearing Officer's Determinations.

In addition, the Student Hearing Office and/or the Hearing Officer shall complete a "Certification of Record" to certify that the above listed documents itemize the entire record. The original Certification of Record will be provided to and retained by the Student Hearing Office along with the record.

# § 1007   REQUESTING A TRANSCRIPT

Unless a court reporter is used, the Hearing Officer will make an electronic record of the hearing which will be maintained by the Student Hearing Office. Any party to the hearing may request a copy of the hearing audio tape or a verbatim written transcript of the hearing by submitting a request in writing to the Student Hearing Office. The parent has a right to a written or electronic copy of the record at no cost to the parent. A copy of the audio tape of the hearing will be provided within 5 business days of the request.

# § 1008 EXPEDITED DUE PROCESS HEARING

(A.)    Special Rule for Expedited Due Process Hearings

A due process complaint involving a request for an expedited hearing shall be governed by the same rules as are applicable to due process hearings generally. Special education law authorizes certain issues be heard in an expedited time frame. Expedited hearings generally are required when the dispute is related to discipline, including a proposal to expel a student.

(1.)    An expedited hearing must occur within twenty (20) days after the hearing is requested, and will result in a determination within ten (10) days after the hearing.

(2.)    Resolution Meeting. When an expedited hearing is requested, a resolution meeting must occur within ten (10) days of the date the hearing is requested, and the hearing must proceed unless the matter has been resolved to the satisfaction of both parties within fifteen (15) days of the receipt of the request for an expedited hearing.

(3.)    Each party must disclose its list of prospective witnesses and documents as specifically described in Rule 305 described in Rule 305 no later than three (3) business days before the date of the hearing.

(4.)    No continuances will be granted for expedited hearings unless the party was not consulted regarding the date or the parties agree. Where parties have no counsel a hearing officer must determine if the pro se parent's assent to the continuance is knowing and willing.

# Section IV
# CONCLUSION

It is the intent of the District of Columbia Public Schools, State Enforcement & Investigation Division for Special Education Programs representing the State Education Agency (SEA) in the execution of IDEA, to resolve all disputes related to special education in as efficient and cooperative a manner as possible. DCPS also encourages the use of mediation processes and other less formal dispute resolution options to the maximum extent possible when a parent is dissatisfied with a decision, or lack thereof, regarding identification, evaluation, the educational placement of a child, or the

provisions of free appropriate public education. Any suggestions for improving this handbook should be forwarded to the Student Hearing Office.

41

# APPENDIX

*State Educational Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*

42



# *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a due process complaint notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- Parents initiating a complaint must provide a completed due process complaint form to the Local Education Agency ("LEA"). For students in traditional public schools, non-public day school, or residential treatment facility, notice to the LEA shall be provided to the Office of the General Counsel, 825 N. Capitol St. NE, Washington, D.C. 20002, with a copy to the Student Hearing Office.  If a charter school is a named party, the due process complaint must be provided to the principal or director of the charter school, with a copy to the Student Hearing Office.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u> Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting.  You will be contacted by a representative of the Local Educational Agency to schedule the meeting.  **The Student Hearing Office does NOT schedule resolution sessions**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

- Policies and Procedures governing due process hearings are contained in federal and local law and the SHO SOP.  You may obtain a copy of the SOP from the Student Hearing Office or any D.C. Public or Charter School without cost.  The SOP is also at the DCPS website.

## A.    INFORMATION ABOUT THE STUDENT:

Student Name: _____    Birth Date: _____

Address: _____

Home School:    _____

Present School of Attendance: _____

43

Is this a charter school? _____ (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student: _____

Address (if different from the student's above): _____

Phone/Contact Number: _____ Fax Number (if applicable): _____

## B.  **Individual Making the Complaint/Request for Due Process Hearing:**

Name: _____

Complete Address: _____

_____

Phone:  (h) _____ (w) _____ (Fax) _____ (e-mail) _____

Relationship to the Student:

☐   Parent               ☐   Legal Guardian              ☐   Parent Surrogate
☐   Self/Student         ☐   Local Education Agency (LEA) ☐   Parent Advocate

## C.  **Legal Representative/Attorney (if applicable):**

Name: _____

Address: _____

_____

Phone: (w) _____ (Fax) _____ (e-mail) _____

Will attorney / legal representative attend the resolution session?      ☐ Yes          ☐ No

## D.  **Complaint Made Against (check all that apply):**

☐ DCPS school (name of the school if different from page one)_____
☐ Charter school (name of the charter school if different from page one)_____
☐ Non-public school or residential treatment facility (name) _____
☐ Parent

## E.  **Resolution Session Between Parent and LEA:**

I understand that it is my right to have a resolution session to resolve this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note:  All parties must agree to waive the resolution session to avoid having this meeting.)

44

☐ I wish to waive the Resolution Session.

## F.  **Mediation Process**:

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent.  Both parties can request mediation as an alternative to the Resolution Session.  Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on the parent's due process complaint.  Please check all that apply:

☐     I am requesting mediation as an alternative to the resolution session meeting.

☐     I am requesting mediation services **only**.

☐     I do not wish to use a mediator at this time.

## G.  **Facts and Reasons for the Complaint**:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions.  Provide complete details about all the facts supporting your claims.  (You may attach additional pages if needed):

1.     What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

2.     To the extent known to you at this time, how can this problem be resolved?

3.     Issues presented:

## H.  **Estimated amount of time needed for the hearing**:  _____

45

Note:    In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing.  Please indicate if you believe more than two hours will be needed.

# I.    Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other_____

# J.    Waiver of Procedural Safeguards (Optional):

☐  I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.  I understand that waiver of this right is optional and not a requirement for filing this Complaint.

# K.    Requirement to Consider Compensatory Education:

**If a hearing is held on a date that is past the date on which the Hearing Officer's Determination was required to be issued, there is a rebuttable presumption of harm and compensatory education must be an issue considered by the Hearing Officer during the hearing.**

# L.    Parent or Local Educational Agency Signature and Affirmation:

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                         Date

_____
Signature of Representative of the Local Educational Agency  Date
(if hearing requested by a LEA)

# M.    Signature of Attorney/ Legal Representative:

_____
Legal Representative / Advocate                         Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs  (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

**Fax number: 202/442-5556**

## STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the matter of:                    §        BEFORE A SPECIAL EDUCATION
                                     §
_____                    §
*Petitioner*                         §
                                     §        HEARING OFFICER
vs.                                  §
                                     §
_____                    §
*Respondent*                         §        DC PUBLIC SCHOOLS

## <u>NOTICE TO APPEAR</u>

To:         _____

    This is to notify you that you are required to appear and under oath to give testimony as a witness at the Special Education Due Process Hearing in the above styled cause.  The hearing is scheduled for:

**Date:**         _____

**Time:**         _____

**Place:**        Special Education Student Hearing Office
                  825 North Capitol St., NE
                  8th Floor
                  Washington, DC  20002

    This Notice to Appear is issued under the authority of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(h)(2), 5 D.C.M.R. § 3031.1(b), and § 800.1(4), Student Hearing Office Standard Operating Procedures.  Any party to a special education administrative hearing has the right to present evidence and compel the attendance of witnesses who have knowledge of relevant facts or whose opinions are important for reaching an appropriate disposition on the merits of this case.

    The exact time of your testimony cannot be determined prior to the date of the hearing.  Under the hearing rules please be advised that you might be excluded from the hearing room prior to your testimony.  You are welcome to bring reading material or such other activities as you may need to pass the time while waiting.

Your appearance has been requested by:

Name:         _____

Address       _____

                _____

                _____

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

Phone: _____

Signed this _____ day of _____, 2006.


_____
ATTORNEY

_____
SPECIAL EDUCATION HEARING OFFICER


## **PROOF OF SERVICE**

This will certify that a true and correct copy of this Notice to Appear was served on:


Name of witness: _____

Date: _____

Time: _____

Manner of Service:

_____ Certified mail, return receipt requested

_____ Fax transmission

_____ Hand delivery


By: _____
(Person executing service)


Date: _____

48

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA TOMONIA, et al, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Civil Action No 7-CV-0882(JR) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al, | ) |
| | ) |
| Defendants. | ) |
| ................................................. | ) |

**DECLARATION OF LINDA TOMONIA**

1. I am the plaintiff in this action and make this declaration from my personal knowledge. In preparation for this declaration I have reviewed my personal notes taken from the end of school year 2005-2006 through the end of school year 2006-2007, as well as documents that I received during that period.

2. Counsel for Defendants noticed my deposition for January 23, 2008. Their notice required that I provide them with copies of all Family court orders regarding RT and required that I provide them with copies of all documents that I received from DCPS and all documents that I sent to DCPS. These were provided to counsel for Defendants at the deposition that I attended. All the documents that have been submitted to the Court that constituted documents received from or sent to DCPS were provided Defendants at that deposition.

1

3. In addition, virtually all those documents were provided DCPS in connection with the Student Hearing Office hearing on my second due process complaint and, as to the earlier of the documents, in connection with the Student Hearing Office hearing on my first due process complaint.

4. I have filed two due process complaints with the DCPS Student Hearing Office. The first of these was filed on November 6, 2007. It named as defendants Takoma EC, Turner EC, and DCPS. It alleged that Takoma, Turner and DCPS had violated RT's rights under Section 504 of the Rehabilitation Act. Testimony on my first due process complaint was heard on March 19, 2007. I received the Hearing Officer's Hearing Officer's Determination for that complaint on May 10, 2007. A copy of the Hearing Officer's Determination is attached as Exhibit 1. It is the same as Exhibits I-A and document 47- 3 previously submitted to the Court.

5. My second due process complaint was filed with the DCPS Student Hearing Office on April 19, 2007. It alleged that Turner ES, Payne ES and DCPS had violated RT's rights under Section 504 and the IDEAIA. Hearings on that due process complaint started on June 13, 2007 and continued through July 2007. I received the Hearing Officer's Determination on that complaint on August 9, 2007. A copy of that Determination is attached as Exhbit_2. It is the same as Exhibit 1-B and document 47-4 previously submitted to the Court.

6. Those two hearings are the only hearings that have been held by DCPS. At no time did DCPS offer or convene a hearing in connection with any of the many disciplinary actions taken by Defendants Grant, Parker, and Homesley against my son.

7. At no time, in connection with any disciplinary action taken by Defendants, did DCPS or Defendants Grant, Parker or Homesley conduct evaluations of RT to determine whether the behavior for which they were disciplining him was behavior arising out of his disability and at no time did any of the defendants offer or convene a team to determine, after reviewing any evaluations of RT, whether the behavior in question was behavior arising out of his disability.

8. I enrolled RT at Takoma EC at the beginning of the 2005-2006 school year, providing Takoma with copies of. RT's Section 504 Plan and his 4th grade report card.

9. Almost immediately Defendant Grant told me that RT did not belong at her school, and asked me to enroll him elsewhere, although Takoma was his neighborhood school and he was entitled to register there.

10. Shortly thereafter, Defendant Grant began excluding RT from his classroom. This began with short stays in her office and then developed into a pattern of telephone calls to me from her staff informing me that RT was in the office and that I was to pick him up and remove him from school.

11. In Fall 2005, Takoma informed me that RT required stronger or more frequent medication for this ADHD. I took RT to his physician who prescribed a second dose of his medication, to be given by the Takoma school nurse, and provided the forms Takoma required in order to medicate him. The record of that Doctor's visit is attached here to as Ex 3.

12. At about the same time, Takoma's exclusions of RT escalated. Takoma began informally suspending RT, that is instructing me that RT was not to attend school the next day or days, but not issuing formal suspension notices. Takoma told me that this was

3

a benefit fro RT, because the disciplinary action would not appear on RT's record.
Takoma did not inform me of RT's right to a disciplinary hearing or inform me of the
Section 504 safeguards that apply to handicapped children in disciplinary actions.

13. It was also during late Fall 2005 or early winter 2006 that Takoma expelled RT from
its after school care program, because of behavior related to his ADHD.

14. From December 2005 through March 2006, Takoma's informal suspensions of RT
became both more frequent and longer. By the end of February these suspensions were
taking place 3 times per month. By March, Takoma was suspending him for up to 5 days
at a time.

15. I arranged for Shirley Jackson to provide after-school care for RT, when RT was
expelled from the Takoma EC childcare program. When Takoma began suspending RT, I
initially stayed home from work to care for him. As the suspensions became more
frequent and longer, I could no longer continue to take time off from work to care for
him, and I arranged for Ms. Jackson to care for him during the school day as well. I paid
Ms Jackson $100 per week, when she cared for him during the school day, and $50 per
week for his after-school care.

16. Takoma was not implementing RT's Section 504 Plan. From winter 2005 through
May 2006 I repeatedly asked Dr. Grant and his teachers to implement his Section 504
Plan. RT's teachers told me that Dr. Grant would never agree to implement his Plan.

17. I also asked Dr. Grant to conduct evaluations of RT and to obtain special education
services for RT. Dr. Grant refused.

18. In March 2006 I began calling the DCPS central administration for help in obtaining
evaluations and services for RT and to obtain some relief from the suspensions that

4

Takoma was imposing. I called many offices at DCPS, including the office of Defendant Janey. One of the persons whom I spoke with was Donna Davidson in the office of the Assistant Superintendent of DCPS. A copy of my correspondence with Ms. Davidson is attached as Exhibit 4. It is the same as Exhibit II-G_and Document. 48-6, previously submitted to the Court.

19.I told the people whom I spoke with that RT had ADHD and was entitled to a Section 504 Plan; I told them of Dr. Grant's suspensions and refusal to initiate evaluations of RT. None of them informed me that Section 504 protected RT from these disciplinary actions.

20 or took action to stop Dr. Grant's suspensions. On March 30, 2006 I took RT to his doctor and requested assistance with RT's behavior and with evaluation of RT. A copy of the record of that visit is attached as Exhibit 5. It is the same as Exhibit XIV-E Document 50-11 previously submitted to the Court.

21. By my calculation Defendant Grant suspended RT for somewhere between 44 and 51 days of that school year. On only 2 occasions that I am aware of did she issue a notice of suspension, on May 1, 2006 and May 15, 2005. Those notices are attached hereto as Exhibits 6 and 7. They are the same as Exhibits II-B and II-C. Documents 48-3 and 48-4 previously submitted to the Court.

22.In a conversation with Dr. Grant in April or early May 2006, Dr. Grant informed me that she would not permit RT to register at Takoma EC for the next school year. She told me that he should attend Taft EC and suggested that I go there to speak with the principal of Taft. She did not inform me that RT had a right, under DCPS regulations, to attend Takoma and that he could not be denied admission there. In May 2006 I received from Dr. Grant a notice informing me that RT would be "exited" from Takoma at the close of

the school year. That notice is attached as Exhibit 8. It is the same as Exhibits II-F and Document. 48-8 previously submitted to the Court.

23. When RT registered at Turner ES, much the same pattern of exclusions and suspension developed. In the first month of the school year RT was sent home from school because of his behavior on at least 7 days.

24. In mid-May 2006, custody of RT was placed in CFSA. On September 19, 2006 Magistrate Judge Julie Breslow issue an order stating that I retained all parental rights with regard to RT, including the right to direct his education. At the time Judge Breslow issued that Order, RT was in the custody of CFSA. J. Breslow's September 19, 2006 Order has never been revoked. A copy of that Order is attached as Exhibit 9. It is the same as Exhibit XII-F and Document 50-8, which were previously submitted to the Court.

25. On October 30, 2006 my counsel visited Turner ES to review RT's records and determine whether he was receiving accommodations under RT's Section 504 plan. At that time a copy of Judge Breslow's Order was given Defendant Parker. Because he was not receiving any accommodations and was being excluded from Turner ES, I filed my first due process complaint.

26 .On November 7, 2006, November 14, 2006 and January 25, 2007 Section 504 team meetings were held at Turner ES. Those were the only Section 504 meetings held during school year 2006-2007. At the two November meetings, Ms. Parker and her staff developed a Section 504 Plan, without conducting or reviewing any evaluations of RT. I objected to the development of any plan not based on evaluations of Rt. At the January

meeting of the 504 Team, two Turner staff revised RT's Section 504 Plan, again without reference to any evaluations of RT.

27. In February 2007, Defendant Parker again began excluding RT for part or all of the school day from the classroom, sending him home from school without issuing suspension notices and as well as formally suspending him. Defendant Parker did not notify me before excluding or suspending RT. Once Defendant Parker began issuing formal suspension notices, she withheld them from me until after the suspension had expired. Attached as Exhibits 10, 11 and 12_are copies of the suspension notices that eventually were faxed to me, via my attorney, by Turner ES. They are the same as Exhibits XII-A, XII-B and XII-C, Documents 50-3, 50-4, 50-5 previously provided to the Court.

28. During one of the suspension periods, on February 27, 2007 I called Turner ES and spoke directly with Defendant Parker. My attorney and I had been requesting that Turner provide me with a copy of the suspension notice without luck. When I spoke with Ms. Parker I requested a copy of the suspension notice and asked her why she had not given me a copy of the notice when she suspended RT. Ms. Parker told me that she had given copies to RT's foster parent and to RT's social worker because it was "easier" to do so..

29. Defendant Parker and Turner ES did not implement the 504 Plan that they developed for RT and did not provide him the accommodations that the Plan required.

30. At the beginning of March 2007 RT transferred to Payne ES. The same pattern of denial of accommodations, classroom exclusions and suspensions developed at Payne. Defendant Homesley almost immediately suspended RT for 10 days, beginning March 19, 2007. I was informed of that suspension on that date by a third party and I and my

attorney immediately began calling and writing Defendants Homesley, Wilhoyte and

Janey along with other Payne ES staff, other of Defendant Wilhoyte's staff and with the

General Counsel for DCPS, in order to obtain information about that suspension and a

copy of the suspension notice. Copies of our correspondence with the Defendants are

attached as Exhibits 13, 14, 15 and 16. They are the same as Exhibits VI-A, VI-D and

Documents. , 49-4, 49-5, 49-6, 50-2 submitted to the Court previously. We informed

Defendants that RT was a child with a disability, that Payne had suspended him without

evaluating him and without determining whether his behavior was a result of his

disability. We requested that Defendants return him immediately to the classroom.

31. None of the defendants responded to our requests that they return RT to the

classroom.

32. Defendant Homesley informed my counsel, by letter, that he would not provide us

with a copy of the suspension letter, because, so he claimed, Judge Breslow's Order did

not specifically require that DCPS provide me with disciplinary information. Attached as

Exhibit 17 is a copy of his letter. It is the same as exhibit XII-D, Document. 50-6

previously submitted to the Court. None of the other defendants responded to letters

requesting that they provide me with a copy of the suspension notice.

33. Thereafter, Defendant Homesley formally suspended RT on at least one occasion for

more than 10 days. That suspension came at the end of May. In addition Defendant

Homesley excluded RT from school, for periods of 1-2 days each on other occasions in

April and May 2007.

34. On each of the occasions that Defendant Homesley took disciplinary action he failed

to provide me with prior notice of the action and refused, thereafter, to provide me or my

8

counsel with copies of any notices, incident reports or complaints that he issued.
Attached as Exhibit 18 is a copy of my counsel's letter to Defendants Homesley,
Wilhoyte, and Janey of June 4, 2007 requesting a copies of disciplinary documents and of
a suspension notice for a suspension initiated on or about  June 1, 2007. It is the same as
Exhibit- Doc 50-7 previously submitted to the Court. My attorney also contacted the
General Counsel for DCPS, seeking a copy of an incident report prepared by Defendant
Homesley. It is attached as Exhibit 19.

35. None of the defendants responded to that letter.

36. I learned of these actions from RT or from his foster parents. On one occasion I
received a copy of a suspension notice that Defendant Homesley had provided the foster
parent, who in turn had delivered it to RT's social worker. A copy of the notice sent my
attorney by his social worker is attached as Exhibit20. It is the same as Exhibit VI-A,
Document. 49-3 previously submitted to the Court. On another occasion I received a
copy of an incident report from Jon Krell, who had received it from his investigator at the
Children's Law Center, who in turn had received it from the DCPS Office of General
Counsel.

37. At one point in May 2007, I believe it was on May 19, 2007, I had a conversation
with Defendant Homesley who told me that he was  instructed by the DCPS Office of
General Counsel not to provide me access to RT's educational materials.

38. In response to an order compelling Payne ES to provide me access to RT's records,
issued by the impartial hearing officer assigned to my second due process complaint,
Payne ES allowed me to review some documents of RT's records on June 22, 2007. The
records that were provided for my review were in a loose file folder that was left on the

floor of Payne ES' office. That file contained none of RT's disciplinary records. It also contained no records showing that RT's foster parents had ever submitted any documentation purporting to show that they were, as defendants have on occasion alleged, RT's "legal guardians."

39. It proved impossible to defend RT from these illegal disciplinary actions, because I never was able to obtain reliable information concerning what was happening to RT and why, at the time that those disciplinary actions were taking place.

40. Instead of providing me prior notice and an opportunity to participate in conferences concerning those disciplinary actions, or even of providing me copies of notices of and information after any such conferenes, Defendants Homesley and Parker provided that information to RT's foster parents.

41. During school year 2006-2007, RT resided in two different foster homes. The first, the Curtis home, from about September 1, 2006 until about February 25, 2007; and the second, the Drayton home, from about March 1, 2007 until about June 30, 2007. Neither set of foster parents participated in any Section 504 meetings. Neither read or had read any of RT's Section 504 Plans. Neither set of foster parents knew RT's medical, educational, or evaluation history. Neither had the time or interest , much less the authority under Judge Breslow's Order,  to challenge any disciplinary action taken by Defendants Homesley or Parker by demanding a hearing on that action.

40. Defendants Grant, Parker and Homesley did not implement RT's Section 504 Plans and did not provide him the accommodations required by his Section 504 Plans. Defendants Grant, Parker and Homesley, repeatedly excluded RT from the classroom, excluded him from school, and took disciplinary actions against him on account of

10

behavior arising from his disability. As a result of Defendants' conduct RT was retained in Fifth Grade, became anxious, depressed and, at one point, suicidal. Attached as Exhibit 21 are medical records concerning his emotional condition at that tme. This is the same as Exhibit XIV-B that was previously submitted to the Court. In June 2006, RT was admitted to the psychiatric ward of CNMC. Attached is Exhibit 22 reflecting his admission to and treatment at CNMC. This was previously submitted to the Court as Ex. XIV-E, Document 50-14.

41. RT lost a great deal of instructional time in the last two school years because of Defendants' conduct. As a result he failed to master basic educational skills. Attached are Exhibits 23 and 24, showing that he made no progress in Reading and Math over the last year. These are the same as exhibits XIV-A and VIV-C, Documents. 50-10, 50-12, previously submitted to the Court. Because of these losses RT will require intensive tutorial instruction if he is to attain grade-level skills.

42. In school year 2005-2006, Takoma EC expelled RT from its after school care program for conduct arising out of his disability. I no longer can remember exactly when it was that RT was expelled from the Takoma after school program, but I think it was just before the Christmas holidays in 2005. If that is the case, then Ms. Jackson looked after RT for about 18 weeks, through the middle of May 2006. My costs there would have totaled about $950.00.

43. I can recall taking off from work one full week, to look after RT when he was suspended while at Takoma, and can recall one full week when Ms. Jackson looked after him because he was suspended. My weekly salary then was $1524 at that time. So my costs for those two weeks would have been $1624.00.

44. By my best estimate, then, the expenses and losses that I incurred were about $2574. 00, as a direct result of the Takoma suspensions.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Date  March 27, 2008                    Linda Tomonia